**Equal Employment Opportunity Commission**
**Washington Field Office**
**1400 L Street, N.W., Suite 200**
**Washington, DC 20005**

|  |  |
|---|---|
| MILTON HILL, ) | |
|     Complainant, ) | July 18, 2002 |
| ) | EEOC No. 100-A2-7056X |
| v. ) | Agency No. LLM-97-036 |
| ) |               LLM-00-042 |
| GAYLE NORTON, Secretary ) | |
| DEPARTMENT OF THE INTERIOR, ) | |
|     Agency ) | |

### DECLARATION OF WARREN JOHNSON

Pursuant to 28 U.S.C. Sec. 1746, I, Warren Johnson, under penalty of perjury, declare and state as follows:

    a.    I am employed as an Assistant Director for Human Resources in the Bureau of Land Management ("BLM"). My office is located at 1849 C Street N.W., Washington, D.C., 20240. I have served in this position since June 1998. BLM is a bureau of the Department of the Interior ("Agency").

    b.    Some of my duties and responsibilities are as follows:

-I provide leadership for the BLM HR programs;
-I lead the Bureau's personnel, safety, ethics, workforce planning, training and development, and EEO programs;
-I serve as the focal point for all Bureau HR issues and matters; and
-I supervise the Washington Office HR policy function.

1



EXHIBIT
Johnson
Dec.

**EXHIBIT** 13

c. I was the selecting official for Vacancy Announcement WO-99-27 for the position of Supervisory Personnel Management Specialist. Vacancy Announcement WO-99-27 was opened on April 19, 1999, and closed on May 18, 1999.

d. Originally, this position was advertised under Vacancy Announcement WO-99-15, under the title "Supervisory Human Resource Specialist." However, it was cancelled and re-advertised under the title "Supervisory Personnel Specialist" (WO-99-27), because the Department requested that we not advertise this position under the title "Human Resource Specialist." However, we currently refer to persons who work in the area of human resources as "Human Resource Specialists." Even though the title changed, the described duties of the position were the same.

e. Some of the Supervisory Personnel Management Specialist's duties and responsibilities include supervising, through subordinate team leaders, the work of the Executive Initiative Group, evaluating and disciplining employees, allocating the group's operating budget, and serving as a liaison for programmatic areas between BLM's Washington Office and various Federal agencies and the Department.

f. The complainant applied for Vacancy Announcements WO-99-15 and WO-99-27. His application for WO-99-27, the Vacancy Announcement that was filled, was sent to BLM's Eastern States Office before the closing date. This office is the personnel servicing office for the BLM Washington Office.

g. The selection process consisted of all applications being received in the servicing personnel office in the Eastern States Office. Afterwards, the servicing personnel specialist conducted a qualifications review. I am not aware of what happened in the servicing personnel office after that point, so I do not know whether panel members were selected and subsequently asked to rate and rank the candidates. As the selecting official, I received a Certificate of Eligibles from the servicing personnel office and proceeded to interview the applicants on the list. The complainant was one of the candidates whose name appeared on the certificate. I interviewed the complainant for the position under Vacancy Announcement WO-99-27.

h. In recruiting for this position, I was seeking an individual who had a good understanding of recent human resources automation, particularly since BLM is in the process of automating its Human Resources Office. I also was interested in selecting someone who was knowledgeable of the current

2

       policy developments in human resources as well as the Office of Personnel Management's strategic plan.

i.    One of the candidates I interviewed, Ms. Connie Stewart, an African-American female, has worked in personnel management over twenty years. Ms. Stewart has worked in the BLM Human Resources Office for more than twelve years as a Personnel Specialist. Based on her credentials and current work experience, I believed that she was the best qualified person for the position. I needed someone to supervise and implement the automation process as well as implement current objectives and policies in human resources. Ms. Stewart conveyed a sense of confidence that her experiences in personnel management as well as her current work on HR automation would be helpful to meeting my management needs. During the interview, Ms Stewart talked about the Office of Personnel Management HR Strategic Plan, the Department's HR automation initiatives, and BLM's newly developed HR Plan, which focuses on creating a healthier organization. Although the complainant had some good experience in the area of human resources, he did not have the current experience the Supervisory Personnel Management Specialist would need to have to automate the Human Resources Office.

j.    On August 23, 1999, I informed Ms. Philesa Spencer, the Personnel Management Specialist who handled this vacancy announcement, that I selected Ms. Connie Stewart for the Supervisory Personnel Management Specialist position. I am aware that the effective date for Ms. Stewart's promotion was September 12, 1999.

k.    In the Fall of 1999, I recall that Mr. Bob Doyle, the complainant's second level supervisor, contacted me to see if I was aware of a detail that the complainant had arranged with the Office of Environmental Policy and Compliance (OEPC). Dr. Taylor is the OEPC Director. I informed Mr. Doyle that I was not aware of the complainant's arrangement with OEPC. However, I told Mr. Doyle that I would contact Dr. Taylor and ask him about this detail. After several attempts, I contacted Dr. Taylor and informed him that Bob Doyle had not approved such a detail for the complainant. Dr. Taylor informed me that he got the impression from the complainant that the "detail" was approved by BLM management. Dr. Taylor informed me that he would talk to Bob Doyle and Bob Doyle informed me that he would call Dr. Taylor. I did not participate in any discussions concerning the complainant's OEPC detail at this point. I am not aware of the outcome of their discussion.

3

L.  I do not recall any agreement on behalf of Tom Fry, the former BLM Director, to submit the complainant's application for the position of Associate State Director for Eastern States. In the fall of 1999, I attended a meeting in Mr. Fry's office with the complainant, per Mr. Hill's request. He wanted to debrief Mr. Fry regarding his Industrial War College experience. During the meeting, the complainant mentioned that he took several trips, including a trip to Latin America as part of his training experience. He mentioned that he enjoyed the training and would recommend the training for others. I do not recall the complainant discussing the position of Associate State Director for Eastern States with Mr. Fry at this meeting.

I declare under penalty of perjury, in accordance with 28 U.S.C. Sec. 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _18_ day of July 2002.

Warren Johnson, Jr.