**Equal Employment Opportunity Commission**
**Washington Field Office**
**1400 L Street, N.W., Suite 200**
**Washington, DC 20005**

|  |  |
|---|---|
| MILTON HILL,  )<br>　　Complainant,  )<br>　　　　　　　　　)<br>v.  )<br>　　　　　　　　　)<br>GAYLE NORTON, Secretary  )<br>DEPARTMENT OF THE INTERIOR,  )<br>　　Agency  )<br>　　　　　　　　　) | July 18, 2002<br>EEOC No. 100-A2-7312X<br>Agency No. LLM-00-054 |

### DECLARATION OF PETER NIEBAUER

I, Peter Niebauer, under penalty of perjury, declare and state as follows:

a. On September 30, 1999, I retired from my position as Group Manager, Property, Acquisition and Office Services Group in the Bureau of Land Management ("BLM"). During that time, I also served as Deputy Assistant Director for BLM's Business and Fiscal Resources Office. My office was located at 1849 C Street N.W., Washington, D.C., 20240. I served in the Group Manager or equivalent position from 1993 to September 1999. BLM is a bureau of the Department of the Interior ("Agency"). When I left BLM in September 1999, my first level supervisor was Robert Doyle and my second level supervisor was Nina Rose Hatfield.

b. When I served as Group Manager, some of my duties and responsibilities included, among other things, allocating, monitoring, and approving expenses, assessing skill needs, recruiting, evaluating and terminating personnel, rewarding and disciplining employees, coaching employees on career/skills development and training, and providing appropriate feedback to the employees.

c. In my capacity as Group Manager, I served as the complainant's immediate

1





supervisor.

d. The complainant did not discuss with me his interest in assuming the position of Field Manager, Las Cruces, New Mexico. The only positions I recall that the complainant indicated that he would be interested in getting were that of Assistant Director for Business and Fiscal Resources and any BLM Associate State Director position. During our discussion about his interest in these positions, I mentioned that it would be helpful for him to try to get BLM field experience so that he could get hands-on training in the area of natural resources. However, I mentioned that in order to get this type of experience, he probably would have to take a field position at a lower grade level because ground level experience in the field typically started at the GS-13 level or lower.

e. In 1998, the complainant did not give me his application for the Senior Executive Service Career Development Program No. 10 (SESCDP NO. 10). For the entire year of 1998, I did not serve as the complainant's immediate supervisor because I was assigned to work in other positions within BLM. From January to mid-April 1999, I served as the Acting Assistant Director, Business and Fiscal Resources. In that capacity, I served as the complainant's second level supervisor. From mid-April to September 1, 1998, I served as the Acting Director for Human Resources. From September to December 1998, I did mediation work in my capacity as a Special Assistant to the BLM Director. I resumed my Group Manager and Deputy Assistant Director responsibilities in 1999.

f. Around the time of my retirement in September 1999, I am aware that the complainant had just finished a one year training program at the Industrial College for the Armed Forces. I was out of the office on personal leave from mid-June through August 1999. I did not return to the office until after Labor Day. I do recall discussing with the complainant a detail to the Office of Small and Disadvantaged Business Utilization (OSDBU). I believe that Mr. Robert Faithful, OSDBU Director, contacted me and indicated that the complainant was interested in doing an OSDBU detail, to which Mr. Faithful did not object. As a result, we arranged a ninety-day detail to Mr. Faithful's office for the complainant. I recall that the complainant was interested in this detail; he did not appear to be unhappy with this arrangement. I saw this detail as a career enhancing opportunity for the complainant because prior to his year long training at the Industrial War College, he worked on fostering business relationships between BLM and small or disadvantaged businesses. Moreover, I knew that the complainant was interested in obtaining a position at the GS-15 level, and I knew that Mr. Faithful's office had positions with a GS-15 full performance

      level. Furthermore, I believe that Mr. Faithful was interested in having the complainant work in his office on this detail.

g.     I was not aware that during the complainant's detail to Mr. Faithful's office, the complainant arranged to do a detail in the Office of Environmental Policy and Compliance (OEPC).

h.     Regarding the complainant's allegation that he did not have office space, I recall discussing providing him office space at the L street location. He expressed a preference for an office in Main Interior. I believe that Mr. Faithful agreed to provide him such space because BLM had no available spaces in Main Interior.

i.     I arranged for the complainant to have a similar office, computer and telephone in September 1999 when he returned to BLM. Although he requested his own printer, cell phone and laptop, none of the employees in my former office had this type of government-issued equipment. There was only one laptop for the team. I denied his request for the personal printer, cell phone and laptop because we did not have the budget to support issuing this equipment to all of the employees on my team. I informed him that a laptop was available to share with the rest of the team.

j.     The complainant did not perform any BLM work while he was away on this year long training program. He was not expected to do any BLM work because his job for the year was completing his training at the Industrial War College.

k.     When I retired on September 30, 1999, it is my understanding that the complainant continued to work in Mr. Faithful's office.

l.     For fiscal year 1998-99, I did all of the performance appraisals for the employees I supervised, with the exception of the complainant. I did not do his performance appraisal because when he returned to the office in September 1999, I asked him to give me a description of the work assignments he completed during his year long training at the Industrial War College (August 1998, to August 1999), as well as a narrative evaluation from an appropriate official from the War College. At the time that I retired, I had not received the information I requested. I gave all of the employees that I supervised their performance appraisals at the same time.

m.     I gave the complainant a cash award and an evaluation during the years that I served as his immediate supervisor. Even if an evaluation had been

completed for fiscal year 1998-99, he would not have received a cash award from BLM; any award would have been the prerogative of an official at his actual duty station. Not everyone in the group that I managed received a cash award for the years that I served as Group Manager. Although the cash award amounts varied depending on the work performed, the complainant received a cash award every year.

n.  While I served as Group Manager, Joe Federline served as the team leader for my group. Prior to BLM changing the team leader's responsibilities, management would consult the team leader to discuss what work assignments the team members worked on and subsequently completed. I continued to discuss the team members' assignments with the team leader after the format changed. That is the reason why I consulted Joe Federline to discuss the complainant's workload and completed assignments. I consulted the team leader on all of the team members' workload and completed assignments prior to preparing their performance appraisals.

I declare under penalty of perjury, in accordance with 28 U.S.C. Sec. 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this __th day of July 2002.

*[signature]*
Peter Niebauer