**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**MILTON HILL**

 Plaintiff

**v.**         Civil Action No. 06-1233(JDB)

**DIRK KEMPTHORNE,**

 Defendant

**PLAINTIFF'S SUPPLEMENTAL INTERROGATORY RESPONSES**

The responses to the following interrogatories are premised upon the notion that the scope of this case involves only matters which are stated in the complaint and the original along with the supplemental interrogatory responses. Although the EEO filing of September of 2000 involved far more, if an allegation is not mentioned in the complaint or these responses it is not part of this case. To the extent that the discovery seeks information beyond the scope of the case, Plaintiff objects. With this supplement, Plaintiff has full responded to the written discovery to the extent reasonably possible in the context of an interrogatory response.

Before supplementing the original responses as set forth below, Plaintiff responds to the additional questions in Interrogatory #1 which were not contained in the original interrogatories. Subparts a., b., d., e.,and f. involve untimely allegations because they occurred prior to August 28, 1999 and are therefore not part of this case. They will not be referred to at trial.

The response to subpart c. is set forth in the previously disclosed OPM security investigation report which contain all the details of Mr. Niebauer's false testimony and is attached as Interrogatory 1C. (total 5 pages) Plaintiff does not recall who the investigator was. The testimony is false because it attempts to portray Plaintiff as a potential traitor to his country because he filed EEO complaints. The testimony is also false because Mr. Niebauer told the investigator that Plaintiff had, in the past, been terminated for falsifying travel vouchers. The testimony is true because it clearly demonstrates the discriminatory animus management officials had towards the Plaintiff due to his protected EEO activities.

**Interrogatory 1.** Fully identity and describe each and every instance where you claim in your complaint that you were

- 2 -

subjected to race discrimination or retaliation, by
Department of Interior (DOI) employees or management
officials, noting the alleged type of discrimination or
retaliation, the date and location of the alleged act, all
witnesses or parties to the incident, and what evidence you
have to support your belief that discrimination or
retaliation occurred.

## Paragraph 7 - Count 1

Plaintiff did not receive a performance appraisal
for FY 1998. Plaintiff inquired of Robert Doyle if the
situation could be corrected. Mr. Doyle's response was that
one of Plaintiff's supervisors had retired and the other was
on a detail. Mr. Doyle stated that he received input to
generate Plaintiff's performance appraisal from Joseph
Federline who was a co worker. Mr. Doyle also stated that he
received input from other but would not identify who.

Although the overall evaluations were achieve or
not achieve, you could get on award if the comments the
rater made were sufficiently complementary. Plaintiff did
not get an award but Joe Federline, Don Donelson and Peter

Entman did. Plaintiff's supervisors were Peter Niebauer and Roger Hildebiedel who were available for Mr. Doyle to get input. As a result of the improper evaluation Plaintiff did not received an award. The basis for the claim is retaliation for prior EEO activity. The activity is fully described in response to Interrogatory 17. This action occurred in September 1999. Plaintiff sought EEO counseling on October 12, 1999. See ROI Exhibit 2.

_Paragraph 8 – Count 2 (Allegation 9)_

        After Plaintiff returned from the War College assignment, he received a detail to the Office of Small Business (OSDBU). During the detail Robert Doyle refused to provide travel funds. As a result, Plaintiff was unable to travel to the National Black Chamber of Commerce conference.

        The basis for this claim is retaliation for prior EEO activity. The protected activity is fully described in response to Interrogatory 17. This action occurred in September 1999. Plaintiff sought EEO counseling on October 12, 1999. See ROI Exhibit 2.

- 4 -

### *Paragraph 9 (Allegation 6)*

In November of 1999, Plaintiff was serving a detail in the Office of the Secretary, Office of Environmental Policy. This was terminated by Robert Doyle and Warren Johnson for no reason prior to its completion.

The basis for this claim is retaliation for prior EEO activity. The protected activity is fully described in response to Interrogatory # 17. Plaintiff sought EEO counseling on October 12, 1999. See ROI Exhibit 2.

### *Paragraph 10 - Count 4 (Allegation 12)*

In November 1999, Plaintiff's position description was rewritten after he began EEO activity. The new description narrowed the scope of his employment and was a de facto reassignment. The description was rewritten by Joseph Federline and Thomas Walker.

The original position description (Senior Business Manager) and rewritten description (Senior Business Management Specialist 11/19/99) are attached and previously submitted as responses to Interrogatory #8. (total 12 pages).

- 5 -

The basis for the claim is retaliation for prior EEO activity. The protected activity is fully described in response to Interrogatory 17. Plaintiff sought EEO counseling on October 12,1999. See ROI Exhibit 2.

### Paragraph 11 - Count 5 (Allegation 13)

In December 1999 while Plaintiff was serving the detail referred in Paragraph 9, Joseph Federline and Robert Donelson were promoted to acting group manager and he was not.

The basis for this claim is retaliation for prior EEO activity. The protected activity is fully described in response to Interrogatory #17. Plaintiff sought EEO counseling on October 12,1999. See ROI Exhibit 2.

### Paragraph 12 - Count 6 (Allegation 11)

In August 2000 Plaintiff was not selected for the BLM Congressional Fellows Program. This occurred because management officials permitted Phyllis (Twinkle) Thomson to have input into whether Plaintiff should be allowed to go. This claim is based upon race and gender because Ms. Thomson

had made racist and sexist comments about him in the past.

The basis for the claim is also retaliation for prior EEO activity. The protected activity is fully described in response to Interrogatory #17. Plaintiff sought EEO counseling on October 12,1999. See ROI Exhibit 2.

**Interrogatory 2.** Fully identity and describe each and every adverse action of any type you suffered as a result of each act of alleged race discrimination, or reprisal. With respect to each adverse action, individually specify which of your causes of action (i.e. race discrimination or reprisal) you believe caused the adverse action; why you believe that connection exists; and what, if any, evidence you have supporting your belief.

See Response to Interrogatory #1

**Interrogatory 3.** As to each act of race discrimination or retaliation you allege occurred fully describe and identify your initial contact with an EEO counselor or with the EEOC including the date of the alleged act of discrimination, the date and location of initial contact, how the contact was

made, with whom the contact was made, and any evidence
substantiating when the initial contact was made.

See Response to Interrogatory #1

**Interrogatory 5.** In relation to paragraph 7. Count 1, of
your complaint, fully identify and describe what annual
award(s) you allege you should have received and the
specific reason(s) you should have received an award.

See response to Interrogatory #1. In addition the
award amounts Plaintiff should have received are set forth
in the ROI p 000055.

**Interrogatory 6.** In relation to paragraph 8 , Count 2, of
your complaint, fully identify and describe the specific
travel requests made, the specific individual to whom the
request was submitted, the date of the request and the
outcome of the request.

See response to #1. In addition the travel request
is attached as Interrogatory #6.

- 8 -

**Interrogatory 7.** In relation to paragraph 9 of your complaint, fully identify and describe each act which you claim was undertaken to refuse to allow you to apply for "career enhancing growth training" including the date and place of the act, the identity of the person doing the act, all statements made, and all witnesses to the act and the specific identity and time periods of the training you were not allowed to apply for.

See response to Interrogatory #1. Also, the only documentation Plaintiff has about refusal to apply for training was previously attached in response to Interrogatory #7. (Letter of 4/19/00 from Angela Trapani).

**Interrogatory 8.** As to paragraph 10 of your complaint, fully identify and describe each non-career enhancing or job to which you were assigned without consulting with you, including the date and place, identity of individuals involved, and identity of the management official who made the assignment.

See response to Interrogatory #1

**Interrogatory 9.** As to paragraph 11 fully identify and describe each act of "career inhibiting job blocking/steering" including who did the act, when the act was done, what the act was, and how it blocked or steered a job.

See response to Interrogatory #1. In addition, Plaintiff was never considered for this position and should have been.

**Interrogatory 10.** As to paragraph 12 of your complaint fully describe and identify the August 2000 incident to which you are referring, including what training request was under review, each racist and sexist statement concerning plaintiff made by Phyllis Thompson, witnesses to the making of such statements.

See response to Interrogatory #1. In addition the racist and sexist remarks are attached as Interrogatory #10.

**Interrogatory 16.** As to each adverse action alleged, fully identify and describe the specific harm caused by the adverse action.

See Response to Interrogatory #1.

- 10 -

***Interrogatory 17.*** As to each adverse action alleged, fully identify and describe the prior protected activity causing the alleged acts of reprisal, including the date(s) of the prior protected activity, the alleged discriminating official.

The question had already been responded to but Plaintiff supplements his answers as follows. The retaliatory animus against Plaintiff was already evident in the false testimony Peter Niebauer gave to the security clearance investigator. It first manifested itself for the purpose of this case by the contacts Plaintiff made on 6/29/99, 8/5/99 and 9/22/99 when Plaintiff attempted to resolve the issue alleged in Paragraph 7 - Count 1 of the complaint. See ROI p 000054.

In an effort to resolve these issue Plaintiff had a meeting with Assistant Secretary John Berry in early October 1999. He was sympathetic to Plaintiff's concerns and told him to meet with Robert Doyle and Tom Frye to work this out. Plaintiff arranged a meeting with Mr. Frye for 11/1/97.

In the interim between the meeting with Berry and Frye, Plaintiff wrote letters to Senators Sarbanes and

- 11 -

Warner along with a letter to Representative Wynn. See attached documentation. Mr. Frye was furious about this. See attached documentation. Plaintiff followed up with letter to Fry and Berry but received no response.

Plaintiff met with Mr. Frye on November 1,1999 to discuss several issues, one of which was his application for the position of Assistant Director Eastern States. Frye's response was hostile, he said " so what " and told Plaintiff someone had already been selected. Immediately after this be refused to submit Plaintiff's application. All the events that are referenced in the complaint transpired during this time-frame.

See document attached as Interrogatory #17.

## DISCOVERY CERTIFICATION

I hereby declare, pursuant to 28 USC 1746 that the foregoing supplemental responses are true and correct.

*Milton E Will*
MILTON HILL

DATE: 26 July 2007

## CERTIFICATE OF SERVICE

I hereby certify that one copy of the foregoing discovery supplemental responses were hand delivered to Rhonda Fields Esq., Assistant United States Attorney. Civil Division, 555 Fourth Street NW, Washington DC 20530, this 27th day of July 2007.

Stephen Scavuzzo

September 13, 1999

To:        Peter Niebauer

From:      Milton E. Hill

Subject:   Reminder

Just a reminder that the following are still needed by me to accomplish my work assignments:

- Office space w/telephone
- PC
- Printer
- Fax
- Scanner
- Note Pad
- Cell phone
- Pager
- External Zip Drive
- Email access
- Internet access

I need a travel authorization for my upcoming participation and presentations in several conferences. The first is to begin on 15 September.

I applied for the Group Manager position, vice Dave Brown, over six months ago. Would you please find out what happened with my application and let me know. Thanks.

*Exhibit 7*

*Interrogatory #6*

POSITION DESCRIPTION
SENIOR BUSINESS MANAGER

INTRODUCTION

This position is located within the Directorate of the Assistant
Director(AD), Business and Fiscal Services(B&FS). The incumbent
serves as the Senior Business Manager with responsibility for a
wide variety of assignments designed to provide  managers with
objectively  based  information  for  making  decisions  on  the
administrative  and  programmatic  aspects  of  the  Bureau  of  Land
Management's (BLM) operations and management.  The incumbent has
the responsibility for providing National level counsel and support
to all levels of management, relevant committees, work groups, and
teams  on  the  strategy,  efficiency,  products,  impacts,  and
effectiveness of bureau programs. He/She manages the bureau's
Business and Economic Development Program(BEDP).

The incumbent serves as the Group member with the responsibility
for   providing   expert   advice/assistance   in   organizational
management,   strategic   planning,   developing   and   recommending
short/long range goals and objectives to guide future program
efforts, priorities and budget activities.  Serves as staff advisor
for  acquisition  management,  financial  management,  re-engineering
and quality improvement efforts and activities bureauwide.  The
incumbent is responsible for providing the Group Managers, Senior
Technical   Specialists   and   Assistant   Directors(AD's)with
information,   analyses,   and   advice   to   make   decisions   and
recommendations to meet the goals and objectives of the BLM. The
incumbent will be responsible for working with other agencies and
organizations to not only keep them informed, but to coordinate
their concerns and needs while keeping the Group Manager and the AD
informed.

GENERAL

Serves as the Senior Business Manager in formulating, developing,
and refining bureau policy which would affect the Directorate.
Provides advice and assists in: implementing activity based costing
measures/process;  developing  business  plans;  recommending  and
developing new markets/policies to a variety of Departmental and
bureau customers.

Provides consultation to program managers and provides innovative
leadership in the development of new practices, procedures, and
managerial  approaches  to  the  implementation  of  managerial
principles throughout the Department.  Serves as an advisor to the
Department's  and  bureaus'  managers  on  issues  related  to  the
National  Performance  Review  (NPR),  re-engineering  teams,  and
quality  management  activities.    Provides  direct  support  and
technical advice to organizational committees.  Communicates
information about quality programs and activities through reports
and briefings, to Departmental/bureau officials, outside agencies,

*Interrogatory # 8*    1/12

public interest groups and Congress. Identifies major program evaluation needs and evaluates model programs to be used as prototypes. Provides senior management advice regarding management techniques, programs, organizational models, and general management developments. Where necessary, reviews financial operations and field activities to ensure compliance with budgetary guidance.

Serves as a liaison between working groups, teams, councils, and management teams. Provides a central point of contact to the bureau. Serves as a facilitator at a variety of meetings and coordinates, as necessary, re-engineering and organizational development on bureauwide and Departmentwide basis.

Initiates, plans, coordinates and provides technical assistance and support to program managers in the preparation of operating plans. Assesses the operation of inter/intradisciplinary planning teams in terms of bureau planning regulations standards and quality standards; and, in his/her judgement, recommends actions to strengthen team organization.

## MAJOR DUTIES

The following major duties are accomplished either directly or under supervision of the Group Manager and/or AD:

1.   Advises on, administers, supervises and/or performs work pertaining to and requiring a knowledge of business and trade practices, production and efficiency methods and processes; the collection, analysis and dissemination of information; establishing and maintaining contacts with industry, academia and governmental entities.

2.   Reviews the bureau's Advanced Procurement Plan reports, ensuring that program managers are familiar with and carry out their responsibilities in this area.

3.   Exercises originality and sound judgement to analyze problems and develop solutions. Performs managerial work concerned with long and short range planning in connection with prospective changes in functions and programs; determine measures for improving coordination among activities and measures needed to provide data to management to plan and implement changes in existing or new organizational structures.

4.   Prepares and issues responses to Congressional, Freedom of Information Act (FOIA), and other special interest correspondence regarding bureau business related programs; provides assistance and guidance to bureau field offices and WO in their preparation of similar correspondence to ensure accuracy and consistency among these entities.

2/12

5.   Performs, or assists in reviewing, efficiency reviews and productivity studies.  Examines and makes recommendations on data gathered, seeking to identify the most efficient organization. Establishes quality and quantity of staffing requirements.

6.   Assists in the formulation of acquisition management policies and guidelines.  Provides technical guidance in the development of the Statement of Work, Performance Work Statement, or data requirements.

7.   Provides briefings, seminars, and workshops on acquisition and financial assistance programs.

8.   Represents the Group Manager in meetings, conferences, and negotiations with other agencies and groups.  Works as one of the Groups' leads for re-engineering and organizational management projects and issues.  Provides advice and assistance to Washington Office and field personnel on the interpretation of legislation, regulations, standards, operating orders, and procedures pertaining to acquisition management and re-engineering.

9.   Aids in the preparation of manuals, reports, handbooks, and other procedural guidance needed to help implement the Group's programs.  Reviews and revises existing issuances and reference materials to ensure conformance with new and existing policies.

10.  Serves as bureau and/or DOI representative on intra and interagency committees, task forces, work groups, and other entities responsible for Federal acquisition and financial assistance programs, improvement of business practices, etc.

11.  Provides staff support to the AD and assists in developing, implementing, administering and reviewing bureau policies, systems and procedures for a diverse group of activities.

12.  Responsible for the evaluation of the effectiveness and efficiency of program operations throughout the bureau. Evaluations take into consideration factors such as cost effectiveness, attainment of program goals, and compliance with pertinent legal and regulatory guidelines.

13. Evaluates specific acquisition programs and develops procedures for program improvement.

14. Provides a convenient way for small businesses to access the BLM, facilitates communications between the small business community and the BLM, and works with the BLM personnel to increase their understanding of small businesses.

3/12

# POSITION DESCRIPTION (Please Read Instructions on the Back)

1. Agency Position No.

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| [X] Redescription  [ ] New | [X] Hdqtrs. [ ] Field | Washington | WO-850 | |
| [ ] Reestablishment  [ ] Other | | | | |

Explanation (Show any positions replaced)

| 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| [X] Exempt  [ ] Nonexempt | [ ] Executive Personnel Financial Disclosure  [ ] Employment and Financial Interests | [ ] Yes  [ ] No |

| 10. Position Status | 11. Position Is: | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| [X] Competitive | [ ] Supervisory | [X] 1—Non-Sensitive  [ ] 3—Critical Sensitive | |
| [ ] Excepted (Specify in Remarks) | [ ] Managerial | | 14. Agency Use |
| [ ] SES (Gen.)  [ ] SES (CR) | [X] Neither | [ ] 2—Noncritical Sensitive  [ ] 4—Special Sensitive | |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | | | | | | |
| c. Second Level Review | | | | | | |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | Senior Business Management Specialist | GS | 1101 | 14 | | 11/12/99 |

16. Organizational Title of Position (If different from official title)

17. Name of Employee (if vacant, specify)

18. Department, Agency, or Establishment

**Department of Interior**

a. First Subdivision

**Bureau of Land Management**

b. Second Subdivision

**Business and Fiscal Resources Directorate**

c. Third Subdivision

**Property and Acquisition Group**

d. Fourth Subdivision

e. Fifth Subdivision

19. Employee Review—This is an accurate description of the major duties and responsibilites of my position.

Signature of Employee (optional)

20. **Supervisory Certification.** I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager (optional) |
|---|---|
| Robert Donelson  Group Manager, Property and Acquisition | |
| Signature       Date: 11/15/7 | Signature       Date |

21. **Classification/Job Grading Certification.** I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.

Typed Name and Title of Official Taking Action

Signature       Date

22. Position Classification Standards Used in Classifying/Grading Position

**Information for Employees.** The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

24. Remarks

4/12

25. Description of Major Duties and Responsibilities (See Attached)

NSN 7540-00-634-4265       Previous Edition Usable       5008-106

OF 8 (Rev 1-85)
U.S. Office of Personnel Management
FPM Chapter 295

## POSITION DESCRIPTION

## SENIOR BUSINESS MANAGEMENT SPECIALIST
## GS-1101-14

### INTRODUCTION

This position is located in the Property and Acquisition Management and Headquarters Services Group (WO-850) within the Directorate of the Assistant Director, Business and Fiscal Resources. The Group is responsible for the policies and oversight of Bureau-wide Acquisition, Grant, and Property Management business systems. The Group is also responsible for training development and coordination of all business programs within the Business and Fiscal Resources Directorate which includes budget, acquisition and property management, financial management, and management systems.

### I.    SUMMARY OF RESPONSIBILITIES AND MAJOR DUTIES

### A. RESPONSIBILITIES

1.    The Business and Economic Development Program (BEDP)  The employee is responsible for leading the Bureau of Land Management's BEDP . The BEDP was established by the acquisition-related sections of the Small Business Act (15 U.S.C. 631, *et seq.*) and other acquisition legislation. The Headquarters BUDS is the BLM advocate for the Government-wide policy to provide maximum contract and sub-contract opportunities to small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns. The BLM acquires goods and services worth about $250 million each year.

The Headquarters Business Utilization Development Specialist (BUDS) is the manager who is responsible to implement small business programs within the BLM. The employee negotiates Bureau-wide monetary goals with the Department of the Interior for contracts awarded to these business concerns. The Headquarters BUDS is also responsible for monitoring performance by BLM States and Center against the Business and Economic Development Program (BEDP) goals, and facilitates the achievement of the goals by identifying those offices falling short and offering ideas for improving performance.

The Headquarters BUDS leads the effort with the State and Center BUDS  to set-aside acquisitions for these business concerns in order to achieve the goals. The effort includes reviewing the BLM advanced acquisition plan and solicitations that are not unilaterally set aside by the Contracting Officer and recommending a set aside if two or more capable small business concerns can be found.  The Headquarters BUDS coordinates with the Small Business Administration (SBA), the Department of the Interior (DOI) Office of Small and Disadvantaged Business Utilization (OSDBU), and  BLM acquisition operations offices positive steps to achieve the goals and SBA appeals. The Headquarters BUDS establishes or facilitates partnerships Chambers of Commerce and Trade Associations that represent small, disadvantaged and women-owned business; such as the National Black Chamber of Commerce, the National

5/12

Hispanic Chamber of Commerce, and the Pan-Asian Chamber of Commerce to increase business opportunities for these firms and facilitate the achievement of BLM goals. The employee collects information on outreach endeavors and submits the BLM annual report for the DOI awards program. The employee also leads the BLM BEDP awards program for outstanding achievers.

2.    "Greening the Government Through Waste Prevention, Recycling and Federal Acquisition"
The employee is also responsible for co-managing with the Protection and Response Group the implementation of Executive Order 13101 and the Department of the Interior Strategic Plan and Action Plan for *"Greening the Government Through Waste Prevention, Recycling and Federal Acquisition"*. The employee is responsible for managing for the BLM Property and Acquisition functions of the *Greening* program to achieve goals in the DOI Strategic Plan through the Action Plan. The employee is also responsible for the annual *Greening* report on Bureauwide performance and recommending improvements to overall performance.

The acquisition goals are to (1) purchase products that have the highest percentage of recovered materials practicable, considering price, availability and performance, focusing on products designated in the Comprehensive Procurement Guideline (CPG). The acquisition goals are also to (2) purchase environmentally preferable products (EPPs), and (3) bio-based content products (BCPs).

The property goals are to (1) operate Government fleet vehicles using re-refined oil, retread tires (when replacing tires), reclaimed engine coolant, and on a pilot basis, biodegradable lubricating oil in small engines; (2) use recycled-content bathroom tissue, paper towels and plastic bags in the operation of all leased and owned facilities (3) use copy paper with at least 30% postconsumer material, (4) use bathroom tissue, and paper towels that have been manufactured without the use of diking and bleaching at all BLM facilities, and (5) use either recycled content carpet or factory refurbished carpet for all new installations in BLM facilities.

The manager in the Protection and Response Group is responsible for environmental management of the *Greening* program and reporting to the DOI and Federal Environmental Executives.

B.    MAJOR DUTIES

The responsibilities described above are achieved by performance of the following major duties:

1.    Business and Economic Development Program (BEDP)  Provides leadership and management of BLM BEDP as follows:

By January 31 of each fiscal year, negotiates annual fiscal year BEDP goals for the Bureau of Land Management (BLM) with the Department of the Interior (DOI) Office of Small and Disadvantaged Business Utilization (OSDBU). The goals are to reflect improvement or continuing effort to maintain the same level of prior accomplishments. The goals are separate dollar goals for contracts to the following businesses:

6/12

(i)     Small business,
        Within minority business entities, there are separate goals for:
(ii)    Section 8(a) disadvantaged firms,
(iii)   Small disadvantaged firms receiving contracts resulting from direct, open
        competition, and
(iv)    Non-profit, educational and large minority firms
(v)     Women-owned business,
(vi)    Subcontracts to small business
(vii)   Subcontracts to minority business and
(viii)  Subcontracts to women-owned business.

Within 30 days after receiving final Bureau-wide BEDP goals from the DOI, negotiates annual fiscal year BEDP goals within the BLM for the Washington Office, the National Business Center, State Offices, and the National Interagency Fire Center. The goals are based on past accomplishments and planned acquisitions.

Developing team dynamics among BLM acquisition operations office and Business Utilization and Development Specialists (BUDS), assists as requested, in identifying projects suitable for acquisition in support of socioeconomic development programs. Facilitates activities to ensure effective, efficient accomplishment of tasks, providing instruction, guidance, and clarification when required.

Performs an ongoing program to review new or revised higher-level acquisition regulations and directives issued by DOI related to the BEDP, and develops, issues, reviews, and updates BLM acquisition policies and procedures related to the BEDP. Comments on proposed laws and regulations affecting BLM BEDP programs.

Reviews the BLM's advance acquisition planning reports, ensuring that program managers are familiar with and carry out their responsibilities in this area.

Provides advice and guidance to BLM State, Center and Field Offices on BEDP matters.

Provides liaison between BLM and the DOI on BEDP statutes, policies and initiatives.

Participates in acquisition management reviews of BLM States, Centers and Field Offices to ensure that (1) the BLM conforms with existing socioeconomic statutes and regulations, (2) Contracting Officers and BUDS are coordinating effectively with the SBA Procurement Center Representative, and (3) the Contracting Officers are using SBA tools, such as PRONET at http://www.sba.gov to provide maximum practicable opportunities in acquisitions and subcontracts to small business, HUBZone small business, small disadvantaged business, and women-owned small business. Develops procedures for BEDP improvement.

Reviews and analyzes BLM BEDP accomplishments quarterly, and recommends improvements. Conducts recognition of BEDP accomplishments program.

Represents the BLM and the DOI at Federal, State, and local small business programs, trade fairs, and other socioeconomic development advocacy events; providing marketing assistance and counseling to small and socially and economically disadvantaged business enterprises. Counsels and assists small business concerns and provides information about doing business with the BLM. This includes (1) referring these concerns to the BLM procurement Web site at site at (2) informing them how to search for opportunities in the BLM Advanced Procurement Plan that is on the Internet, (3) informing them how to register centrally for electronic acquisition opportunities in the Interior Department Electronic Acquisition System.

Develops partnerships with the SBA, the DOI, and other Government agencies and socioeconomic development advocacy groups. Provides assistance to solve disagreements between the Small Business Administration (SBA) and the cognizant Contracting Office. Advises the Bureau Procurement Chief, the AD, B&FR, and the DOI OSDBU in appeals by the SBA of the Contracting Officer's decision not to set aside an acquisition.

Advises BLM contracting officers and BUDS at the National Business Center and Oregon State Office on the acceptability of prime contractor subcontracting plans, recommending improvements.

Represents the BLM in meetings with BLM contractors with complaints or questions about the BLM's socioeconomic programs, informing BLM managers of systematic practices which impair or impede access to acquisition opportunities, and proposes remedial measures.

Prepares and issues responses to Congressional, FOIA, and other special interest correspondence regarding the BLM BEDP program; provides assistance and guidance to the BLM State, Center and Field Offices, and the Office of the Assistant Director and the Director in their preparation of similar correspondence to ensure accuracy and consistency among these entities.

Provides briefings, seminars, and workshops on the BEDP program. Sponsors and participates in conferences and training designed to increase small business participation.

Serves as the BLM or DOI representative on intra and interagency committees, task forces, work groups, and other entities responsible for Federal BEDP programs.

"Greening the Government Through Waste Prevention, Recycling and Federal Acquisition"
Provides leadership and management of Property and Acquisition functions of the *"Greening"* Program as follows:

To promote achievement of the vision and goals established in the *Strategic Plan for Greening the Department of the Interior Through Waste Prevention, Recycling, and Federal Acquisition*, the employees lead the implementation of the DOI Action Plan in the BLM.

Participates as a member of the DOI *Greening* Group responsible for implementing the acquisition and property management and environmental strategies to achieve the items listed in the action plan.

8/12

Coordinates with the BLM Procurement Chief and Property Manager in the WO-850 Group and the National Business Center leads for various items in the Action Plan.

Coordinates and submits acquisition and property management information for *"Greening"* programs reports.

Serves as the BLM or DOI representative on interagency committees, task forces, work groups, and other entities responsible for Federal *"Greening"* programs.

## II. FACTORS

Factor 1, Knowledge Required by the Position

-- Mastery of acquisition and other business management principles applicable to Federal socioeconomic development programs and extensive knowledge of statutes, Executive Orders, and Federal, DOI policies and regulations, which impact socioeconomic development programs and the *"Greening"* program..

-- Extensive knowledge of acquisition and socioeconomic statutes, Executive Orders, Office of Management and Budget circulars, Comptroller General decisions, and administrative board and court decisions to interpret regulations and higher-level policies for the BLM, and identify and analyze acquisition issues and their impact on BLM-wide socioeconomic programs that affect small, minority and women-owned business concerns and to lead and manage the implementation of the *"Greening"* Program action items.

-- Extensive knowledge of socioeconomic laws; such as, the Small Business Act, and Executive Order 13101, *"Greening the Government Through Prevention, Recycling and Federal Acquisition"*, Government-wide policies, and the Federal and Interior Acquisition Regulations sufficient to develop, coordinate and issue BLM policies and procedures.

-- Broad knowledge of the BLM's mission and acquisition and property management programs to develop BLM-wide Business and Economic Development Program (BEDP) and *"Greening"* policies and procedures, and lead the achievement of BEDP and *"Greening"* goals.

-- Mastery of leadership skills including motivation, role modeling, leveraging resources, and team building.

-- Mastery of management skills including planning, organizing, analyzing, and evaluating, and clear and concise written and oral communication skills.

-- Extensive knowledge to effectively present, clarify, and defend, when necessary, the BLM's or the DOI's position on BEDP and *"Greening"* matters before peers in the acquisition community within and outside the DOI, higher-level management, and the public sector groups.

9/12

-- Knowledge necessary to effectively evaluate and provide constructive recommendations to improve BEDP and *"Greening"* policies and guidance.

-- Knowledge of functions and capabilities of the BLM acquisition and property management offices.

— Knowledge of FOIA and Congressional inquiries policies and procedures.

Factor 2. Supervisory Controls

The ~~Bureau Procurement Chief~~ *Group manager* (WO-850) gives broad general direction and guidance and generally makes assignments only when they are initiated by higher management or for special projects. ~~The Bureau Property Manager also give broad direction with respect to the property management action items on the DOI *"Greening"* Action Plan.~~ Work assignments usually are self-generated. The employee is primarily responsible for leading and managing the BLM BEDP mandated by public law and the *"Greening"* program. The employee works independently, leading the coordination with the BLM State/Center Procurement Analysts and the NBC leads to plan, organize, and complete assignments and manage the BEDP workload and the DOI *"Greening"* Action Plan items to achieve each program's goals and objectives. The completed work is accepted as being technically authoritative, and is reviewed from an overall standpoint in terms of appropriateness, attainment of program goals and objectives, and accuracy.

Factor 3. Guidelines

Guidelines include socioeconomic laws; Federal, Departmental, and BLM Federal Acquisition Regulations and Manuals; Executive Orders (EO), including EO 13101 on the Federal *"Greening"* program; OMB circulars; Comptroller General Decisions; and other legal precedents applicable to the BEDP and *"Greening"* programs; as well as unofficial "Best Practice" guides; such as, handbooks, circulars, and publications of private firms and small business advocacy organizations. The employee exercises judgment and considerable creativity to ensure uniform application of guidelines among closely related or seemingly conflicting directives. The employee develops supplemental guidance only when existing guidance limits ability to efficiently and effectively perform BEDP and *"Greening"* program requirements and achieve BEDP and *"Greening"* goals.

Factor 4. Complexity

The work consists of an extensive array of duties involving a broad range of activities and depth of analysis for the highly specialized fields of the BEDP and the *"Greening"* program. Work involves complex projects of BLM-wide and Department-wide scope. The work is subject to continuing changes to ensure increased effectiveness, efficiencies and improved quality in response to the needs of the public, the BLM, the DOI, other Federal agencies, and Congress. The employee, independently and with State Procurement Analysts', Bureau Procurement Chief's

and Bureau Property Manager's contributions, develops new information, considers data from a wide variety of sources, and modifies and originates approaches, methods, and procedures to plan and carry out successful program goals and objectives. The employee must rely on acquired knowledge, experience, and expertise in the areas of organizational, leadership, and management skills in addition to formal and informal guidelines and regulations. Program needs of the BLM are varied, encompassing the entire spectrum of land and ecosystem management. A general knowledge of the BLM's mission, organization, projects, and programs is required.

Factor 5. - Scope and Effect

The purpose of the work is to perform program administration and analysis activities for the BEDP and *"Greening"* programs, and to resolve problems relating to those programs using accepted procedures and precedents and innovative approaches. The purpose of the work is to provide expertise and leadership by furnishing advisory, planning, or reviewing services on specific problems, projects, or programs within the BEDP and *"Greening"* programs; or, facilitating solutions to a wide range of recommendations. Examples include formulating approaches to BEDP and *"Greening"* problems or issues when the problems require extensive analysis of a variety of unusual conditions, questions, or concerns or establishing procedures for implementing policies or guidelines. The BEDP work is crucial in encouraging expansion of the national industrial base by developing new or improved small, minority or women-owned firms to assure increased opportunities to contract and subcontract with the BLM, other Federal, State, and local entities and with prime contractors. This work primarily affects the economic well-being of small and socially and economically disadvantaged businesses located principally in the Western United States. The *"Greening"* program work is crucial because it provides an active, systematic way to protect the natural processes that sustain life on our planet. The BEDP and *"Greening"* work affects a wide range of acquisition and property management activities, such as the operation of acquisition and property management programs in various locations, and the accomplishment of significant goals. The BEDP affects the timely support of other Federal departments or agencies; has a significant economic effect on those working in various industries, since it establishes rules and guidelines under which the BLM's major acquisition programs are accomplished and which members of those industries must follow in doing business with the BLM. The *"Greening"* program has far reaching effect to protect the natural processes that sustain life on our planet.

Factor 6. - Personal Contacts

Frequent and extensive contacts with high-level DOI and BLM decision makers in Washington D.C.; State/Center and field offices; BLM and DOI Business Utilization Development Specialists (BUDS), BLM contracting officers, property managers, National Business Center managers, program managers, and technical personnel; representatives of other Federal agencies; State and local government officials, local and national chambers of commerce, industrial and trade associations, and small business advocacy entities; Government contractors and representatives from small and small socially and economically disadvantaged business concerns.

11/12

Factor 7. - Purpose of Contacts

Contacts are to plan and advise on BEDP and *"Greening"* program requirements, coordinate actions with affected offices, resolve related problems, and motivate and facilitate activities. The purpose of contacts is to influence, negotiate, motivate, gain new information, clarify issues and encourage support of Federal BEDP and *"Greening"* programs in order to achieve BLM-wide results. As BEDP manager, the purpose of contacts with potential contractors is to ensure that BEDP requirements are met and goals are achieved by providing small and socially and economically disadvantaged businesses with opportunities to compete for contracts and subcontracts. For the *"Greening"* Program, the purpose is to lead and manage the Acquisition and Property Management items in the DOI Action Plan to achieve the goals in the *"Greening"* Strategic Plan.

Factor 8. - Physical Demands

The work is somewhat sedentary; however walking and standing is required during visits to contractor facilities, participation in trade fairs, conferences and seminars. Some physical lifting required in the transport and set-up of display materials. Considerable travel by automobile and airplane is necessary in fulfilling the requirements of this position.

Factor 9. - Work Environment

Work is performed in an office environment with significant travel to attend meetings, review field operations, visit contractors, participate in trade fairs, seminars, and conferences.

12/12

# COPY OF TRANSCRIPT

## UNITED STATES DEPARTMENT OF THE INTERIOR
## BUREAU OF LAND MANAGEMENT
## WASHINGTON, D. C. 20240
## COMPLAINT OF DISCRIMINATION

**IN RE:**     **Milton Earl Hill**
                **Complaint No. LLM-97-036**

## CONDENSED TRANSCRIPT

The Sworn Telephone Interview of **NINA ROSE HATFIELD,** taken in

the above-styled matter in the offices of the **UNITED STATES BUREAU OF**

**LAND MANAGEMENT**, 1620 L Street, N. W., Room 302, Washington, D. C.,

on the 7th day of July, 1998, beginning at 10:04 a.m..

## A P P E A R A N C E S

**On Behalf of the Bureau of Land Management:**

Lonnie C. King, Jr.,  Investigator
**KING, McCANTS & ASSOCIATES, INC.**

00229

County Court Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians
Professional Reporting Since 1975

| WINCHESTER, VA 22601 | WASHINGTON, DC 20007 | LEESBURG, VA 22075 | HARRISONBURG, VA 22801 |
| --- | --- | --- | --- |
| 124 East Cork Street | 1000 Potomac St., NW, Suite 300 | 110 Market Street NE | 22 East Market Street |

Member National Court Reporters Association • Virginia Court Reporters Association • Pennsylvania Court Reporters Association
Society for the Technological Advancement of Court Reporting

TOLL FREE  800 262-8777                                                    FAX  540 667-6562

SHEET 1

PAGE 1

1  RN TELEPHONE INTERVIEW OF
2  NINA ROSE HATFIELD
3  IN RE: MILTON EARL HILL
4  Complaint No. LLM-97-036
5  July 7, 1998
6  MR. KING: Ms. Hatfield, my name is
7  Lonnie King. I've been hired by the Bureau of Land
8  Management to investigate a complaint of
9  discrimination, filed by Mr. Milton Hill. Mr. Hill has
10  alleged that he was discriminated against, based upon
11  his race, African American, sex, male and also in
12  reprisal for having filed previous EEO complaints, when
13  he was not selected for the position of Staff Assistant,
14  Washington Office in August of 1996, and also when he
15  was not selected for the position of Congressional
16  Fellow, in the Congressional Fellows Program in
17  November, 1996.
18  Before I ask you some questions, I'd like to
19  ask you to please raise your right hand.
20  MS. HATFIELD: Okay.
21  NINA ROSE HATFIELD, having been duly sworn by The
22  Investigator, was examined, and testified as follows:
23  DIRECT EXAMINATION
24  BY MR. KING:
25  Q.  Would you give me your full name, grade and

PAGE 2

1  position, please?
2  A.  My name is Nina Rose Hatfield. I'm a Deputy
3  Director for the Bureau of Land Management. I'm an
4  NGS~.
5  Q.  How long have you been in the, in your current
6  position?
7  A.  Since about January the 20th of this year.
8  Q.  Of 1998?
9  A.  Uh-huh. (Indicating affirmatively.)
10  Q.  What is your race?
11  A.  I'm sorry?
12  Q.  What is your race? Let me explain that to you.
13  When these Complainants file they file on certain
14  bases. It's going to be race, sex, religion, national
15  origin, those kind of things. So, each witness that we
16  talk to, we have to ask them what their particular race
17  or sex or what have you, whichever is appropriate,
18  based on the accepted allegations and the accepted
19  bases.
20  A.  Well, I want you to know that I object to that
21  question strenuously.
22  Q.  Okay.
23  A.  Because if there are any facts here that would
24  indicate that Mr. Hill may or may not have been
25  discriminated against, it would be absolutely irrelevant

PAGE 3

1  about my particular race.
2  Q.  Okay.
3  A.  And particular sex.
4  Q.  Okay. Then your response to the question is
5  that you don't want to answer that?
6  A.  I object...
7  Q.  Oh, okay.
8  A.  ...to being asked.
9  Q.  Okay. Well, after objecting...
10  A.  It's irrelevant.
11  Q.  I know, but do you mind answering it, though?
12  A.  I happen to be White.
13  Q.  Okay. Your sex is female?
14  A.  That's correct.
15  Q.  Have you ever filed an EEO complaint before?
16  A.  I also object to that question.
17  Q.  Okay. All right. But have you filed one?
18  A.  Explain to me what relevance that might have?
19  Q.  It's the same thing. Reprisal is a bases.
20  A.  Well, in this case it couldn't possibly be a
21  bases, because I did not know that Mr. Hill had filed a
22  prior complaint.
23  Q.  Well, I'm going to ask you that question.
24  A.  Well, I mean that's the issue.
25  Q.  Yeah, but Ms. Hatfield, let me just say to you

PAGE 4

1  that process th    ollowing with you is not
2  something that I mad  up out of whole cloth. This is the
3  process that we have to follow in conducting these
4  investigations. So, these are kind of boilerplate
5  questions that I'm asking you now.
6  A.  Who designed the boilerplate?
7  Q.  Well, people years ago before I ever got,
8  before I ever got involved. But can we move beyond
9  this, if you don't mind, to just talk about the matters
10  that you do know something about?
11  A.  Well, let me tell you in this case, it does
12  happen that I have filed an EEO complaint.
13  Q.  Oh, okay, all right then. Well, let me move on.
14  Ms. Hatfield, were you the selecting official for the BLM
15  Congressional Fellows Program in November of 1996?
16  A.  Technically I don't think I was.
17  Q.  Oh, okay.
18  A.  Now I did was in the position of Assistant
19  Director and I did make a recommendation about
20  selection of a candidate from my Assistant Directorate.
21  But I don't think, I think that either the Director or the
22  AD for Communications was technically the selecting
23  official.
24  Q.  Now who would that person be?
25  A.  Well, at the time it would've been Gwen

PAGE 5

1  Mason. But now you know I don't know. I'm saying I
2  don't know who the technical selecting official was.
3  Q.  Okay.
4  A.  I think that it is clear that I did make a
5  recommendation and it was not Milton Hill.
6  Q.  Okay. Let's talk about what you did do then.
7  A.  And I'm sure that the ultimate decision was
8  based upon my recommendation.
9  Q.  All right then. Tell me was Milton Hill one of
10  the candidates that was put before you as a possible
11  recommendation?
12  A.  Yes.
13  Q.  You chose not to recommend him?
14  A.  That's correct.
15  Q.  Why did you choose not to recommend him?
16  A.  Because he had just been on the Hill.
17  Q.  By that you mean within the last year?
18  A.  Yes.
19  Q.  Or two years?
20  A.  He had just gotten back from an assignment on
21  the Hill. So, it did not seem to me that 1), it made
22  sense to send him back to the Hill and 2) he had been
23  away from the work area for some time. We had
24  reduced staff and we needed him in the position we
25  placed him in.

PAGE 6

1  Q.  Mr. Hill has also alleged that because he was
2  not put into this program that somehow or another
3  impacts on his ability to move up as a manager. He's
4  basically saying that it denies him promotional
5  opportunities and what have you.
6  A.  Well, like I said, you know, that is to me a
7  nonsensical allegation, when he already had the
8  Congressional experience.
9  Q.  Right, okay. He also has alleged, and Ms.
10  Hatfield mind you now I'm telling you he has alleged
11  this. I'm not sure what the story is, until I finish this
12  investigation.
13  A.  Okay.
14  Q.  But he has alleged that there were other
15  people similarly situated, not of his protective group,
16  who have gone down to the Hill on more than one
17  occasion. Are you aware of any of that?
18  A.  No, I'm not.
19  Q.  Okay.
20  A.  You know that may or may not have happened.
21  To my knowledge, you know, there's not been anybody
22  that I recommended for that program that had prior
23  Congressional experience to the extent that Milton Hill
24  had.
25  Q.  All right.

00200

2/4

SHEET 2          7

1  A.  Now  now like I said, I didn't go through
2  all their records.
3        Q.  I understand that.
4  A.  It could've happened, but not to my
5  knowledge.
6  Q.  Right.  Ms. Hatfield, I want to ask you about
7  this EEO thing now.  We talked about it briefly at the
8  beginning, but I just try to keep it in the sequence here.
9  He has alleged that these actions that were taken,
10 quote, that impacted him, were done because he filed
11 an EEO complaint.
12 A.  That is absolutely, categorically untrue.
13 Q.  Okay.
14 A.  I didn't know he had one filed, number one.
15 Number two, I thought I had a good managerial reason
16 for not selecting Milton Hill for that particular program.
17 And given the same set of facts, I would've made the
18 same decision.
19 Q.  All right.  Okay.  Let me go through this
20 process with you for just one more time.  We'll be
21 mailing you, in a confidential envelope, your statement
22 for you to review.
23 A.  Okay.
24 Q.  There will be some instructions in there for
25 you to review it and then get it back to the EEO office.

PAGE 8

1  I appreciate the opportunity to interview you on this
2  matter.  I want to put on the record, though, just before
3  we close, that you don't know anything at all about the
4  Staff Assistant position that he was quote, not selected
5  for, do you?
6  A.  No.
7  Q.  Okay then.  All right.  If you have any
8  questions about any of this, once you get the transcript,
9  you can reach me, Lonnie King, and my number is
10 301...and this will be on the transcript.  It's 301-596-
11 3301.
12 A.  Okay.
13 Q.  Thank you very much.
14 A.  Uh-huh.  (Indicating affirmatively.)
15 Q.  Bye, bye.
16 A.  Bye.
17 (WHEREUPON, the Sworn Telephone Interview of NINA
18 ROSE HATFIELD was concluded at 10:12 a.m.)
19 .
20 .
21 .
22 .
23 .
24 .
25 .

PAGE 9

C A P T I O N

2        The Sworn Interview of the Sworn
3  Telephone Interview of NINA ROSE HATFIELD, taken in
4  the matter, on the date, and at the time and place set
5  out on the title page hereof.
6        It was requested that the Interview be taken by
7  the reporter and that same be reduced to typewritten
8  form.
9  .
10 .
11 .
12 .
13 .
14 .
15 .
16 .
17 .
18 .
19 .
20 .
21 .
22 .
23 .
24 .
25 .

PAGE 10

1        INTERV    ERRATA SHEET
2  .
3  WITNESS: NINA ROSE HATFIELD
4  INTERVIEW DATE: 7-7-98
5  .
6  I have read the entire transcript of my Interview.  I
7  request that the following changes be entered upon the
8  record for the reasons indicated.  I have signed my
9  name to the Errata Sheet and Signature Page to be
10 attached to the original transcript.
11 p2, l4  —  "NSCS"  is  "SES"
12 p4, l0  —  strike  "in this case"
13 p, l8  —  strike  "did"
14 p6, l2  —  strike  "like I said, you know"
15 p7, l1  —  strike  "Now you know, like I said"
16 .
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____

PAGE 11

1  _____
2  _____
3  _____
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 .
18 SIGNATURE: _Nina Rose Hatfield_ DATE: 8-4-98
19 NINA ROSE HATFIELD
20 SIGNATURE OF WITNESS
21 I have read the foregoing transcript of the
22 Interview taken on the ___ day
23 of _July_, 1998, and it is a true and
24 correct record of my testimony given at that time
25 and place except as to any corrections I have

PAGE 12

1  listed below.  I understand that the information I
2  have given is not to be considered confidential
3  and that it may be shown to the interested parties.
4  .

00231

3/4

# CERTIFICATE OF REPORT

**STATE OF VIRGINIA AT LARGE:**

I, **FRANK J. SPACEK, III,** Notary Public for the State of Virginia at Large, do hereby certify that the foregoing was reported by stenographic and mechanical means, which matter was held on the date, and at the time and place set out on the title page hereof and that the foregoing constitutes a true and accurate transcript of same.

I further certify that I am not related to any of the parties, nor am I an employee of or related to any of the attorneys representing the parties, and I have no financial interest in the outcome of this matter.

GIVEN under my hand and Notarial seal this <u>15th</u> day of <u>July</u>, 1998.

My Commission Expires:    Notary Public
May 31, 2001

00232



County Court Reporters, Inc.

CCR

Registered Professional Reporters      Certified Video Technicians

(800)262-8777   Commons on Cork, 124 East Cork Street, Winchester, VA 22601   (540)667-0600
CCR@CourtReportingServices.com

4/4

## FAX COVER SHEET

October 13, 1999

Milton E. Hill
P. O. Box 1021
Lanham, MD 20706
home: (301) 568-4651 work: (202) 208-7555

Senator Paul Sarbanes :

This is an appeal for assistance in the matter regarding the Department of the Interior- Bureau of Land Management (DOI-BLM) top-level Management Officials (Director, Tom Fry; Deputy Director, Nina Hatfield; Special Assistant, Twinkle Thompson; Assistant Director, Robert Doyle, Deputy Assistant Director, Roger Hildebiedel; Deputy Assistant Director, Peter Niebauer; and Assistant Director, Warren Johnson, etc.) and their assault on my career goals.

Over the past 10 years, Management officials have:

- attempted to degrade and demoralize me as a human being;
- constructed barriers to my career (denying enhancing training and assignments)
- subject me to an extremely hostile environment;
- consistently falsified my documents;
- made false statements against me;
- refused to provide me performance appraisals thereby denying me the opportunity to apply for positions outside BLM;
- refused to compensate me for exceptional job accomplishments;
- demeaned and demoralized me on a daily basis by denying me assignments and basic office necessities; and
- required me to pay for my own developmental training.

As a combat veteran and military officer in Vietnam, I participated in over 100 military missions and was willing to give my life for my country. Twenty five years later and now a retired Lieutenant Colonel in the U. S. Army Reserves, I am confronted with the same types of fascist traits that I fought against ( i.e.,oligarchical and centralized oppressive controls, abuse of power and authority, bigotry, and suppression of minorities).

Although I have overcome many barriers to my career, it is, however, impossible for me to overcome an entire agency [BLM] which utilizes its resources maliciously against me in an attempt to harm and discredit me.

I have used the "chain of command" in attempts to solicit a resolution and to address the millions of dollars that have been wasted by arrogant and dishonest managers who feel they are "above the law." To date, nothing has been done.

This is a desperate appeal for your immediate assistance in these matters.  Thanks in advance.

*Interrogatory #7* 1/8



# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Washington, D.C. 20240
http://www.blm.gov

1400-713 (720)

NOV  4 1999

Honorable Paul S. Sarbanes
United States Senator
Tower 1, Suite 1700
100 South Charles Street
Baltimore, Maryland 21201-2700

Dear Senator Sarbanes:

Thank you for your letter of October 18, 1999, on behalf of your constituent, Mr. Milton E. Hill, regarding his employment with the Bureau of Land Management (BLM).

The Federal Government provides two avenues of redress for employees who believe that they have been subjected to discriminatory or otherwise illegal treatment on the job. The Equal Employment Opportunity (EEO) Program ensures the investigation and impartial hearing of allegations related to discrimination based on sex, religion, national original, color, race, or physical or mental handicap or to reprisal for having used the EEO system, and it provides for final review by the EEO Commission. The Administrative Grievance Program addresses allegations of violations of Federal regulations regarding employment that ultimately may be heard by the Merit Systems Protection Board. It would appear from Mr. Hill's letter that his concerns may appropriately be raised under either or both of these programs.

For information on EEO Program procedures, we suggest that Mr. Hill contact Ms. Michelle Stroman, Servicing EEO Officer for the BLM's headquarters office. Ms. Stroman may be reached at (202) 452-7790. For information on administrative grievance procedures, we suggest that he contact Ms. Karen Ryan, Servicing Personnel Officer for the BLM's headquarters office. Ms. Ryan may be reached at (703) 440-1500.

The BLM observes a standing policy of "zero tolerance" for discrimination and harassment in the workforce, and we trust that the information provided above will be of assistance to Mr. Hill. We appreciate your interest in this matter and if we can be of further assistance, please do not hesitate to contact us.

Sincerely,

Warren Johnson, Jr.
Assistant Director
Human Resources

Interrogatory #17 2/8



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Washington, D.C. 20240
http: www.blm.gov

1400-713 (720)

NOV  4  '99

Honorable John W. Warner
United States Senator
4900 World Trade Center
101 West Main Street
Norfolk, Virginia 23510-1690

Dear Senator Warner:

Thank you for your letter of October 19, 1999, on behalf of your constituent, Mr. Milton E. Hill, regarding his employment with the Bureau of Land Management (BLM).

The Federal Government provides two avenues of redress for employees who believe that they have been subjected to discriminatory or otherwise illegal treatment on the job. The Equal Employment Opportunity (EEO) Program ensures the investigation and impartial hearing of allegations related to discrimination based on sex, religion, national original, color, race, or physical or mental handicap or to reprisal for having used the EEO system, and it provides for final review by the EEO Commission. The Administrative Grievance Program addresses allegations of violations of Federal regulations regarding employment that ultimately may be heard by the Merit Systems Protection Board. It would appear from Mr. Hill's letter that his concerns may appropriately be raised under either or both of these programs.

For information on EEO Program procedures, we suggest that Mr. Hill contact Ms. Michelle Stroman, Servicing EEO Officer for the BLM's headquarters office. Ms. Stroman may be reached at (202) 452-7790. For information on administrative grievance procedures, we suggest that he contact Ms. Karen Ryan, Servicing Personnel Officer for the BLM's headquarters office. Ms. Ryan may be reached at (703) 440-1500.

The BLM observes a standing policy of "zero tolerance" for discrimination and harassment in the workforce, and we trust that the information provided above will be of assistance to Mr. Hill. We appreciate your interest in this matter and if we can be of further assistance, please do not hesitate to contact us.

Sincerely,

Warren Johnson, Jr.
Assistant Director
Human Resources

79

Interrogatory #17  3/8



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Washington, D.C. 20240
http://www.blm.gov

1400-713 (720)

**NOV 2 9 1999**

Honorable Albert Russell Wynn
Member, United States House
  of Representatives
9200 Basil Court, #316
Springdale, Maryland 20774

Dear Mr. Wynn:

Thank you for your letter of November 9, 1999, on behalf of your constituent, Mr. Milton E. Hill, regarding his employment with the Bureau of Land Management (BLM).

The Federal Government provides two avenues of redress for employees who believe that they have been subjected to discriminatory or otherwise illegal treatment on the job. The Equal Employment Opportunity (EEO) Program ensures the investigation and impartial hearing of allegations related to discrimination based on sex, religion, national original, color, race, or physical or mental handicap or to reprisal for having used the EEO system, and it provides for final review by the EEO Commission. The Administrative Grievance Program addresses allegations of violations of Federal regulations regarding employment that ultimately may be heard by the Merit Systems Protection Board. It would appear from Mr. Hill's letter that his concerns may appropriately be raised under either or both of these programs.

For information on EEO Program procedures, we suggest that Mr. Hill contact Ms. Michelle Stroman, Servicing EEO Officer for the BLM's headquarters office. Ms. Stroman may be reached at (202) 452-7790. For information on administrative grievance procedures, we suggest that he contact Ms. Karen Ryan, Servicing Personnel Officer for the BLM's headquarters office. Ms. Ryan may be reached at (703) 440-1500.

The BLM observes a standing policy of "zero tolerance" for discrimination and harassment in the workforce, and we trust that the information provided above will be of assistance to Mr. Hill. We appreciate your interest in this matter and if we can be of further assistance, please do not hesitate to contact us.

Sincerely,

Concetta B. Stewart

for Warren Johnson, Jr.
Assistant Director
Human Resources

RECEIVED

DEC ‑ 1999

ANDOVER OFFICE
ALBERT R. WYNN, MD

*Interrogatory #17  4/8*



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Washington, D.C. 20240
http://www.blm.gov

November 23, 1999

Mr. Milton E. Hill
P.O. Box 1021
Lanham, Maryland 20706

Dear Mr. Hill:

On October 13, 1999, you sent a letter to Senator Paul Sarbanes in which you appealed for his assistance in matters related to your career with the Bureau of Land Management (BLM). Senator Sarbanes has referred your letter to BLM, and has requested a review and a report on the matters you raised in your letter. At our November 1, 1999, meeting I asked you whether you had ever expressed the thought that I might be a racist. You told me you had not done so, nor did you indicate you had any problems with me. Yet, your October 13, 1999, letter clearly names me as a top-level management official that you believe has assaulted your career. Specifically, your allegations against BLM's management officials, including me, include the following allegations:

- We attempted to degrade and demoralize you as a human being;

- We constructed barriers to your career through denying enhancing training and assignments;

- We subjected you to an extremely hostile environment;

- We consistently falsified your documents;

- We made false statements against you;

- We refused to compensate you for exceptional job accomplishments; and

- We demanded and demoralized you on a daily basis by denying you assignments and basic office necessities.

This seems to be a clear contradiction to your expressions to me in the November 1, 1999 meeting.

*Interrogatory #175/8*

2

In light of the fact that you were less than candid with me in our meeting, I fail to see any benefit to another meeting. Furthermore, your failure to be completely candid with me has led me to decide that under these circumstances, it would be unfair to me, and perhaps you, for me to be involved in any management decisions concerning your career. Therefore, I have decided to recuse myself from any decisions by BLM management that may affect your career.

Sincerely,

Tom Fry
Acting Director

6/8

December 9, 1999

Milton E. Hill
P. O. Box 1021
Lanham, MD 20706
(301) 568-4651

Tom Fry, Acting Director
Department of the Interior
Bureau of Land Management
Room 5660, MIB
Washington, DC 20240

Mr. Fry:

I am in receipt of your November 23, 1999 correspondence which I have attached. In your letter you stated that you are unwilling to be involved in any matters concerning my career; nor are you interested in trying to resolve the serious matters of racial and age discrimination. The reason you provided was "your failure to be completely candid with me has led me to decide that under these circumstances, it would be unfair to me, and perhaps you, for me to be involved in any management decisions concerning you career."

You also accused me of calling you a racist in my October 13, 1999 letter to Senator Paul Sarbanes, yet the term "racist" was NOT mentioned one time. I have attached a copy for your review.

Regarding your letter to me, I now understand your defensiveness and hostility towards me in our meeting that included Warren Johnson. You never had any intentions of resolving my issues or the broader issues of the bureau-wide assault on African-American employees.

Your "calling me a racist" charge is clearly bogus; and, basically a smokescreen for your unwillingness to not do anything to correct the situation. How you interpreted me calling you a racist is beyond me. All I mentioned were the numerous barriers imposed upon me. Your actions remind me of the old adage, "where there is smoke there is usually fire."

Your AD, HRM's (Warren Johnson) response to the Senator is also attached.

Thank you for your time.

*Milton E. Hill*

*Interrogatory #17 7/8*

December 9, 1999

To:        John Berry, Assistant Secretary

From:     Milton E. Hill

Subject:    Follow-up Meeting

This is a request for a meeting with you as soon as possible regarding my decision on the details with Dr. Taylor and/or "the Detroit proposal."

As you advised, I met with Tom Fry (and Bob Doyle) to resolve my issues and make a decision regarding my proposed IPA with the city of Detroit. Tom Fry stated "I could resolve your issues and make a decision, but the question is will I?" Subsequently, he instructed his support staff to not to put me on his calendar for a follow-up meeting. And, he refused to respond to my correspondences requesting his assistance in rendering a decision on my behalf. Assistant Director, Bob Doyle, refused to meet with me at all to attempt resolution in this matter although I used the proper change of command.

More disheartening is Tom Fry's false charge of me calling him a racist and therefore "he recuse" himself from assisting me. This is strictly bogus and a poor excuse for him not being willing to take aggressive actions to correct the wrongs perpetrated by managers in the BLM. I have attached the correspondence so you can review for yourself.

As you can note, both Tom Fry and the BLM Human Resource Director (Warren Johnson) have basically told me and the Senators and Congressional persons that they would continue to treat me and other African-American employees as third-class citizens; and, treat me (us) with disdain. And, if we had problems with their treatment of me (us), I (we) could file grievances because they would never willingly resolve the issues.

Thank you

*Milton E. Hill*

Exhibit 20   11 Pages

*Interrogatory #17*8/8