UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MILTON HILL,

     Plaintiff

v.                             Civil Action No. 06-1233(JDB)

DIRK KEMPTHORNE,

     Defendant

**PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT**

       Comes now Plaintiff, through counsel, and states as follows:

**RESPONSE TO STATEMENT OF FACTS**

**Background**[1]

       1.  On May 12, 2006 Complainant filed a formal complaint of discrimination.

       2.  In response to a request by the 1st EEOC Administrative Judge (AJ), both Plaintiff and the Agency stated that the EEOC contact occurred on 10/12/99. See Plaintiff's Appendix (PAPX)p 3. PAPX is attached to this

---

[1] These designations correspond to the Defendant's

response and numbered in the lower right hand corner pages 1 to 56. Plaintiff made a telephone contact on 10/12/99. PAPX p 1.

    **3.**  In a decision dated 8/31/03, the 1st EEOC AJ found that the allegations which are the subject matter of this lawsuit to be timely, but found they were subject to summary judgment. PAPX pages 2-11.

    **4.**  Plaintiff appealed the summary judgment ruling to the EEOC'S Office of Federal Operations (OFO). In a decision dated 9/25/05, the OFO again found that the Plaintiff initially make contact on 10/12/99 PAPX p 15, but reversed all the AJ's summary judgment rulings and remanded the case for a hearing because it found that the record contained genuine issues of material fact. Ib. @ p15.

    **5.**  Upon remand, the second EEOC AJ scheduled the case for a hearing PAPX 22 involving the exact issues currently before this Court PAPX 24-25. When Complainant filed his pro se complainant, the EEOC terminated administrative processing.[2] PAPX 26.

---

[2]The OFO refused to permit this case to be dismissed on summary judgment and the second AJ scheduled the matter for a hearing. The question then becomes what did the government present before this Court that the EEOC never considered? The answer is nothing substantial; which is one reason why the motion should be denied.

**Count 1 ( EEOC Allegations 7 and 8 )**

On September 22,1999 Plaintiff requested that
Robert Doyle correct the errors in his FY 98 evalution
because the imput from peers resulted in Plaintiff not
receiving an award. The failure to make the corrections
requested in the memo of 9/22/99 resulted in this count. See
Defendant's Exhibit 2. As a result, Plaintiff denies that
this claim is untimely.

**Count 2 (EEOC Allegation 9)**

The basis for this count is that as a result of
management's failure to provide travel funds, Plaintiff
could not attend the Black Chamber of Commerce meeting.

**Count 3 (EEOC Allegation 6)**

The basis for this count is that management
officials, aware of Plaintiff's protected activity,
terminated a detail he was serving in November 1999. The
termination of the detail occurred during a time-frame
during which a reasonable inference of discrimination could
be drawn. The OFO also found that the responsible management
officials offered no non discriminatory reasons for the
termination. PAPX 16-17.

**Count 4 (EEOC Allegation 12)**

The basis for this claim is that in December 1999, management officials rewrote his job description such that his responsibilities were greatly reduced.

**Count 5 (EEOC Allegation 13)**

The basis for this claim is that in December 1999, two of his Plaintiff's peers were promoted to acting supervisors and he was not as a result of Plaintiff engaging in protected activity.

**Count 6 -** Dismissed in Open Court

**Count 7 (EEOC Allegation 4)**

The basis for this count is that Plaintiff was not selected for a position filled by a far less qualified selectee.

**Count 8 (EEOC Allegation 15)**

The basis for this count is that due to retaliation for protected activity, management officials refused to submit Plaintiff's application for Assistant BLM Director Eastern States. As a result, he was never considered for the position for which he was qualified.

- 4 -

**RESPONSE TO SUMMARY JUDGMENT ARGUMENTS**

As correctly noted in Defendant's motion,
BURLINGTON N. & SANTA FE RY. CO. v WHITE 126 S Ct 2405(2006)
expanded the scope of what type of action is necessary to
trigger a retaliation claim. Before BURLINGTON, the circuits
had been split. Some took a very narrow approach in holding
that only a termination could invoke the retaliation
provision. The DC Court had always adopted a more expansive
approach. See ROCHON v GONZALES 438 F. 3d 1211 (DC Cir
2006). The BURLINGTON court adopted the approach of the DC
Circuit and that of the EEOC in holding that an adverse
action is not required to maintain a retaliation claim.

It should also be noted that count 3 (termination
of a detail) count 4 (rewriting a job description), count 7
(non selection) and count 8 (de facto non selection) are all
adverse actions in the traditional sense. Furthermore, count
1 (performance evaluation) and count 2 (travel funds) can be
used to maintain a retaliation claim under BURLINGTON. This
is so because a reasonable worker would be dissuaded from
bringing a retaliation claim if a bad performance evaluation
would be given or if necessary travel funds would be refused
after one was filed. The same reasoning applies to count 5

because one loses the promotion potential of functioning as an acting supervisor.

**I**

As will be discussed more fully, Plaintiff has established a primia facia case of retaliation and therefore the burden shifts to Defendant to establish a legitimate non discriminatory reason for its actions McDONNELL – DOUGLAS CORP. V GREEN 411 US 792(1973). However, the McDONNELL – DOUGLAS test does not apply where there is direct evidence of discrimination TRANS WORLD AIRLINES, INC. v THURSTON 469 v 111, 121(1985). Plaintiff has such evidence.

The direct evidence of discrimination is set forth in PAPX pages 27 to 31 . It was produced in discovery as an attachment to Plaintiff's Supplemental Interrogatory Responses. In any discrimination case, it is rare to get a glimpse into the mind of someone who has a discriminatory animus. Here, Plaintiff's supervisor did not want Plaintiff to obtain a security clearance.

The reason given is that the Plaintiff takes advantage of the system and is of questionable integrity

because he " will file an EEO complaint or grievance at the
drop of a hat". Mr. Niebauer lied to the investigators about
how the Plaintiff was terminated from his position for
falsifying travel vouchers. This never happened. Mr.
Niebauer's smears and innuendoes derived from the fact that
Plaintiff was promoted due to grievance involving a
discrimination allegation and that " He always feel he is
being discriminated against". If this is not direct evidence
of discrimination; then it is impossible to establish any.
Mr. Niebauer also states that Mr. Hill has created animosity
within the BLM.

It is highly unfortunate that BLM management
viewed Plaintiff as a potential traitor to his county
because he sought the protection of the civil rights laws.
The Agency took this position notwithstanding the fact that
the Plaintiff had many combat mission in Vietnam, was a
Lieutenant Colonel in the Army Reserves and worked for the
federal government for over 20 years prior to his disability
retirement in 2002 due to kidney failure. See Govt Exhibit
14 pages 32 to 37 of 71. Congress passed the anti
retaliation provision of Title 7 specifically to prevent Mr.
Niebauer's attitude.

Plaintiff would never have known about this animus that management harbored against him as a result of his protected activity if he had not made the FOIA request. Regardless of the source, the document verifies the OFO's finding that Plaintiff was regarded as an EEO agitator and pariah. PAPX P 16.

## II

There are two forms of retaliation in this case. The first becoming the animus of Niebauer and other management officials as set forth in the FOIA request. The second is demonstrated by the actions of Thomas Frye and Warren Johnson which will be discussed in a later section. Neither can be decided in a vacuum. The problems that Plaintiff experienced after he returned from the Industrial College in September of 1999 were a culmination of many years of EEO disputes Plaintiff had with the Agency. The previous EEO activity is set forth in PAPX pages 32 to 38. It verifies a decade of problems Plaintiff had with the Agency. Although many of these allegations are now untimely, the OFO found that, as background evidence, they support an inference of discrimination based upon reprisal. PAPX 15.

### III

Very close temporal proximity of the adverse action to the Agency's knowledge of the protected activity is sufficient evidence here to establish a prima facia case. Thus, the following timeline is submitted:

23 August 1999        Non selection under WO 99-27 (count 7)

 9 September 1999     Plaintiff returns from the Industrial College of the Armed Forces.

22 September 1999     Plaintiff's memo to Robert Doyle alleging discrimination and improper performance evaluations(count 1) See Def's Exh 29 pages 1-3 of 11.

late September 1999 Plaintiff's travel funds are refused (count 2)

29 September 1999     Plaintiff's memo to Assistant Secretary Berry. See Def's Exh 4.

13 October 1999       Plaintiff's letter to Sarbanes. See Def's Exhibit 6.

 1 November 1999      Plaintiff's meeting with Fry and Johnson

1 November 1999        Plaintiff's detail terminated (count 3)

3 November 1999        Plaintiff's memo to Fry. See Def's Exh 7

4 November 1999        Johnson letter to Sarbanes. See Def's
                       Exh 34 p 32 of 38.

4 November 1999        Johnson letter to Senator Warner. See
                       Def's Exh 34 p 33 of 38.

19 November 1999       Plaintiff's job description rewritten
                       (count 4).

23 November 1999       Fry letter to Plaintiff. See Def's Exh
                       34 p 35-36 of 38.

29 November 1999       Johnson letter to Congressman Wynn. See
                       Def's Exh. 34 p 34 of 38.

   November 1999       Application not submitted (count 8)

9 December 1999        Hill memo to Fry.

   December 1999       Peers promoted to acting supervision
                       (count 5).

**IV**

The first AJ and the OFO carefully considered the timeliness issued for count 1 and it was found to be timely. The OFO specifically addressed this issue and found that the responsible supervisor denied knowledge of these actions and do not offer a nondiscriminatory explanation. One of the supervisors responsible was Peter Neibauer who has a proven animus towards the Plaintiff because of previous EEO activity. The claim is timely because Plaintiff requested that the evaluation be amended by his memo of 9/22/99 to Robert Doyle. This was not done and Plaintiff sought EEO counseling on 10/12/99, with 45 days of his memo to Doyle[3]

Dismissal is improper on count 2 for several reasons. First, Peter Neibauer was involved in the approval of these funds.  See Defendant's Exh 5. Secondly, it occurred several days after Plaintiff's 9/22/99 memo to Doyle complaining of discriminatory treatment; therefore occurring within a time frame such that a reasonable

---

[3] The memo to Doyle of 9/22/99 is not the required EEO contact of counseling within 45 days. It is, however protected activity for purposes of a retaliation claim because Plaintiff is requesting that the discriminatory conduct cease. Protected activity includes any opposition to an employment practice which the employee reasonably believes violates Title 7. 42 USC 2000 e-3(a).

inference of nexus can be made. Finally, the OFO addressed
the same arguments made here. It found that the agency did
not provide a nondiscriminatory explanation for its actions
but rather disputed the truth of Plaintiff's version of the
events. The OFO found that this created a genuine dispute of
a material fact. PAPX p 17.

Count 3 involves the active of Tom Frye and Warren
Johnson prior to the meeting of 11/1/99, both men knew of
letter dated 10/13/99 that Plaintiff had written to Senator
Sarbanes.[4] See Defendant's Exh 23 page 2 of 40. Both men
also knew that Plaintiff had raised issues of discriminatory
conduct with Assistant Secretary Berry (also protected
activity) See Defendant's Exh 4. Both know that Plaintiff
wanted a meeting with them (Frye and Johnson) as a result.
See Defendant Exh 23 page 5 of 40. Immediately after this
meeting, Plaintiff's detail was terminated. Frye's real
feelings about the meeting were expressed in his
inappropriate letter to Plaintiff dated 11/23/99. See
Defendant's Exh 34 p 35-36 of 38. This is a blatant case of
retaliatory conduct.

---

[4] The letter to Sarbanes is protected activity (as was the memo to Dogle of 9/22/99)
because Plaintiff was seeking relief from discriminatory treatment and raisisng allegations
of discrimination. The same is true of Plaintiff 's memo to Berry of 9/29/99.

After Frye wrote the letter to Plaintiff on
11/23/99, it was only a matter of days before Plaintiff's
position description was rewritten resulting in count 4. The
original position description was that of Senior Business
Manager. See Def's Exh. 34 pages 15-17 of 38. The rewritten
position description was a job for a Senior Business
Management Specialist. See Def's Exh 34 pages 18-26 of 38.
As a result , Plaintiff went from a management position to a
clerical position. The new clerical position was far below
his GS14 level.

Less than one month after Frye wrote the
retaliatory letter to Plaintiff of 11/23/99, Plaintiff was
subjected to further retaliation leading to count 5.
Plaintiff's memo to Robert Doyle of 9/22/99 is an
unequivocal expression of a desire for placement in career
enhancing assignments. See Def's Exh 29 pages 1-3 of 11. The
fact that his peers were promoted and Plaintiff was not
underscores the difficulties he had at the Agency.

All of the above-mentioned counts (1 through 5)
transpired within a period of less than 60 days. During this
period, Plaintiff engaged in several protected

- 13 -

activities. The Agency responded with retaliatory conduct
significant enough under BURLINGTON to be actionable. The
OFO found the close proximity in time between protected
activity and retaliation enough to defeat summary judgment.
This Court can made a similar finding under its caselaw. See
SINGLETARY v DISTRICT OF COLUMBIA 351 F 3d 519, 525 (DC Cir
2003) and HOLCOMB v POWELL 433 F 3d 889, 903 (DC Cir 2006).


                              v

        Peter Neibauer's dislike of Plaintiff based upon
his EEO filings began long before Plaintiff returned to the
Agency in September of 1999. Similarly, Plaintiff's problems
actually began before he returned. In August of 1999 he was
not selected for a position under WO 99-27 which lead to
count 7. When this position was originally advertised, it
called for an individual with leadership skills. There was
no emphasis on automating the human resources department. As
a result a " wide gulf[5]" existed between the candidates for
the originally advertised vacancy because the selectee's
experience was primarily clerical. See  PAPX p 16. However,
after the announcement was rewritten, experience in human

_____

[5] SIMPSON v LEAVITT 437 F Supp 2d 95, 101(DDC 2006)

resources automation ( Concetta Stewart was the only
candidate who had any) became paramount. Warren Johnson
admitted that he made the change. See Def's Exh 23 page 8 of
40. He also admitted that in the first announcement
supervisory experience was more important than human
resources automation experience Id 9 of 40. Finally, Mr.
Johnson admitted that the title on the second vacancy
announcement was changed to correspond to the exact title
that Ms. Steward had. Id 10 of 40. It is obvious that the
requirements of this job were changed to award it to Ms.
Steward to the exclusion of Plaintiff. Summary judgment
could be denied on that basis above. However, the OFO also
denied summary judgment on the grounds that management
officials were award of Plaintiff's complaints about
discriminatory treatment approximately two months this non
selection. PAPX 16.

If it were possible to rate the discriminatory
conduct which Plaintiff was subjected to in terms of highest
disregard for the anti retaliation laws; it would have to be
count 8. The purpose of the meeting between Plaintiff, Frye
and Johnson on 11/1/99 was supposed to be a dialogue about
the concerns  Plaintiff had raised in a memo to Assistant
Secretary Berry of 9/29/99. It was anything but that. The

hostility between the participants is well documented in
Def's Exhs 7, Exh 34 pages 35-36 of 38 and Exh 9. The
hostility manifested itself in the failure of management to
submit Plaintiff's application for an assistant BLM Director

The efforts that Plaintiff made to submit his
application are documented on pages 35-36 of the Defendant's
motion. Plaintiff was relying on management to get his
application to the proper place, which is reasonable. As a
result, because Plaintiff made every reasonable effort to
convey interest in the job to his employees, the failure to
apply is not a bar to a discriminatory non-selection claim.
CLIPPER v BILLINGTON 414 F Supp 2d 16, 22 (DDC 2006). If
Frye recused himself from any further dealings, Warren
Johnson did not.

There is no doubt that management's inaction kept
Plaintiff from being considered for the position. The
selecting official never saw Plaintiff's application and has
no knowledge of whether the person selected was more
qualified. See Def's Exh 17 page 3 of 7 (Gordon depo p
10-11). If the selecting official does not know who is
better quialified (Mr. Ned or Mr. Hill), then summary
judgment is improper.

**VI**

In light of the foregoing, the motion should be denied.


MILTON HILL
By Counsel



Stephen Domenic Scavuzzo ( 318279 )
8200 Greensboro Drive
Suite 900
McLean VA 22102
703 319 8770