# PLAINTIFF'S APPENDIX

| **Document** | **Page** |
|---|---|
| Order Entering Judgment dated 8/31/03 | 1 |
| OFO Decision dated 9/25/05 | 2 |
| Scheduling Order dated 5/24/06 | 12 |
| Agency's Pre-hearing Report dated 6/19/06 | 24 |
| EEOC Order dated 7/10/06 | 26 |
| FOIA Response | 27 |
| Interrogatory Responses dated 7/2/07 | 32 |
| Investigation Report (IR Exhibit 6) pages 25,26,69,70,78-85 | 40 |
| Investigation Report (IR Exhibit 7) pages 6-8 | 53 |

RECEIVED

| Form DI-1892 REV. 3/98 | U. S. Department of the Interior<br>Complaint of Discrimination 11:23 AM '00 |
|---|---|

1. Complainant's Name: _Milton E. Hill_    Place of Employment: _DOI - BLM_

Street Address: _P. O. Box 1021_    Address: _1620 "L" Street N.W._

City, State, Zip Code: _Lanham, MD 20706_    City, State, Zip Code: _Washington, DC 20036_

Home Phone: _(301) 568-4651_    Work Phone: _(202) 452-7751_

2. DOI Office which you believe discriminated against you?

Bureau: _Bureau of Land Mgmt_    Division/Office: _WO_

Address: _1849 "C" Street NW_    Region: _Bureauwide_

City/State: _Washington DC_

3. Basis(es) for believing you were discriminated against? (Check one or more, and provide the specific Information.)

_✓_ Race _____    _____ Age (Date of Birth) _MAY 1_

_____ Color _____    _____ Physical Handicap _____

_____ Region _____    _____ Mental Handicap _____

_✓_ Sex _____    _✓_ Reprisal _____

_____ National Origin _____    (Date of previous EEO activity) _____

4. Allegation(s) of discrimination? (For each allegation, state the date and the specific incident causing you to believe that you have been discriminated against. FOR EXAMPLE: I was discriminated against on January 1, 1992, when I was not selected for the position of Analyst. (Use additional pages as necessary.)

_See Attachment (EEO Complaint)_

5. Have you discussed your complaint with an EEO Counselor? Yes _✓_ No _____ (If yes, name of Counselor):
_Floyd Watson, Pamela_
_Veronica Burgess_ Date you first contacted the Counselor: _Oct 19, 1999_

6. Are you agreeable to using the Alternative Dispute Resolution (ADR) process? Yes _✓_ No _____

7. Have you presented these allegations to any other forum? If so, please indicate: _NO_

_____ Negotiated Grievance Procedure _____ Merit Systems Protection Board _____ Court (Civil Action)

8. List the remedies which you believe will resolve your complaint: (Use additional pages, as necessary.)
_See Attachment (Complaint Resolution)_

9. Complainant's Signature: _Milton E Hill_    Date: _May 19, 2000_

10. For Agency Use:
Complaint Docket Number: _____    Date Received of Postmarked: _____

_LLM-00-042_    000032

1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

|  |  |
|---|---|
| MILTON HILL,        ) <br>     COMPLAINANT,    ) <br> v.                        ) <br>                            ) <br> GAIL NORTON,       ) <br> SECRETARY,         ) <br> DEPARTMENT OF THE INTERIOR, ) <br> (Bureau of Land Management),   ) <br>     AGENCY.         ) <br>                            ) | Date: August 31, 2003 <br><br> EEOC CASE NO. <br> 100-A2-7056X <br><br> AGENCY CASE NO. <br> LLM 00-042 |

## <u>DECISION</u>

On May 19, 2000, the Complainant filed a formal complaint alleging discrimination in violation of Title VII of the Civil Rights Act of 1962, 29 U.S.C. §2000e *et seq*. At issue are sixteen (16) separate actions as articulated in the Agency's acceptance letter of February 13, 2001. Report of Investigation (ROI), Exh. 4.[1] For the reasons explained below I find that several allegations are subject to procedural dismissal and that the remainder are subject to summary judgment.

<u>Procedural Dismissal</u>

On November 21, 2002, I proposed dismissal of allegations (1), (2), (3), (4), (5), part of (6) relating to April 1999, (7), (9), (10), part of (12) relating to December 1999, (13), (14), (15), and (16) on grounds of untimely contact with an EEO counselor under the EEOC Regulation at 29 C.F.R. § 1614.105(a)(1)(2002), which requires contact within 45 days.[2] I stated that the continuing violation theory, which makes untimely challenged events timely if related to a timely challenged

---

[1] Eight (8) additional actions proposed for dismissal in the acceptance letter are not at issue. The February 26, 2002, Acknowledgment Order required the parties to address any Agency dismissals during the investigative process within (fifteen) 15 days of receipt of the Order. The order stated that "[I]f the Complainant fails to oppose in writing the dismisal of a claim within the 15-day comment period, the opportunity to have the dismissal reviewed by the Administrative Judge shall be deemed waived." The Complainant, who is represented by counsel, failed to address the Agency dismissals at any time before the Administrative Judge. Therefore, I find that he has waived these allegations, and I will not address them on the merits.

[2] EEOC Regulations at 29 C.F.R. § 1614.107(a)(2) requires dismissal for untimely EEO contact. In addition, 29 C.F.R. § 1614.109(b) permits an administrative judge to dismiss on any grounds under § 1614.107 after her own notice or an agency's motion.

2

event, is inapplicable, pursuant to the U.S. Supreme Court decision in *National Railroad Passenger Corp. v. Morgan,* 122 S. Ct. 2061 (2002).[3] In the proposed dismissal, I relied on the representation in the EEO counseling report that EEO contact took place on March 12, 2000. The Agency and the Complainant each replied to the proposed dismissal on December 6, 2002. Each asserted that the Complainant's EEO contact occurred on October 12, 1999. See ROI, Exh. 2. Upon reconsideration, utilizing the October 12, 1999, date, I find that allegations (1), (2), (3), (10),[4] (14) and (16) are untimely and subject to dismissal. I therefore turn to the remaining allegations on the merits.

<u>Summary Judgment</u>

The issues in the remaining allegations are whether the Complainant, a Senior Business Management Officer, GS-14, in the Agency's Bureau of Land Management (BLM), Office of Acquisition and Property, was discriminated against on the bases of his race (African-American), sex (male), and in reprisal for prior protected EEO activity when:[5]

(4) in January 2000 he was nonselected for the position of Supervisory Personnel Specialist, GS-15, advertised under vacancy announcement WO 99-15;
(5) in March 2000, he was not allowed to apply for the SES Development Program;
(6) in November 1999, management officials refused to allow him to apply for career enhancing/growth training;[6]
(7) in September 1999, management officials allowed his co-workers and peers to have input on his performance appraisal;
(8) in August 2000, management officials falsified and fabricated his personnel documents;

---

[3] *Morgan* provides that discrete events must be individually timely challenged and are not properly considered as part of a continuing violation, absent an allegation of harassment.

[4] This allegation, which deals with a supervisor's allegedly derogatory statements to an investigator during a security clearance process also fails to state a justiciable claim. See *McCray v. Dep't of Defense,* EEOC Appeal No. 01A24208 (April 9, 203)("[O]nce statements gathered during the investigation are included in the security clearance investigative report, the statements are 'squarely within the rubric of a security clearance determination and, accordingly, beyond the Commission's jurisdiction.' *Schroeder v. Department of Defense,* EEOC Request No. 05930248 (April 14, 1994).")*; see also Pang-Labrador v. Dep't. of the Navy,* EEOC Appeal 01962611 (February 27, 1997).

[5] *See* Agency acceptance letter, ROI, Exh. 4.

[6] Part of allegation (6) was proposed for dismissal because it was stated to have occurred in April 1999. The Complainant, however, characterized the matter in the investigation report as having occurred in November 1999, not April 1999. ROI, Exh. 6. He also stated that the reference to April 2000 in this allegation is a duplicate of the matter raised in allegation (5). I therefore use the November 1999 date of occurrence and find this allegation timely.

(9) in September 1999, Agency officials refused to provide him with travel vouchers and funds in order to perform his job and tasks;

(11) in August 2000, management officials allowed other management officials, not in his chain of command, to negatively impact his career;

(12) in December 1999 and July 2000, management officials assigned him to non-career enhancing details and jobs, without his approval and without consulting him;

(13) in December 1999, management officials deliberately attempt to steer him away from career enhancing assignments and into less visible and nonessential jobs; and

(15) in November 1999, management officials refused to submit his application for the Assistant Director Eastern States Office position.

The Agency filed a Motion for Summary Judgment (hereinafter the Agency's Motion) on July 19, 2002. The Complainant, through counsel, replied on August 6, 2002. After consideration of the investigative record and the parties' pleadings and attachments, I GRANT the Agency's Motion.

The Commission's regulations provide for summary judgment where there is no genuine issue of material fact or credibility. 29 C.F.R. §1614.109(e); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). In making this determination, evidence must be viewed in the light most favorable to the party against whom summary judgment would be issued. *Anderson,* 477 U.S. at 265. In a discrimination case, summary judgment is appropriate where there is no *prima facie* case[7] or, if there is, where the plaintiff fails to proffer

---

[7]An allegation of disparate treatment is analyzed under the three-step process first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). A plaintiff must first establish a *prima facie* case by presenting some evidence sufficient to infer that unlawful discrimination took place. 411 U.S. at 802. The employer must then provide a rebuttal by submitting evidence of a legitimate, nondiscriminatory reason for its action. If it does so, the plaintiff must prove by a preponderance of the evidence that the reason is a pretext for discrimination. *Id.* at 804; *see also St Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). To prove pretext, a plaintiff must produce testimony or documentary evidence establishing either that discriminatory animus is the more likely explanation for the defendant's action or that the defendant's stated reason lacks credibility and that discrimination is the true reason. *See Hicks,* 509 U.S. at 514-515.

To establish a *prima facie* case of disparate treatment, a plaintiff must generally show that he was treated differently in regard to a term, condition or privilege of employment compared to a similarly situated person outside his or her protected group(s). *Parker v. U.S. Department of Housing and Urban Development,* 891 F.2d 316 (D.C. Cir 1989); *Jensvold v. Shalala,* 829 F. Supp. 131 (D.Md. 1993). To be similarly situated, all the relevant aspects of the plaintiff's and comparative's employment must be nearly identical. *Neuren v. Adduci, Mastriani, Meeks, and Schill,* 43 F.3d 1507 (D.C. Cir. 1995).

(continued...)

3

*4*

evidence that would show that the employer's explanation is pretextual. *See Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir. 1995).

The burden is on the party against whom summary judgment would be issued to show that there is in fact an issue requiring a trial. To meet this burden, the party must go beyond allegations and pleadings and put forth the specific facts that demonstrate that there is a genuine issue of material fact. *Anderson,* 477 U.S. at 248-249; *Celotex,* 477 U.S. at 324. These facts can be shown by reference to affidavits, depositions, answers to interrogatories or other evidence of record. *Id.* "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla' of evidence, and must produce evidence sufficient for a reasonable jury to find in her favor." *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1239 (4th Cir. 1995), citing *Anderson,* 477 U.S. at 252.

<u>Allegation (4): in January 2000 he was nonselected for the position of Supervisory Personnel Specialist, GS-15, advertised under vacancy announcement WO 99-15.</u>

The selectee for the position at issue was an African-American, female, prior EEO activity unknown. ROI, Exh. 9; Agency's Motion, Exh. 13. Because the selectee was the same race as the Complainant, he has failed to establish a *prima facie* case of race discrimination. The Complainant also failed to present evidence establishing the dates and nature of his prior EEO activity and showing that the selecting official herein was at least aware of that activity. The Complainant has

---

[7](...continued)

To establish a *prima facie* case of reprisal, one must show that he engaged in protected activity and was later subjected to an adverse employment action and that there is a causal connection between the two. *Passer v. American Chemical Co.,* 56 FEP Cases 88 (D.C. Cir. 1991); *Ross v. Communications Satellite Corp.,* 759 F2d 355 (4th Cir. 1985). A causal connection may be inferred where the adverse action occurs soon after the protected activity and appears to be triggered by it. *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir. 1991); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir. 1989). The alleged discriminator must be aware of the EEO activity for there to be a causal connection. *Ross,* 759 F 2d at 365, n.9.

To make out a *prima facie* case of disparate treatment in regard to a nonselection, a plaintiff must show that he applied and was qualified for the position but was nonselected in favor of someone outside his protected group(s) or otherwise under circumstances that infer discrimination. *McDonnell Douglas,* 411 U.S. at 802; *Fischbach v. D.C. Department of Corrections,* 86 F.3d 1180, 1182 (D.C. Cir. 1996). In a non-selection case, a complainant can establish pretext by showing that his qualifications for the position at issue are plainly superior to those of the selectee. *Bauer v. Bailar,* 647 F.2d 1037, 1048 (10th Cir. 1981). Absent proof of pretext, an adjudicator must respect the employer's discretion to choose among qualified applicants. *Fischbach,* 86 F.3d at 1183. Title VII "was not intended to diminish traditional management prerogatives." *Casillas v. Department of the Navy,* 735 F.2d 338, 344 (9th Cir. 1984).

5

therefore failed to establish a *prima facie* of reprisal.  Because the selectee was female, the Complainant has established a *prima facie* case of sex discrimination.  The Agency, however, presented specific evidence from the selecting official, Warren Johnson (African-American, male), the Assistant Director for Human Resources in BLM, that the selectee had more than 20 years experience in human resources (HR) and, in particular, expertise in HR automation, which was a requirement of the position.  Agency Motion, Exh. 13.  The Complainant's response to Agency's Motion makes the bare assertion that he was better qualified than the selectee.  The Complainant had personnel and human resources management experience.  ROI, Exh 6; Agency Motion, Exh. 13. According to Johnson, however, he did not have experience of the depth and breadth of the selectee. ROI, Exh. 9.  The Complainant has presented no specific evidence to refute the Agency's explanation of its selection decision.  In particular, he has presented no evidence of expertise in automation.  His unsupported assertion that he was better qualified, without more, is insufficient to survive summary judgment.[8]  I therefore find that he has failed to present evidence from which I could find that the Agency's explanation for his nonselection was pretextual.  For all the above reasons, *i.e.,* the Complainant's failure to establish a *prima facie* case of race discrimination or reprisal and to produce evidence that the Agency's reasons are a pretext for sex discrimination, I find that this allegation is subject to summary judgment for the Agency.

Allegation (5): in March 2000, he was not allowed to apply for the SES Development Program.

The Complainant submitted an application for the SES training program to his newly appointed second-level supervisor (white, male).  The Agency's evidence indicates that the application did not contain the required first-level supervisor's evaluation and that the second-level supervisor, Robert Doyle (white, male), then-Acting Assistant Director, Business and Fiscal Resources in BLM, sent it back to the Complainant for this reason.  ROI, Exh. 10.  In addition, the evaluation portion for the second-level supervisor was already filled in by the Complainant, to which Doyle objected since he did not know the Complainant.  *Id.*  Agency Motion, Exh. 6.  Doyle also told the Complainant that he (the Complainant) would be unable to attend the SES program because it would begin four months before the end of the Complainant's present assignment to the War College; that is, the Complainant could not be two places at the same time.  *Id.*  In the investigative report, the Complainant stated both that there was an overlap and that the program in fact began three months after the War College program ended.  ROI, Exh. 6.  He also failed to provide any

---

[8]"Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."  *Greene v. Dalton,* 164 F.3d 671, 674 (D.C. Cir. 1999)(holding that an unsuccessful job applicant's assertion that the selectee had less experience and education, without supporting factual evidence, was inadequate to defeat summary judgment). "Accepting such conclusory allegations as true ... would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense" of a trial.  164 F.3d at 675.

6

documentary support for the latter assertion. Doyle testified he was unaware that the Complainant had previously filed an EEO complaint. ROI, Exh. 10.

The Complainant has not presented any evidence to show that Doyle was aware of his prior protected EEO activity, nor has he presented any evidence of a similarly situated person outside his protected groups (*i.e.*, non-African-American or female) who was treated more favorably. He has therefore failed to establish a *prima facie* case of either race or sex discrimination or reprisal. Complainant's response to the Agency's Motion merely states that the Agency does not deny it failed to forward the SES training application. This fails to address the Agency's specific explanation for why the application was not submitted with evidence that suggests it is pretextual. Because there is no *prima facie* case on any basis and no evidence of pretext, this allegation is subject to summary judgment for the Agency.

Allegation (6): in November 1999, management officials refused to allow him to apply for career enhancing/growth training.

During the investigation, the Complainant stated that this allegation was inaccurately framed by the Agency and that he was actually referring to the termination of a detail in November 1999. ROI, Exh. 6. This was an assignment in the Office of the Secretary, Office of Environmental Policy (OEP). According to the Complainant, "we" (*i.e.*, he and his supervisor, Peter Niebauer) made the arrangements for this detail. *Id.* Niebauer, since retired, did not testify herein. According to Doyle and Johnson, the Complainant had not received BLM management approval for the detail and had misrepresented to OEP officials that he had. Agency Motion, Exhs. 6, 13. The Complainant did not address this explanation in the investigation and did not address allegation (6) at all in his reply to the Agency Motion. In the investigation, he stated that non-African-American males served details without interruption and named one individual, but failed to provide any specifics as to the detail(s) of the comparative(s). ROI, Exh. 6. He has failed, therefore, to provide any evidence that a similarly situated person outside his protected groups was treated more favorably. He has also failed to show that either Doyle or Johnson had any knowledge of his prior EEO activity. I therefore find that the Complainant has failed to establish a *prima facie* case of discrimination based on race or sex, or reprisal. He also failed to provide any evidence to suggest that the Agency's explanation of its action in terminating his work in the OEP was pretextual. This allegation is therefore subject to summary judgment for the Agency.

Allegations (7), (8), (9), (11), (12), (13), (15)

Although moving for summary judgment on all allegations, the Agency Motion does not specifically address these matters. The Complainant's response also fails to address them. I find, however, that the record contains adequate information on which to base a determination on summary judgment, as follows.

6

<u>Allegation (7): in September 1999, management officials allowed his co-workers and peers to have input on his performance appraisal</u>.

In regard to this allegation, the Complainant asserted that, when his FY 98 performance appraisal was not prepared by his immediate supervisor, Doyle told him that he asked co-workers of the Complainant, *i.e.,* Joe Federline and other unidentified persons, for input on an appraisal. ROI, Exh. 6.[9]   The Complainant also asserts that Phyllis (Twinkle) Thompson (white female), Special Assistant to the Deputy Director of BLM, had input to his evaluation. *Id.* Thompson denies having any such input. ROI, Exh. 14. The Complainant asserts that as a result of this improper input, he received an "achieve" rating, on a two-tier system of "achieve" and "non-achieve," and did not get an award.   *Id.*   Doyle testified that the Complainant raised his concern about the lack of an appraisal from his return from the War College assignment, and that he (Doyle)made a commitment to him to get an appraisal done. ROI, Exh. 10.  Doyle did not address the Complainant's assertion about input from his coworkers and Thompson. *Id.*  I will assume *arguendo* that Doyle obtained input from the Complainant's coworkers and from Thompson. The Complainant, however, has not shown that he was disadvantaged by this, since he received an evaluation of "achieve" and has presented no evidence that any awards were made.  I therefore find that he fails to state a justiciable claim because he has shown no employment injury and that this allegation is appropriate for dismissal under 29 C.F.R. § 1614.107(a)(1).[10]

Assuming that the Complainant stated a claim, I also find that he has failed to establish a *prima facie* case of race or sex discrimination because he has not presented any comparative evidence. He has also not made out a *prima facie* case of reprisal because there is no evidence Doyle was aware he had any prior EEO activity.  In the absence of a *prima facie* case on any basis, the Agency is entitled to summary judgment on this allegation.

---

[9]One of his supervisors for the period in question (Niebauer) had retired and the other was on detail.  ROI, Exh. 6.

[10]In order for any complaint of discrimination by a federal employee to proceed, it must state a justiciable claim.  29 C.F.R. §1614.103, .107.  To do so, the complaint must allege an injury in fact. *Hackett v. McGuire,* 445 F. 2d 442, 446 (3rd Cir. 1971)(standing under Title VII is equivalent to that under Article III of the Constitution), cited with approval , *Trafficante v. Metropolitan life Insurance Co.,* 409 U.S. 205, 209 (1972).  *See generally Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 475 (1982)(Article III standing requires "distinct and palpable injury" remediable by the court).  Therefore, in the EEO context, an action alleged to be discriminatory must be one that negatively affects a substantive term, privilege or condition of a complainant's employment.

Allegation (8): in August 2000, management officials falsified and fabricated his personnel documents.

During the investigation, the Complainant stated that this allegation related to allegation (7) above, *i.e.*, that his performance appraisal did not contain correct information and so was falsified. I have disposed of this matter above.

Allegation (9): in September 1999, Agency officials refused to provide him with travel vouchers and funds in order to perform his job and tasks.

After his return from the War College assignment, the Complainant received a detail to the Office of the Secretary, Office of Small and Disadvantaged Business Utilization (OSDBU). ROI, Exh. 6; Agency Motion, Exh. 6. During this detail, according to the Complainant, he did not receive travel funds from Doyle in BLM, which he asserted was the organizational until that should have provided them rather than OSDBU. *Id.* As a result, the Complainant said, he was unable to travel to the National Black Chamber of Commerce conference. *Id.* The Complainant stated that the director of OSDBU then arranged for a blanket travel authorization. *Id.* Doyle stated that he did not received any request for travel funds from the Complainant. ROI, Exh. 10. He also testified that he did not discuss a blanket travel authorization with the director of the office to which the Complainant was detailed. Agency Motion, Exh. 6. The Complainant has failed to present any documentation that he ever requested, was entitled to or received a travel authorization from BLM. He has also failed to show that any similarly situated person outside his race or sex was treated more favorably. He also failed to produce evidence that Doyle was aware of his prior EEO activity. Therefore, there is no *prima facie* case of race or sex discrimination or reprisal, and the Agency is entitled to summary judgment on this allegation.

Allegation (11): in August 2000, management officials allowed other management officials, not in his chain of command, to negatively impact his career.

The Complainant stated that this allegation relates to the incidents in allegations (7) and (10) already disposed of above. ROI, Exh 6. He also asserts that Phyllis (Twinkle) Thompson was allowed input on whether he should attend any type of senior level training. *Id.* Thompson denies having done anything to negatively impact the Complainant's career. ROI, Exh. 14. The Complainant has provided no specific information identifying when or how Thompson had input or what training he did not receive as a result. Therefore, as to this allegation, I find that the Complainant has not presented sufficient evidence to show that he suffered any harm to any term, condition, or privilege of employment. He therefore fails to state a claim, and this allegation is dismissed pursuant to 29 C.F.R. § 1614.107(a)(1).

Allegation (12), that in December 1999 and July 2000, management officials assigned him to non-career enhancing details and jobs, without his approval and without consulting him and Allegation (13), that in December 1999, management officials deliberately attempted to steer him away from career enhancing assignments and into less visible and nonessential jobs.

The Complainant stated that this allegation, regarding being assigned to non-career enhancing details, refers to allegations (7) and (10), dealt with above. He also stated that it refers to the rewriting of a position description, which he asserts narrowed the scope of his position and was a *de facto* reassignment. ROI, Exh. 6. He fails to provide any specific information as to this matter, including copies of the relevant position descriptions. The Complainant also stated that this allegation refers to being detailed to the Office of the Secretary from which he was terminated after two months. *Id.* This is the matter discussed in regard to allegation (6), where the Complainant alleged that his termination was discriminatory; *i.e.*, the Complainant alleges both that being placed on and removed from the detail was discriminatory. The Complainant then stated that the allegation was misstated by the Agency in its acceptance and should have read that he was not assigned to career enhancing details. *Id.* He provided no examples of this.

The Complainant stated that Allegation (13) is the same as Allegation (12); *i.e.*, that he was assigned to the Office of the Secretary, Office of Environmental Policy after returning from the War College. ROI, Exh. 6. He stated (contrary to his representation in Allegation (6)) that this was done without his knowledge or approval. He also stated that in the same time period Robert Donelson (male, race not in the record) and Joe Federline (white, male) served as acting supervisor after Niebauer left. Donelson and Federline confirmed that they served as acting supervisors. ROI, Exhs. 11 and 12.

I find that the Complainant has not presented any evidence to support his allegation that his position description was rewritten, including position descriptions, and not has presented any specific evidence regarding how the rewrite, if it occurred, narrowed his duties. I therefore find that in regard to this matter, he had not shown that he was subjected to any harm to any term, condition or privilege of employment in regard to the rewriting of his position description. He has also not shown that the detail to the Office of the Secretary, OEP, harmed his employment interests in any way. I therefore find that in regard to the position description and the detail the Complainant fails to state a claim.

Assuming *arguendo* that the Complainant stated a justiciable claim with regard to the position description or detail, he has failed to present any comparative evidence of disparate treatment. There is no evidence of any similarly situated person outside his protected groups who was treated more favorably in regard to a position description. There is also no evidence to show that Federline's and Donelson's details to acting supervisor constituted more favorable treatment. There is therefore no *prima facie* case of race or sex discrimination as to either matter. There is also no evidence from which I could infer that the Complainant's allegedy rewritten position description or detail to OEP constituted reprisal for any EEO activity. I therefore find that the Agency is entitled to summary judgment.

9

*10*

Allegation (15): in November 1999, management officials refused to submit his application for the Assistant Director Eastern States Office position.

The Complainant asserts that he told BLM Director Thomas Fry at an unspecified point in time that he was interested in this position and that Fry took his application and told him he would be considered if it came open. FOI, Exh. 6. He stated that Warren Johnson was also present at this discussion. Johnson denied recalling the conversation. Agency Motion, Exh. 13. Fry (white, male), also denied discussing the matter with the Complainant. ROI, Exh. 7. The selection decision was made by the Office Director, Gail Gordon (race not in the record), who selected an African-American male for a lateral reassignment. I must assume *arguendo* for purposes of summary judgment that the Complainant's account of his conversation with Fry and Johnson is accurate. However, the Complainant has not shown that Fry or Johnson gave Gordon the application of anyone outside his protected groups. Also, the selectee was, like the Complainant, an African-Americna male. Therefore, I find that there is no inference of race or sex discrimination and thus no *prima facie* case on these bases. There is also no evidence that either Johnson or Fry was aware of any EEO activity by the Complainant. There is therefore no *prima facie* case of reprisal. There being no prima facie case on any basis, the Agency is entitled to summary judgment on this allegation.

CONCLUSION

For all the above reasons, I issue judgment for the Agency in this matter.

REBECCA L. DICKINSON
ADMINISTRATIVE JUDGE

**NOTICE TO THE PARTIES**

*TO THE AGENCY:*

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

Milton E. Hill v. Department of the Interior
01A43268
September 29, 2005


Milton E. Hill,
Complainant,

v.

Gale A. Norton, Secretary,
Department of the Interior
Agency.

Appeal No. 01A43268

Agency No. LLM00042

Hearing No. 100-A2-7056X

DECISION

Complainant timely initiated an appeal from a final agency order
concerning his complaint of unlawful employment discrimination in
violation of Title VII of the Civil Rights Act of 1964 (Title VII), as
amended, 42 U.S.C. § 2000e et seq.   The appeal is accepted pursuant to
29 C.F.R. § 1614.405.  For the following reasons, the Commission AFFIRMS
in part, REVERSES in part and REMANDS the agency's final order.

I. BACKGROUND

The record reveals that during the relevant time, complainant was employed
as a Senior Business Management Officer, GS-14, at the agency's Office
of Acquisition and Property in Washington, D.C.  Complainant sought
EEO counseling and subsequently filed a formal complaint on May 19,
2000, alleging that he was discriminated against on the bases of race
(African-American), sex (male), and reprisal for prior EEO activity when:

 in March 1999, [complainant's] name was not referred to the selecting
 official for the Group Manager position, Vacancy Announcement
 No. WO-99-12;

 in April 1999, [complainant's] name was not referred to the selecting
 official for the vacant position of Associate State Director, Utah,
 GS-15;

 in July 1999, [complainant] was not selected for the Bureau of Land
 Management's  (BLM) District Manager position in Las Cruces, New Mexico;

 in January 2000, [complainant] was not selected for the Supervisory
 Personnel Specialist, GS-14, advertised under Vacancy Announcement
 No. WO-99-015;

 in March 2000, [complainant] was not allowed to apply for the Senior
 Executive Service (SES) Program;

 in November 1999, management officials refused to allow [complainant]
 to apply for career enhancing/growth training;

 in September 1999, management officials allowed [complainant's]
 co-workers and peers to have input on his performance appraisal;

 in August 2000, management officials falsified and fabricated
 [complainant's] personnel documents;

 BLM Officials refused to provide [complainant] travel vouchers and
 funds in order to perform his job and tasks;

 in January 1999, BLM managers attempted to degrade and dehumanize
 complainant;

 in August 2000, management officials allowed other management officials,
 not in [complainant's] chain of command, to negatively impact his career;

in December 1999 and July 2000, management officials assigned
[complainant] to non-career enhancing details and jobs, without his
approval and without consulting him;

in December 1999, management officials deliberately attempted to steer
him  away from career enhancing assignments and into less visible and
nonessential jobs;

in January 1999, management officials falsified [complainant's] work
accomplishments;

in November 1999, management officials refused to submit [complainant's]
application for the position of Assistant BLM Director Eastern States
Office; and

management officials refused to provide [complainant's] performance
appraisal and comparable awards.

Upon being interviewed by the investigator, complainant clarified
allegations (7) and (8).  Complainant stated that allegation (8) is
a re-characterization of what allegedly occurred in allegation (7)
and should not be a separate allegation.  IR, Ex. 6 at 57-58.  He also
averred that the performance appraisal to which he refers in allegation
(7) resulted in him not receiving an annual award for that year.
We will therefore address allegations (7) and (8) as one allegation in
which complainant alleges that he was discriminated against on the bases
of race (African-American), sex (male), and in reprisal for prior EEO
activity when:

(7)/(8) in September 1999, management officials allowed [complainant's]
co-workers and  peers to have input on his performance appraisal, which
negatively impacted his  appraisal such that he did not receive an
annual award for that year.

Complainant also clarified allegation (11) before the investigator.
He specified that a management official not in his chain of command
negatively impacted his career by expressing racist and sexist views
against him that led to his non-selection for various training details.
We will, therefore, consider complainant to have alleged in allegation
(11) that he was discriminated against on the bases of his race
(African-American), sex (male), and in reprisal for prior EEO activity
when:

(11)  In August 2000, management officials allowed other management
officials, not in  [complainant's] chain of command, to negatively impact
his career, by expressing racist and sexist views against him that led
to his non-selection for various training details.

At the conclusion of the investigation, complainant was provided a
copy of the investigative file and requested a hearing before an EEOC
Administrative Judge (AJ).  The AJ issued a decision without a hearing,
finding no discrimination.

The AJ dismissed allegations (1), (2), (3), (10), (14), and (16)<1>
for untimely EEO contact.  The AJ dismissed claims (7), (8), (11),
(12), and (13) for failure to state a claim. The AJ concluded, with
respect to the remaining allegations, that complainant had failed to
produce evidence sufficient to establish a genuine issue of material
fact regarding his claims of discrimination.

The agency's final action implemented the AJ's decision.

On appeal, in a brief consisting of three paragraphs,  complainant
contended that genuine issues of material fact exist and that a hearing
is warranted to complete the factual record.  The agency argued that the
complainant failed to show that the AJ's decision involved erroneous
interpretations of fact or law, or credibility determinations, and
requested that we affirm its final action implementing the AJ's decision.

II.  LEGAL STANDARD

To prevail in a disparate treatment claim such as this, complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Complainant must initially establish a prima facie case by demonstrating that he or she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Construction Co. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 804 n. 14. The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). To ultimately prevail, complainant must prove, by a preponderance of the evidence, that the agency's explanation is pretextual. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993); Pavelka v. Department of the Navy, EEOC Request No. 05950351 (December 14, 1995).

To establish a prima facie case of discrimination based on race or sex, complainant must show: (1) that he is a member of a protected group; (2) that he was adversely affected by an agency personnel decision, action or change; and (3) that he was treated less favorably than similarly situated individuals outside his group or, in the alternative, that there is some other evidence raising an inference of discrimination. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996); Enforcement Guidance on O'Connor v. Consolidated Coin Caterers Corp., EEOC Notice No. 915.002 (September 18, 1996).

Complainant can establish a prima facie case of reprisal discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination. Shapiro v. Social Security Admin., EEOC Request No. 05960403 (Dec. 6, 1996) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Specifically, in a reprisal claim, and in accordance with the burdens set forth in McDonnell Douglas, Hochstadt v. Worcester Foundation for Experimental Biology, 425 F. Supp. 318, 324 (D. Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976), and Coffman v. Department of Veteran Affairs, EEOC Request No. 05960473 (November 20, 1997), a complainant may establish a prima facie case of reprisal by showing that: (1) he or she engaged in a protected activity; (2) the agency was aware of the protected activity; (3) subsequently, he or she was subjected to adverse treatment by the agency; and (4) a nexus exists between the protected activity and the adverse treatment. Whitmire v. Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000).

The Commission's regulations allow an AJ to issue a decision without a hearing when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence but rather to determine whether there are genuine issues for trial. Id. at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. Id. at 255. An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2D 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. If a case can only be resolved by weighing conflicting evidence, summary judgment is not appropriate. In the context of an administrative proceeding, an AJ may properly consider summary judgment only upon a determination that the record has been adequately developed for summary disposition.

The courts have been clear that summary judgment is not to be used as a "trial by affidavit." Redmand v. Warrener, 516 F.2d 766, 768 (1st Cir. 1975). The Commission has noted that when a party submits an affidavit and credibility is at issue, "there is a need for strident cross-examination and summary judgment on such evidence is improper." Pedersen v. Department of Justice, EEOC Request No. 05940339 (February 24, 1995).

We note that the hearing process is intended to be an extension of the investigative process, designed to ensure that the parties have "a fair and reasonable opportunity to explain and supplement the record and, in appropriate instances, to examine and cross-examine witnesses."  See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 7-1 (November 9, 1999); see also 29 C.F.R. § 1614.109(e). Truncation of this process, while material facts are still in dispute and the credibility of witnesses is still ripe for challenge, improperly deprives complainant of a full and fair investigation of her claims. Mi S. Bang v. United States Postal Service, EEOC Appeal No. 01961575 (March 26, 1998).  See also Peavley v. United States Postal Service, EEOC Request No. 05950628 (October 31, 1996); Chronister v. United States Postal Service, EEOC Request No. 05940578 (April 23, 1995).

III.  ANALYSIS

As we discuss in more detail below, certain of complainant's claims were not raised in a timely manner and for that reason, the Commission affirms the AJ's dismissal of allegations (1), (2), (3), (10), (14), and (16) for untimely EEO contact.  The Commission dismisses allegation (5) on its own accord for untimely EEO contact.  The AJ's decision for allegations (4), (6), (7), (8), (9), (11), (12), (13), and (15) is reversed and those allegations are remanded for a hearing.

A.  Dismissals

We address first, the untimeliness of complainant's claims cited above. The Supreme Court has held that discrete discriminatory acts such as hiring, firing and promotions, that fall outside of the limitations period are not actionable and no recovery is available.  National Railroad Passenger Corporation v. Morgan 536 U.S. 101 (2002).  Even if the discrete activity is arguably related to other discriminatory acts that occur within the filing period, they are not actionable if untimely raised. Id. See also, EEOC Compliance Manual 915.003 Section 2: Threshold Issues, Timeliness 2-IV (Issued May 12, 2000).  However, as the court recognized, Title VII does not bar an employee from using the prior acts as background evidence in support of a timely claim.  Morgan at 113.

Applying these principles, the Commission affirms the AJ's dismissal of allegations (1), (2), (3), (10), (14), and (16) for untimely EEO contact.  More specifically, allegations 1 through 3 are discrete acts challenging the agency's failure to select him for particular positions. The remaining claims also reference discrete agency actions to falsify his work accomplishments or to degrade him.  Under our regulations, a complainant must initiate EEO contact within 45 days of an alleged discriminatory act.  29 C.F.R. § 1614.105(a)(1).  In this case, complainant initially made contact with an EEO Counselor on October 12, 1999.  The incidents that comprise each of these allegations occurred before August 28, 1999.  Therefore, we find that these allegations were properly dismissed by the AJ.

The Commission, on its own accord, pursuant to 29 C.F.R. § 1614.405(a), dismisses allegation (5) for untimely EEO contact.  While the statement of the allegation indicates that the alleged discriminatory act occurred in March of 2000, a letter from complainant to Mr. Doyle Assistant Director, Business and Fiscal Resources, shows that the acts that are the subject of the allegation occurred in or around August of 1998. Investigator's Report, Exhibit 15.  The time elapsed from the occurrence of the alleged act to the complainant's EEO contact exceeds the 45 day limit.  29 C.F.R. 1614.105(a)(1).

As stated above, however, although the Commission affirms dismissal of these claims for untimeliness, they may still be considered as background evidence of discrimination with respect to the claims that remain viable.

B. Remands

The Commission  reverses the AJ's decision for allegations (4), (6), (7), (8), (9), (12), (13), and (15) and remands them for a hearing. These allegations all state justiciable claims for which the record contains genuine issues of material fact or require development. We will address each allegation separately in order to discuss the lapses in the record that need attention or to highlight the record where a disputed issue is ripe for a hearing.

15

Allegation (4):  In January 2000, [complainant] was not selected for
the Supervisory Personnel Specialist, GS-14, advertised under Vacancy
Announcement No. WO-99-015.

The Commission reverses the AJ's summary judgment finding of no
discrimination in allegation (4) and remands for a hearing because the
record contains genuine issues of material fact and warrants further
fact finding.

In particular, because complainant did not have the opportunity to fully
develop his claim of sex discrimination for this allegation, summary
judgment was inappropriate.  The employee selected for the position
was a woman.  IR, Ex. 6 at 24.  Complainant asserted that he was not
selected because the selecting official, named in IR, Ex. 6 at 25,
thought the selectee would be less likely to disturb the status quo. Id.
While in the process of elaborating on this point in his statement
for the investigation, the interview was interrupted.  IR, Ex. 6 at 25.
The investigator then failed to allow complainant to complete his response
regarding why he believed the selection decision was discriminatory.  Id.

Summary judgment is also inappropriate because the record, when viewed
in a light most favorable to the complainant, supports an inference
of discrimination based on reprisal.  Complainant's prior EEO activity
consists of previous EEO complaints and discussions with his supervisors
about  EEO concerns. IR, Ex. 3 at 49, 54.  Complainant contends that the
selecting official knew of his prior EEO activity because he had discussed
his EEO concerns with all of his supervisors, Id. at  49, and written a
letter to one of them explaining his EEO concerns.  Id. at 54. He asserted
that, as a result, he had a reputation as an EEO agitator and had become a
pariah in the office. IR, Ex. 6 at 25-26, 69-70.  Finding a nexus between
complainant's prior EEO activity and his non-selection would be reasonable
because complainant claims to have discussed his EEO concerns with his
supervisors within seven months prior to this complaint.  Many of the
allegations that were dismissed as untimely occurred over that time.
As background evidence, they support an inference of discrimination
based on reprisal.  If complainant is indeed a pariah, moreover,
an ongoing adversarial relationship would exist between complainant
and the agency which would further support an inference of reprisal.
Complainant has produced sufficient evidence which, when viewed in a
light most favorable to the complainant, establishes a prima facie case.

For the agency's nondiscriminatory explanation, the selecting
official claimed that the selected employee was better qualified than
complainant. IR, Ex. 9 at 6-8.  Complainant asserts that the selected
applicant's qualifications were vastly inferior to his and ill-suited for
the position.  IR, Ex. 6, Rebuttals at 205-206, Paragraph 3; IR, Ex. 6
at 27.  He states that the selectee's prior experience was primarily
clerical and unfit for a position requiring leadership abilities.
IR, Ex. 6, Rebuttals at 205-206.  Complainant also claims that the
selecting official, upon becoming aware that complainant applied for the
position, rewrote the job description to fit the selected applicant's
qualifications.  IR, Ex. 6, Rebuttals at 205-206, Paragraph 3.
The evidence in the record, if viewed in a light most favorable to
the complainant, is thus sufficient to establish a genuine issue of
whether the agency's nondiscriminatory reason was pretextual and warrant
a hearing.<2>
The AJ erred in rejecting complainant's evidence of pretext as
conclusory and in requiring  complainant to provide additional
supporting evidence to survive summary judgment.<3>  Complainant  makes
specific averments about why he was more qualified.  This is sufficient
to create a genuine issue of material fact.  See Petty v. Department of
Defense, EEOC Appeal No. 01A24206 (July 11, 2003).

Allegation (6):  In November 1999, management officials refused to allow
[complainant] to apply for career enhancing/growth training.

The Commission reverses the AJ's summary judgment finding of no
discrimination for allegation (6) and remands for a hearing because
genuine issues of material fact exist regarding complainant's allegation
of discrimination based on reprisal.  The record also warrants further
fact finding.

Genuine issues of material fact exist regarding complainant's allegation
of discrimination based on reprisal. As detailed above, complainant
presented evidence that he engaged in prior EEO activity and that

16

his supervisors were aware of it.  This allegation occurred within
a time frame such that  a reasonable inference of nexus can be made.
The responsible supervisors, named in IR, Ex. 6 at 42, did not proffer
nondiscriminatory explanations to the investigator.  Complainant claims
that he was never given a reason for his removal from his training detail.
IR, Ex. 6 at 44.
This allegation was, furthermore, inadequately investigated.  Complainant
states that the agency misstated this allegation.  He specifically
alleges that the agency removed him from a training detail prior to its
completion. IR, Ex. 6 at 42-43.  While interviewing agency officials,
the investigator did not ask one of the named officials about this
allegation.  The other was asked what he knew but was not informed
of specific facts complainant had added.  Based on these issues found
in the record, a hearing is necessary to address the genuine dispute
regarding the suspicious timing of events and to develop the record
after an inadequate investigation.

Allegation (7)/(8): in September 1999, management officials allowed
[complainant's]  co-workers and  peers to have input on his performance
appraisal, which negatively impacted his appraisal such that he did not
receive an annual award for that year.

The Commission reverses the AJ's dismissal of allegation (7)/(8) for
failure to state a claim.  In order to state a claim, complainant must
allege an actual injury to the terms, privileges, or conditions of his
employment. 29 C.F.R. § 1614.103(a).  The AJ found that complainant
had failed to state a claim because a negative performance review is
not an actual injury.  A performance review is a preliminary step to
taking a personnel action affecting conditions of employment, and a
complaint based on a performance review by itself is properly dismissed.
29 C.F.R. § 1614.107(a)(5); Kendrix v. Department of the Treasury,
EEOC Appeal No. 01A40581 (Feb. 10, 2004); White v. Department of
Justice, EEOC Appeal No. 01A35308 (April 22, 2004).  The AJ, however,
ignored complainant's testimony to the investigator in which he alleged
that the agency mishandled his performance appraisal which resulted in
complainant not receiving an award.  IR, Ex. 6 at 54-56.  He stated in
his affidavit based on personal knowledge that his coworkers did receive
awards.<4>  Id.  Complainant thereby alleged a negative employment action
based on discriminatory animus.  Complainant successfully stated a claim
in allegation (7) /(8).<5>

Allegation (9): BLM Officials refused to provide [complainant] travel
vouchers and funds in order to perform his job and tasks.

The Commission reverses the AJ's finding of no discrimination on summary
judgment for this allegation and remands for a hearing because genuine
issues of material fact exist in the record.
As detailed above, complainant presented evidence that he engaged in prior
EEO activity and that his supervisors were aware of it.  This allegation
occurred within a time frame such that  a reasonable inference of nexus
can be made.<6>  In response to complainant's prima facie case, the agency
did not provide a nondiscriminatory explanation for the actions alleged
in this allegation.  Instead, it disputes the truth of Complainant's
version of the event.  The responsible official stated that he did not
receive a request for travel funds from complainant.  IR, Ex. 10 at 11.
A genuine dispute of a material fact exists, and a hearing is appropriate
to weight the evidence.

Allegation (11): In August 2000, management officials allowed other
management officials, not in [complainant's] chain of command, to
negatively impact his career.

The Commission reverses the AJ's dismissal of this allegation for failure
to state a claim and remands for a hearing. In order to state a claim,
complainant must allege an actual injury to the terms, privileges, or
conditions of his employment. 29 C.F.R. § 1614.103(a).  The AJ failed to
consider complainant's testimony to the investigator regarding allegation
(11) in which he clarified that this allegation referred to when he was
not selected for certain training details because a management official,
not in his chain of command, who participated in the review of his request
for training expressed racist and sexist views against him affecting his
non-selection.  IR, Ex. 6 at 73-75.  Complainant sufficiently alleged
a negative employment action, non-selection for training, based on
discriminatory animus.  Allegation (11), therefore, successfully states
a claim.

*/7*

Allegation (12):  In December 1999 and July 2000, management officials
assigned [complainant] to non-career enhancing details and jobs, without
his approval and without consulting him.

The AJ erred in concluding that complainant failed to state a claim
in this allegation.  Complainant specifically alleges that management
rewrote his job description such that his responsibilities were narrowed
and less prominent. IR, Ex. 6 at 78-84.  Complainant alleges this took
place because of discriminatory animus on the part of his supervisors.
Supporting evidence is not a requisite for stating a judiciable claim.<7>
Allegation (13):  In December 1999, management officials deliberately
attempted to steer him  away from career enhancing assignments and into
less visible and nonessential jobs.

The AJ erred in concluding that complainant failed to state a claim in
allegation (13).  Complainant alleged that management assigned him to
a position with limited responsibilities, but promoted two of his peers
to be his acting supervisors.  IR, Ex. 6 at 84-85.  A reassignment and
non-promotion are substantive personnel actions affecting the terms of his
employment.  Complainant alleges this took place because of discriminatory
animus on the part of his supervisors.  Supporting evidence is not a
requisite for stating a judiciable claim.<8>

Allegation (15):  In November 1999, management officials refused to submit
[complainant's] application for the position of Assistant BLM Director
Eastern States Office.

The Commission reverses the AJ's summary judgment finding of no
discrimination for this allegation because genuine issues of material
fact exist regarding complainant's allegation of discrimination based
on reprisal.

Genuine issues of material fact exist regarding complainant's allegation
of discrimination based on reprisal.  As detailed above, complainant
presented evidence that he engaged in prior EEO activity and that
his supervisors were aware of it.  This allegation occurred within
a time frame such that a reasonable inference of nexus can be made.
No specific nondiscriminatory reason is proffered by the agency.
Complainant's supervisor does not recall ever discussing the position
with him, let alone receiving his application.  IR, Ex. 7 at 6-7.
He states that while he was not the selecting official that he believes
the person selected was a good selection.  Id.  A genuine dispute,
therefore, exists regarding complainant's claim of discrimination based
on reprisal, and the record requires further development regarding the
agency's nondiscriminatory explanation.  This allegation is, therefore,
remanded for a hearing.

IV.  CONCLUSION

After a careful review of the record, including complainant's arguments on
appeal, the agency's response, and arguments and evidence not specifically
discussed in this decision, the Commission affirms in part and reverses
in part the agency's final action and remands the matter to the agency
in accordance with this decision and the Order below.

ORDER

The agency shall submit to the Hearings Unit of the appropriate EEOC field
office the request for a hearing within fifteen (15) calendar days of
the date this decision becomes final.  The agency is directed to submit a
copy of the complaint file to the EEOC Hearings Unit within fifteen (15)
calendar days of the date this decision becomes final.  The agency shall
provide written notification to the Compliance Officer at the address set
forth below  that the complaint file has been transmitted to the Hearings
Unit.  Thereafter, the Administrative Judge shall issue a decision on the
complaint in accordance with 29 C.F.R. § 1614.109 and the agency shall
issue a final action in accordance with 29 C.F.R. § 1614.110.

IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory.
The agency shall submit its compliance report within thirty (30)
calendar days of the completion of all ordered corrective action.  The
report shall be submitted to the Compliance Officer, Office of Federal

*18*

Operations, Equal Employment Opportunity Commission, P.O. Box 19848,
Washington, D.C. 20036. The agency's report must contain supporting
documentation, and the agency must send a copy of all submissions to
the complainant. If the agency does not comply with the Commission's
order, the complainant may petition the Commission for enforcement
of the order. 29 C.F.R. § 1614.503(a). The complainant also has the
right to file a civil action to enforce compliance with the Commission's
order prior to or following an administrative petition for enforcement.
See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g).
Alternatively, the complainant has the right to file a civil action on
the underlying complaint in accordance with the paragraph below entitled
"Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408.
A civil action for enforcement or a civil action on the underlying
complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c)
(1994 & Supp. IV 1999). If the complainant files a civil action, the
administrative processing of the complaint, including any petition for
enforcement, will be terminated. See 29 C.F.R. § 1614.409.

STATEMENT OF RIGHTS - ON APPEAL

RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this
case if the complainant or the agency submits a written request containing
arguments or evidence which tend to establish that:

  1. The appellate decision involved a clearly erroneous interpretation
  of material fact or law; or

  2. The appellate decision will have a substantial impact on the policies,
  practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed
with the Office of Federal Operations (OFO) within thirty (30) calendar
days of receipt of this decision or within twenty (20) calendar days of
receipt of another party's timely request for reconsideration. See 29
C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for
29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests
and arguments must be submitted to the Director, Office of Federal
Operations, Equal Employment Opportunity Commission, P.O. Box 19848,
Washington, D.C. 20036. In the absence of a legible postmark, the
request to reconsider shall be deemed timely filed if it is received by
mail within five days of the expiration of the applicable filing period.
See 29 C.F.R. § 1614.604. The request or opposition must also include
proof of service on the other party.

Failure to file within the time period will result in dismissal of your
request for reconsideration as untimely, unless extenuating circumstances
prevented the timely filing of the request. Any supporting documentation
must be submitted with your request for reconsideration. The Commission
will consider requests for reconsideration filed after the deadline only
in very limited circumstances. See 29 C.F.R. § 1614.604(c).

                COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (T0900)

This decision affirms the agency's final decision/action in part, but it
also requires the agency to continue its administrative processing of a
portion of your complaint. You have the right to file a civil action in
an appropriate United States District Court within ninety (90) calendar
days from the date that you receive this decision on both that portion
of your complaint which the Commission has affirmed and that portion
of the complaint which has been remanded for continued administrative
processing.   In the alternative, you may file a civil action after
one hundred and eighty (180) calendar days of the date you filed your
complaint with the agency, or your appeal with the Commission, until
such time as the agency issues its final decision on your complaint.
If you file a civil action, you must name as the defendant in the
complaint the person who is the official agency head or department head,
identifying that person by his or her full name and official title.
Failure to do so may result in the dismissal of your case in court.
"Agency" or "department" means the national organization, and not the
local office, facility or department in which you work. If you file
a request to reconsider and also file a civil action, filing a civil
action will terminate the administrative processing of your complaint.

*19*

RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security.  See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court.  Filing a request for an attorney does not extend your time in which to file a civil action.  Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:


_____
Carlton M. Hadden, Director
Office of Federal Operations

September 29, 2005
_____
Date


CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.  I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:


_____
Date


_____
Equal Opportunity Assistant1While the text of this allegation, as recorded in agency's final action, does not contain a date, the Investigator's Report reveals that it allegedly occurred in August 1998.

2Genuine issues of material fact exist concerning allegation (4), even considering the high legal burden complainant faces when showing prextext in a non-selection case.  The Commission will normally not disturb the judgment of agency officials in hiring or promotion cases unless an appellant's qualifications were so plainly superior to those of the selectee as to compel a finding of pretext. Henry v. Department of Labor, EEOC Appeal No. 01911925 (November 25, 1991) (citing Burdine, 450 U.S. at 259) (An employer has discretion to choose among equally qualified candidates provided the decision is not based on unlawful criteria).  However, personnel decisions which are idiosyncratic or suspect will be subjected to heightened scrutiny.  Allen v. Department of Veterans Affairs, EEOC Petition No. 03910034 (March 21, 1991) (citing Loeb v. Textron Corp., 600 F.2d 1003, 1012, n. 6 (1st Cir. 1979)). Complainant's contentions meet this burden.  Complainant argues that his qualifications were plainly superior.  Alternatively, he argues that the selection process was suspect because the selecting official altered the job announcement.

3In support of her conclusion requiring additional supporting evidence from complainant, the AJ cites language from a federal court decision concerning summary judgment in federal civil litigation.  The Commission finds this decision unpersuasive considering the difference between the EEO administrative process, in which a neutral investigator is charged with compiling as full a factual record as is possible prior to a hearing, and the federal civil discovery process, in which the plaintiff bears the burden to discover evidence in order to survive summary judgment. See Petty v. Department of Defense, EEOC Appeal No. 01A24206 (July 11, 2003).

4Contrary to the AJ's decision, complainant did not have to produce further evidence that awards were made.  At the summary judgment stage, the facts are to be viewed in the light most favorable to the

20

non-moving party (complainant) and credibility determinations are inappropriate. Anderson, 477 U.S. at 255.  Complainant's affidavit is adequate.  See Petty, supra at 13.

5The AJ argued in dicta that, even if complainant had stated a claim, summary judgment was appropriate because complainant failed to establish a prima facie case of discrimination.  The Commission disagrees. Genuine issues of material fact exist regarding complainant's allegation of discrimination based on reprisal. Complainant established a prima facie case of discrimination based on reprisal, as detailed above, for acts occurring within the several months prior to his EEO contact. This allegation occurred within that time frame.  As a nondiscriminatory explanation, the agency official who conducted the appraisal claimed that he was forced to consult complainant's coworkers because changes in the department made it such that no direct supervisor of complainant was available to comment on his work performance. Counselor's Report (CR) at 5.  Complainant contends that, while his former supervisors may have been  serving in different positions, that they could have been contacted to contribute to his performance appraisal.  IR, Ex. 6 at 55-56.  A hearing is appropriate to weigh the evidence and further develop the record.

6While the statement of the allegation, as recorded in the agency's final action, does not contain a date, the Investigator's Report reveals that it took place in September 1999.

7The AJ argued in dicta that, even if complainant had stated a claim, summary judgment was appropriate because complainant failed to establish a prima facie case of discrimination.  The Commission disagrees. Genuine issues of material fact exist regarding complainant's allegation of discrimination based on reprisal.  Complainant established a prima facie case of discrimination based on reprisal, detailed above, for acts occurring within the several months prior to his EEO contact. This allegation occurred within that time frame.  The responsible supervisors deny knowledge of the alleged actions. They do not offer a nondiscriminatory explanation.  A genuine dispute of a material fact therefore exists, and a hearing is appropriate to weigh the evidence and further develop the record.

8The AJ argued in dicta that, even if complainant had stated a claim, summary judgment was appropriate because complainant failed to establish a prima facie case of discrimination.  The Commission disagrees. Genuine issues of material fact exist regarding complainant's allegation of discrimination based on reprisal.  As detailed above, complainant established a prima facie case of discrimination based on reprisal. The agency did not offer a nondiscriminatory explanation for this allegation.  A genuine dispute of a material fact therefore exists and the record requires further development.

21



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1801 L Street, N. W., Suite 100
Washington, D. C.  20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0740

---

Milton Hill,
    Complainant,

    v.

Gail Norton,
Secretary,
Department of the Interior,
Bureau of Land Management,
    Agency.

)
)
)
)
)
)
)
)
)
)
)
)
)

EEOC Case No. 100-2002-07056X

Agency Nos. LLM-97-036

Date: **May 24, 2006**

*(handwritten: 301 568 4651 (H)  240 416 0266 (c)  757 588 3229 (B))*

---

## SCHEDULING ORDER

On September 29, 2005, the Commission's Office of Federal Operations issued a decision, affirming in part, reversing in part, and remanding the Agency's final order in the above-captioned matter.  Accordingly, **IT IS HEREBY ORDERED** that the parties follow the procedures set forth below.  Failure to comply with this Order may result in sanctions, including dismissal or decision in favor of the opposing party.  *See* 29 C.F.R. § 1614.109(f)(3)(2004).

### I.    PREHEARING AND HEARING SCHEDULE

A Prehearing **Report** will be due on:

Date:        June 12, 2006 *(handwritten: 19th)*

A Prehearing **Conference** in this matter is scheduled as follows:

Date:        June 22, 2006
Time:        10:00 a.m.
Location:    Telephonic (to be initiated by the Agency)

The **hearing** in this matter is scheduled as follows:

Date:        July 11, 2006
Time:        Beginning at 9 a.m. and ending by approximately 5:30 p.m.
Location:    Agency to arrange appropriate hearing room of suitable size.  The Agency shall provide written notification to the Complainant and the Administrative Judge of the hearing location at least 10 days before the hearing.

*(handwritten: 22)*
*(handwritten: 5-26-06)*

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing **ORDER** and any attachments within five (5) calendar days after the date they were sent via first class mail, or the same day if sent via facsimile or electronic mail.  I certify that on **May 24, 2006**, the foregoing **ORDER** and any attachments were sent via facsimile to the following:


Stephen Scavuzzo, Esq.
380 Maple Avenue West
Suite 207
Vienna, VA 22180
*By first class mail*


Phyllis Leslie, Esq.
*By facsimile to* (202) 208-3230


Abigail R. Coleman
Administrative Judge

6

Z3

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
**1801 L Street, N.W., Suite 100**
**Washington, DC 20507**

*A3000*

---

MILTON HILL,
      Complainant,

    v.

GALE A. NORTON, SECRETARY,
DEPARTMENT OF THE INTERIOR,
      Agency.

June 19, 2006

Agency No. LLM-00-042
EEOC No. 100-2002-07056X

---

## AGENCY'S PREHEARING REPORT

Pursuant to the Administrative Judge's May 24, 2006 Scheduling Order and the Equal Employment Opportunity Commission, ("Commission") Office of Federal Operations' September 29, 2005 decision, the Bureau of Land Management ("BLM"), U.S. Department of the Interior (hereinafter, "Agency"), by and through its counsel, submits its Prehearing Report.

## I.    ISSUES FOR HEARING

1. Whether Complainant was subjected to sex (male) discrimination and reprisal when he was not selected for the Supervisory Personnel Specialist position, GS-15, advertised under Vacancy Announcement No. WO-99-27;

Whether Complainant was subjected to race (African-American) and sex (male) discrimination and reprisal (for prior EEO activity) when:

2. In November 1999, management officials allegedly refused to allow Complainant to apply for training;

3. In September 1999, management officials allegedly allowed co-workers and peers to have input on Complainant's performance appraisal, which allegedly negatively impacted his appraisal such that he did not receive an annual award for that year;

*24*
*6-20-06*

4. In September 1999, management officials allegedly refused to provide Complainant travel vouchers and funds in order to perform his job and tasks;

5. In August 2000, management officials allegedly allowed other management officials, not in Complainant's chain of command, to negatively impact his career, by allegedly expressing racist and sexist views against him that led to his non-selection for various training details;

6. management officials allegedly assigned Complainant to non-career enhancing details and jobs, without his approval and without consulting him;

7. management officials allegedly attempted to steer Complainant away from career enhancing assignments and into less visible, non-essential jobs; and

8. Whether Complainant was discriminated against on the basis of reprisal (for prior EEO activity) when management officials allegedly refused to submit Complainant's application for the position of Associate State Director, Eastern States Office.

## II.        JOINT STIPULATIONS

Due to the time constraints imposed upon the parties in this case, Agency counsel and Complainant's counsel were unable to prepare a joint stipulation. However, the Agency is willing to stipulate to the following facts:

1. Complainant is an African-American male.

2. Complainant retired on disability retirement from the Agency.

3. Ms. Concetta Stewart and Complainant applied for the position of Supervisory Personnel Management Specialist (GS-15) in Washington, D.C.

4. Ms. Concetta Stewart (African-American female) was selected for the position of Supervisory Personnel Management Specialist, effective September 12, 1999.

25



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1801 L Street, N. W., Suite 100
Washington, D. C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0740

| | |
|---|---|
| Milton Hill, )<br>    Complainant, )<br>               )<br>    v.         )<br>               )<br>Gail Norton, )<br>Secretary, )<br>Department of the Interior, )<br>Bureau of Land Management, )<br>    Agency. )<br>               ) | EEOC Case No. 100-2002-07056X<br><br>Agency No. LLM-00-042<br><br>Date: **July 10, 2006** |

## ORDER

On consideration of the attached July 10, 2006 correspondence from Complainant's Representative with an appended copy of a Complaint, both of which indicate that the Complainant has filed a civil action in United States District Court for the District of Columbia, Case No. 1:06CV01233, regarding the above-captioned matter, I hereby **ORDER** that the above-captioned matter be **DISMISSED** pursuant to 29 C.F.R. § 1614.107(a)(3);109(b)(2005).

This office is also enclosing the hearing record for the Agency.

This office will hold the report of investigation for 60 days, during which time the Agency may arrange for its retrieval by calling Tanya Stanfield at (202) 419-0719. If we do not hear from the Agency within 60 days, we will destroy our copy of these materials.

It is so **ORDERED**.

For the Commission:

*[signature]*
Abigail R. Coleman
Administrative Judge
Telephone: (202) 419-0722
Facsimile: (202) 419-0739

COUNT 1 — MUSIC SHIT
COUNT 2 — WO 99-045
COUNT 3 — Assistant Direct

enclosure

26
7-12-06

United States
# Office of
# Personnel Management

Investigations Service
Federal Investigations Processing Center
Boyers, Pennsylvania 16018-0618

In Reply Refer To:                                  Your Reference:

*Milton E. Hill*
*P. box 1031*
*Oxnam, MD 20710*

Dear ~~Hill~~                    *1029-98*          *Dec 1, 98  52 11*

This is in reference to your letter dated ___*10.24.96*___. Enclosed is an exact copy of the material requested by you pursuant to the Privacy Act of 1974, as amended, or the Freedom of Information Act.

[ ]    Your request/the attached data was referred to this office by _____ for our direct response to you.

[ ]    We are sending you the document(s) that _____ returned to our office for    release to you.

[X]    This data is being furnished to you in its entirety with no deletions.

[ ]    The data withheld from these documents is limited to the following:

    [ ]    that which is exempt from disclosure under section 552a(k)(5) of the Privacy Act.  This subsection exempts from disclosure personnel investigations material that would reveal the identity of a source who furnished the information under an express promise (or prior to September 27, 1975, an implied promise) of confidentiality.

    [ ]    names of Office of Federal Investigations personnel

    [ ]    names of other individuals and identifying information pertaining to them

    [ ]    information (document(s)_____) or another agency's report, which concern(s)_____. Before we can consider release of this information to you, you must provide a notarized authorization from this/these individual(s). Otherwise, the information will be withheld pursuant to USC 552(b)(7)(c) of the Freedom of Information Act.

    [ ]    that which is exempt from disclosure under section _____ of the Freedom of Information Act.

[ ]    The file contained document(s) _____ with information furnished by _____.
This office is in the process of consulting with the originating agency regarding the releasability of these documents.  You will be notified of the results of that consultation.

[X]    The investigative file contained information which is the property of _____.  That information and a copy of your request have been referred for a decision as to access and they will respond directly to you.

FIPC-89A (front)
August 1995

CON 132-48-9
July 1995

*27*

*Interrogatory #1c.*    *1/5*

[ ]    Our records indicate a portion of the requested/referred material was furnished to you on _____. Therefore we are furnishing only the subsequent material.

[ ]    Our records indicate the requested/referred material was furnished to you on _____. Your file contains no subsequent information.  Therefore we consider your request satisfied.

[ ]    The investigative file contains medical information which cannot be released directly to you. This information (document(s) _____) can be furnished only to a licensed physician designated by you in writing.  Such a procedure is provided for in Title 5, Code of Federal Regulations, Section 297.205.

[ ]    The file contains document(s) _____ furnished by _____.  This source states the information cannot be released to you by this office.  You need to contact the above source if you wish to obtain a copy of this data.

[ ]    Each Federal agency is responsible for granting security clearances to its own employees.  The Office of Personnel Management does not grant clearances to employees of agencies other than OPM unless he or she will be doing some work for OPM which requires an OPM clearance.  Therefore, we suggest that you contact those agencies that have considered you for employment for answers to any questions you have concerning a clearance.

[ ]    A search of our records indicates we currently do not have any record indexed or maintained on _____.

[ ]    Our records also indicate a _____ investigation was _____ on _____ for _____ _____.  All data was favorable and  has not been maintained.

[ ]    The information you requested was previously sent to you on _____.  The Post Office returned it to this office as "Unclaimed" or "Moved."  We therefore, at this time, are again forwarding the requested information to you.

[ ]    Best available copy enclosed.

[ ]    Other:

                                                            Sincerely,

                                                            Cynthia M. Spaulding
                                                            Kathy D. Baker
                                                            FOI/PA Officer

Enclosures: Copies of letters
            to DISC Army
Documents:
            1-45

FIPC-89A (Back)

Z8

2/5

ITEM: 005                                                          SOURCE: 005
    NAME PETER W. NIEBAUER, ACTING ASST DIRECTOR, HR, U.S. DEPARTMENT OF
         INTERIOR (DOI), BLM, 1849 C STREET, N.W., ROOM 5628, WASHINGTON, DC
         20240

    ISSUE(S) 05B 07A
    PRIMARY ASSOCIATION SUPERVISOR
    AVERAGE EXTENT OF CONTACT REGULAR
    SPAN OF CONTACT APPROXIMATELY 1993 — PRESENT

    DOES NOT RECOMMEND BECAUSE OF NIEBAUER'S BASIC SENSE OF DISTRUST. HE
    WILL DO ANYTHING FOR HIS PERSONAL GAIN. HE TAKES ADVANTAGE OF THE
    SYSTEM, AND HIS INTEGRITY IS
    QUESTIONED.

    THEY MET WHILE WORKING AT THE DOI, BLM.  THEY SPOKE IN PASSING ONCE
    PER MONTH WHILE WORKING IN DIFFERENT OFFICES.  IN APPROXIMATELY 1994,

                        REPORT OF INVESTIGATION
            PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT
                 P.O. BOX 886, WASHINGTON, D.C.  20044

                                                                    29

                                                          3/5

---

NAME HILL, MILTON EARL
| CASE # 98007540 | PAGE   5

---

DATES OF INVESTIGATION 06/17/98 - 07/01/98 | SID 0546 | ORG ID P80 | REPORT # 1

---

HE WAS SELECTED FOR THE CONGRESSIONAL FELLOWSHIP PROGRAM. HE WORKED
ON CAPITOL HILL AND THEY SPOKE IN PASSING ONCE PER MONTH TO ONCE EVERY
2 MONTHS UNTIL APPROXIMATELY 1995. IN 1995, HIS FELLOWSHIP TERMINATED
AND HE CAME TO WORK IN THE BUSINESS AND PHYSICAL RESEARCH OFFICE,
WHICH COMES UNDER NIEBAUER. TO DATE, THEY HAVE TELEPHONE CONTACT ONCE
PER WEEK AND SEE EACH OTHER ONCE PER WEEK WHEN NIEBAUER STOPS BY HIS
OFFICE. THEY WORK IN DIFFERENT BUILDINGS. THEY HAVE HAD CASUAL
CONVERSATIONS IN THEIR OFFICES, BUT THERE HAS BEEN NO SOCIAL
INTERACTION.

IN EARLY 1990, HIS FORMER SUPERVISOR, PATRICIA HARVEY (NOW RETIRED)
TOLD NIEBAUER THAT HE HAD BEEN TERMINATED FROM HIS POSITION WITH THE
DOD FOR FALSIFYING TRAVEL VOUCHERS. HARVEY MENTIONED THIS TO NIEBAUER
DURING A CONVERSATION. NIEBAUER DOES NOT HAVE DOCUMENTATION NOR DOES
NIEBAUER KNOW THE DETAILS OF THE TERMINATION.
HE RECEIVED A PERFORMANCE EVALUATION FROM HARVEY THAT HE APPEALED
THROUGH THE BLM. HARVEY GAVE HIM AN EVALUATION RATING OF 4 WITH THE
HIGHEST BEING A 5. HE APPEALED THE RATING THROUGH THE BLM GRIEVANCE
SYSTEM. THE OUTCOME OF THE GRIEVANCE WAS THAT HE RECEIVED A PROMOTION
TO GS-14 AND WAS REASSIGNED TO ANOTHER OFFICE. HE WILL FILE AN EEO
COMPLAINT OR GRIEVANCE AT THE DROP OF A HAT.

HE CURRENTLY HAS 2 EEO GRIEVANCE AND COMPLAINTS AGAINST THE DOI, BLM.
ONE IS FOR NOT HAVING HIS NAME FORWARDED FOR SELECTION TO THE
CONGRESSIONAL FELLOWSHIP PROGRAM. HE WANTS TO BE A FELLOW ON THE U.S.
SENATE SIDE. HIS PAPERWORK WAS NOT FORWARDED BECAUSE HE HAS ALREADY
SERVED IN THE FELLOWSHIP PROGRAM ON THE U.S. HOUSE OF REPRESENTATIVES
SIDE. IN 1996, HE FILED AN EEO COMPLAINT AGAINST SOPHIA BACA, DEPUTY
ASSISTANT SECRETARY FOR LAND AND MINERALS, FOR NOT SELECTING HIM FOR A
STAFF ASSISTANT JOB IN BACA'S OFFICE.

IN 1995, AND SOON AFTER HIS RETURN FROM HIS ASSIGNMENT AS A
COGRESSIONAL FELLOW, HE SUBMITTED PAPERWORK FOR A 1 YEAR COURSE AT THE
NATIONAL WAR COLLEGE IN CARLISLE, PA. HE WAS TURNED DOWN BECAUSE THE
COURSE WAS NOT RELATED TO HIS JOB. NIEBAUER DOES NOT RECALL THE DATE,
BUT HE BY-PASSED NIEBAUER AND THE BLM CHAIN OF COMMAND. HE SUBMITTED
PAPERWORK TO ATTEND THE NATIONAL WAR COLLEGE AT FORT MCNAIR,
WASHINGTON, D.C. HE SUBMITTED THE PACKET TO ASSISTANT SECRETARY OF
DOI FOR POLICY AND PLANNING. IN 4/98, HIS PAPERWORK WAS SIGNED-OFF ON
BY BOB ARMSTRONG. HE HAS CREATED ANIMOSITY WITHIN THE BLM FOR
BY-PASSING THE BLM SUPERVISORY CHAIN. HE HAS ON SEVERAL DIFFERENT
OCCASIONS SUBMITTED PAPERWORK FOR DIFFERENT MANAGEMENT COURSES. SOME
WERE APPROVED AND SOME WERE NOT SUCH AS A COURSE HE WANTED TO ATTEND
THAT COST $10,000 OR COURSES TOTALING $10,000. HE CONTINUALLY TRIES
TO GET AWAY FROM THE BLM ON TRAINING ASSIGNMENTS. HE ALWAYS FEELS
THAT HE IS BEING DISCRIMINATED AGAINST.

JOSEPH FEDERLINE IS HIS TEAM LEADER ON THE PROPERTY AND ACQUISITION
MANAGEMENT TEAM. FEDERLINE OVERSEES AND APPROVES HIS WORK. FEDERLINE
GIVES INPUT INTO HIS PERFORMANCE EVALUATIONS. FEDERLINE AND OTHER

REPORT OF INVESTIGATION
PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT
P.O. BOX 886, WASHINGTON, D.C.  20044

30
71
4/5

---

NAME HILL, MILTON EARL | CASE # 98007540 | PAGE    6
--------------------------------------------------------------------
DATES OF INVESTIGATION 06/17/98 - 07/01/98 | SID 0546 | ORG ID P80 | REPORT # 1

MEMBERS OF THE TEAM HAS COMPLAINED ABOUT HIM NOT COMING TO MEETINGS OR
BEING AWAY FROM THE OFFICE FREQUENTLY.  NIEBAUER HAS NEVER WRITTEN HIM
UP FOR ANYTHING.  THERE ARE CURRENTLY NO DISCIPLINARY ACTIONS AGAINST
HIM.

HE IS EITHER SEPARATED OR DIVORCED, BUT NIEBAUER DOES NOT KNOW ANY
DETAILS SURROUNDING HIS SEPARATION OR DIVORCE.  HE IS A LIEUTENANT
COLONEL IN THE U.S. ARMY RESERVES.  HE IS AWAY ON MILITARY DUTY
SEVERAL TIMES PER YEAR.

ITEM: 005
  NAME JOSEPH J. FEDERLINE, PROCUREMENT CHIEF, BLM, DOI, BLM, 1620 L STREET,    SOURCE: 006
    N.W., ROOM 1075, WASHINGTON, DC 20240

  ACCEPTABLE
  PRIMARY ASSOCIATION WORK COLLEAGUE/TEAM LDR
  AVERAGE EXTENT OF CONTACT REGULAR
  SPAN OF CONTACT SPRING 1995 - PRESENT

  RECOMMENDS

  THEY MET WHEN HE CAME TO WORK ON THE PROPERTY ACQUISITION AND
  MANAGEMENT TEAM.  FEDERLINE IS THE BLM PROCUREMENT CHIEF AND THE TEAM
  LEADER.  TO DATE, THEY HAVE DAILY, PROFESSIONAL INTERACTION WHEN HE IS
  NOT ON TRAVEL.  THEY HAVE LUNCH TOGETHER ONCE PER MONTH AND SOCIALIZE
  THROUGH OFFICE RELATED FUNCTIONS 4-5 TIMES PER YEAR.  HE IS AN OFFICER
  IN THE U.S. ARMY RESERVES.

ITEM: 005
  NAME PATRICIA J. HARVEY, RETIRED, 11555 SPRINGRIDGE ROAD, POTOMAC, MD    SOURCE: 007
    20854

  ISSUE(S) 05A 07A
  PRIMARY ASSOCIATION FORMER SUPERVISOR
  AVERAGE EXTENT OF CONTACT REGULAR
  SPAN OF CONTACT FALL 1989 - 1/95

  RECOMMENDS

  THEY MET WHEN HARVEY AND HARVEY'S DEPUTY DIRECTOR INTERVIEWED HIM FOR
  A MANAGEMENT ANALYST POSITION.  IN APPROXIMATELY 1990, HE WAS HIRED
  AND CAME TO WORK IN HARVEY'S DIVISION.  HARVEY WAS THE DIVISION CHIEF
  AND SUPERVISED HIM DAILY UNTIL APPROXIMATELY 1993 OR 1994.  IN 1993 OR
  1994, HE WAS REASSIGNED TO ANOTHER OFFICE AND LATER BECAME A
  CONGRESSIONAL FELLOW.  THEY SPOKE IN PASSING TWICE UNTIL 1/95, AT
  WHICH TIME, HARVEY RETIRED FROM THE FEDERAL GOVERNMENT.  THEY HAVE
  SPOKEN ONCE IN PASSING SINCE.  THEY SOCIALIZED ONCE PER YEAR THROUGH
  OFFICE RELATED FUNCTIONS.

REPORT OF INVESTIGATION
PROPERTY OF U.S. OFFICE OF PERSONNEL MANAGEMENT
P.O. BOX 886, WASHINGTON, D.C.  20044

30
31
S/S

IN  THE  UNITED  STATES  DISTRICT  COURT
FOR  THE  DISTRICT  OF  COLUMBIA

MILTON HILL

    Plaintiff

v.

                        Civil Action No. 06-1233(JDB)

DIRK KEMPTHORNE,

    Defendant

## INTERROGATORIES

### Interrogatories 1,2,3,14,15,16 and 17

My troubles with the Agency have been longstanding. They go back to at least 1993, resulting in my case LLM 93 024 which ended in an informal resolution.

In 1994 I had to contact Tom Waller and Marilyn Johnson about my displeasure over disparate treatment.

In 1996 I was not selected for a position and had to file an EEO action (LLM 97 036).

In 1998 I was denied an opportunity to apply for the SES Development Program. Allegation #5 and see ROI Exh 15 p343.

32

In January 1999 I learned that Peter Niebaurer had provided false testimony to investigators in a security clearance determination. Allegation #10.

In March 1999, I was not referred for vacancy Announcement 99-12. Allegation #1.

In April 1999, I was not referred for Associate State Director, Utah 97-17. Allegation #2.

In July 1999, I was not selected for the Las Cruces, New Mexico District Manager Position. Allegation #3.

As a result of the above, I was considered an EEO agitator and pariah. See ROI Exh 6 p 25-26 and 69-71. This resulted in my seeking EEO counseling on October 12,1999. In the EEO counselor's report, the contacts of 6/29/99, 8/5/99 and 9/22/99 are documented; ROI Exh 3 p 54; including the individuals who knew about my EEO activity in the fall of 1999. ROI Exh 3 p 49. This is the background information and the allegation which occurred after August 28,1999 are discussed in the other interrogatory answers. EEO activity on or after 10/12/99 is show by the attached documentation.

**Interrogatory #4** - See Plaintiff's Initial Disclosures.

- 2 -

33

*Interrogatory #5* - Prior to FY 1999, I received two awards. Documentation will be provided as soon as it is located. After I began my EEO activity in this case, I stopped receiving awards. See ROI page 73.

*Interrogatory #6* - My travel requests were never approved. Documentation will be provided as soon as it is located. My travel requests were make after I began my EEO activity in this case.

*Interrogatory #7* - Joe Federline initially approved me to attend the Kellogg Senior Executive Training Program and another at Carnegie Mellon (See Attached). After I began my EEO activity in this case, he refused to allow me to attend.

*Interrogatory #8* - As stated in the decision of the AJ dated 8/31/03, this refers to the rewriting of a position description which narrowed the scope of my position and was a defacto reassignment after I began EEO activity. The original position description of Senior Busines Manager and rewritten description (Senior Business Management Specialist 11/19/99) are attached.

*Interrogatory #9* - See response to #8.

*Interrogatory #10*- The racist and sexist statements

- 3 -

*34*

made by Ms. Thompson are contained in the ROI of case LLM 97 036 which is already in the Agency's possession

**Interrogatory #11** - ROI Exhibit 17 is the original job description and ROI Exhibit 16 in the rewritten job description. The 2nd description added a rating basis which was far more narrow than the original one. Also, the original position was in the 300 series which required someone with management experience. The rewritten description was in the 200 series which required a more technical background than a manager.

**Interrogatory #12** - I was more qualified than Mr. Steward for the position as originally advertised because I had far more management experience. See Attached.

**Interrogatory #13** - Mr. Ned was in Information Resource management his entire career. This was essentially a computer person dealing with information technology issues. He had not have the experience in Natural Resources management which I had. See Attached.

- 4 -

35

Terms of Informal Resolution
Complaint of Discrimination

Milton E. Hill
(Case No. LLM-93-024)

I hereby withdraw all Complaints of Discrimination filed against
the U. S. Department of the Interior, Bureau of Land Management.
This withdrawal is based upon the following terms and constitutes
full relief in the matters giving rise to my complaint:

1.    That the overall summary rating for my <u>FY 1993</u>
      Performance Improvement and Position Review (PIPR) will
      reflect a Level 5, "Outstanding Performance", and I
      will receive an appropriate monetary and/or other
      award.

2.    That I will be reassigned to the position of Chief,
      Branch of Workforce Diversity, GM-301-14, in Denver,
      Colorado, Division of Equal Employment Opportunity.
      Promotion will be retroactive to January 1, 1992.

3.    That this resolution is considered to be confidential
      by all  parties, and the parties agree not to discuss
      the resolution with, or show copies of it to non-
      parties, except that I or the Bureau of Land Management
      may discuss or show copies of the resolution only to
      those persons who have a legitimate interest in the
      resolution in connection with their official
      responsibilities.

4.    Agree to send me to career enhancing training, as
      agreed/discussed per my Individual Development Training
      (IDP):  "Measuring Efficiency in Government,"
      (October 6 - 8, 1993), and "Re-Engineering:  The
      Implementation Perspective,"  (October 12-14, 1993).

It is agreed that the above stated terms are not an
acknowledgment of liability on the part of the Bureau of Land
Management or any official thereof, and that this resolution does
not speak to the merit or lack thereof in my complaint.

It is understood that in resolving this complaint, further
processing will cease.  I further understand that if the actions
described above are not carried out within thirty (30) days for
any reason not attributed to any act or conduct on my part, I may
request to reopen this matter as provided in Departmental Manual
370 DM 713.4.7A.

*Interrogatory #1*    36

_Milton E. Sill_
Complainant

_July 1, 1993_
Date

_Robert W. Faithful_
Assistant Director,
Support Services

_July 20, 1993_
Date

_Cass W. Clerf_
Acting Deputy
Director, Bureau of Land
Management

_July 23, 1993_
Date

_Richard E. Redmond_
Chief, Division of Equal
Employment Opportunity    9/29/93

_9/29/93_
Date

37

October 11, 1994

To:      Tom Walker, Acting
         AD, Support Services/HRM

From:    Milton E. Hill
         Chief, Planning and Workforce Diversity

Subject: Displeasure with Disparate Treatment

This letter is to inform you of the displeasure I have with you
and Carolyn Burrell, of the continued and <u>deliberate</u> practice you
two have perpetuated against me in providing me misleading
information, no information, mis-information, false information,
and "ghost taskings". In addition, I am extremely upset with you
two for placing falsified and fabricated negative information in
my personnel files concerning my work.

These actions of yours have caused me to waste valuable
time/money, have caused me embarrasement, and they degrade me as
a human being and belittle me as a man. They are unacceptable.
The actions, started by you two while I was still on detail in
the AS/LM, was initially thought by me to be just the actions of
incompetent and inept managers. However, with the continued and
focused actions, it is most evident that you two mean to do me
harm. For what reason, I do not know. Your actions appeared to
become more vicious after we talked in May concerning my career
goals. You have done everything negative to deter me rather than
assist in my career progression.

This last incident of record falsification is alarming because
when I confronted you two with the information you both denied
any knowledge of it. These actions appear similar to the
incidents perpetuated against me by Tom Allen/Pat Harvey several
years ago. I have no intention of reliving that nightmare.

In this era of managers empowering employees and getting the
maximum "bang for the buck", you two seem obsessed in going out
of your way to create unnecessary barriers and obstacles for me
to do my job and accomplish my mission.

Since you appear to have some phobia in communicating with me, I
am working out of the Eastern States Office and can be reached at
(703)440-1686.

*Interrogatory #1*     38

## DISCOVERY CERTIFICATION

I hereby declare, pursuant to 28 USC 1746 that the foregoing responses are true and correct.

_____
MILTON HILL

DATE: 2 July 2007

## CERTIFICATE OF SERVICE

I hereby certify that one copy of the foregoing discovery responses were mailed to Rhonda Fields Esq., Assistant United States Attorney - Civil Division, 555 Fourth Street NW, Washington DC 20530, this ____6th____ day of July 2007.

_____
Stephen Scavuzzo

39

```
 1        UNITED STATES DEPARTMENT OF THE INTERIOR

 2             BUREAU OF LAND MANAGEMENT

 3             WASHINGTON, D.C.  20240

 4

 5          COMPLAINT OF DISCRIMINATION

 6    ----------------------------------------x

 7    Filed by:     MILTON E. HILL

 8    Filed against:  Bureau of Land Management

 9    Office:

10    Case No.:     LLM-00-042

11    ----------------------------------------x

12               MILTON E. HILL,

13
      Claimant in the above matter, was
14    affirmed/sworn and interviewed on Tuesday, May
      1, 2001 at 9:25 a.m., at the following
15    location, 1620 L Street, N.W., Interview Room,
      Fifth Floor, Washington, D.C., before me,
16    Prudence P. Lindsey, Court Reporter.

17
      APPEARANCES:
18        Investigator

19        Lonnie King

20        9537 Kilimanjaro Road

21        Columbia, Maryland  21045

22        (301) 596-3301
```

000102

1    individuals.  In this case, a person is making

2    a decision, in my opinion, to ingratiate

3    himself to the powers to be and in that case,

4    not selecting the most qualified person, but

5    selecting a person -- anybody -- what I call

6    anybody but Milton Hill will get the job.  In

7    this case, where we talked at length concerning

8    what his desires were --

9             (Knock at the door.)

10            MR. KING:  Off the record.

11            (Off the record.)

12            BY MR. KING:

13       Q.    Mr. Hill, another question:  Have you

14    ever named Mr. Warren Johnson as the

15    responsible managing official in the EEO

16    complaint?

17       A.    No, I have not.

18       Q.    But you have reason to believe that

19    Mr. Johnson is aware that you filed earlier

20    complaints?

21       A.    Yes, I do.

22       Q.    It is your assertion that because you

1    filed these earlier complaints, you have become

2    like a pariah to management, and Mr. Johnson

3    knows that and he had to select somebody other

4    than you for that position?

5        A.    Yes, that's exactly what I'm saying.

6            I realize also, to be specific about

7    this -- I understand that when one raises

8    issues, especially concerns about race and

9    employment, that one -- and management becomes

10    the pariah, but my work has never been in

11    question.  The object is who is the best

12    qualified person for the job, who can get the

13    job done, and who is qualified for the job.

14    That has always been the issue.

15            Although it is always that it appears

16    that you are harping on race, the records show

17    it, themselves, in terms of a myriad of studies

18    done on BLM management.  We have a zillion

19    reports on how bad racism, white supremacy is

20    in the Bureau of Land Management, and nothing

21    is being done about it.  That is the issue.

22            Although Mr. Johnson is an African

000137

1    them a September 13 e-mail that they never

2    responded to.

3        Q.    Let me take you to Number 10.  Please

4    examine that one and tell me whether or not

5    that comports with the issue as you understand

6    it to be.

7        A.    (Witness reading.)  Yes, sir, it does.

8        Q.    Number 10 states:  "In January 1999,

9    BLM managers attempted to degrade and

10    dehumanize Mr. Hill and deliberately made false

11    statements against him."  Give me your position

12    in this regard.

13        A.    On this regard is where, through a

14    Freedom of Information Act request, I received

15    copies of testimony from Mr. Peter Niebauer,

16    where he gave to U.S. investigators where I was

17    applying for top secret clearance to attend

18    Industrial College, which I received.  However

19    what was disturbing about the testimony were

20    the false statements made about my prior EEO

21    grievances and complaints; false statements

22    that I filed a complaint on Ms. Baca, B-A-C-A,

000170

1    and other information.  For example, he quotes
2    "He always feels that he is being discriminated
3    against" and some other derogatory statements,
4    which I would include for the record since I
5    won't read all of them.
6         This is just only one occasion, where
7    on prior occasions, I felt it was a continuous
8    habit of management officials, dating back to
9    the prior Case 97036, where statements were
10   made by Ms. Carolyn Burrell and Twinkle
11   Thompson, which I felt were false and --
12   Q.    What kind of Thompson?
13   A.    Her name is Phyllis, P-H-Y-L-L-I-S.
14   They call her Twinkle.  She was making the
15   statement that she didn't have any input in my
16   being assigned or not assigned to certain jobs.
17   Then, subsequently, we find that she did have
18   that kind of input.  They were saying negative
19   things about persons -- about me, particularly,
20   about filing EEO grievances and discriminatory
21   practices and claiming that discriminatory
22   practices were done against me.

000171

1      group manager jobs and I was not.

2          Q.     You say that Number 12 should be

3      combined with which one?

4          A.     I think, sir, it is Number 7, Number

5      10 -- just a minute.  Let me make sure that my

6      numbers are correct.

7              MR. KING:  Okay.  We will go off the

8      record right now.

9              (Off the record.)

10             MR. KING:  Back on the record.

11             THE WITNESS:  Yes, sir, I think Number

12     12 is part of Number 7 and Number 10, and,

13     also, combined with Number 13, which we haven't

14     gotten to yet.

15             BY MR. KING:

16         Q.     Okay.  So you don't have to add

17     anything else because we have done 7 and 10.

18     Do you want to add anything else to Number 12?

19         A.     The addition is the rewriting of a

20     position -- it is the -- just a minute.

21             MR. KING:  Off the record.

22             (Off the record.)          000179

1              THE WITNESS:  The only other addition

2     is the re-write of a position that I was in.

3     I was the -- I had contested the rewriting of

4     a business and economic development program

5     position -- which was, in my mind, a

6     downgrade -- in an attempt to narrow the focus

7     of the management analyst job that I was

8     originally reassigned to.  That was done by Mr.

9     Federline and Mr. Doyle and Mr. Walker.  They

10    sent me an e-mail --

11              BY MR. KING:

12         Q.    What is Mr. Walker's first name?

13         A.    That is Tom Walker.  He is the deputy

14    assistant director.  What that did,

15    effectively, was reassigned the job that I had,

16    which I felt was more career enhancing, and

17    they narrowed the scope to a less of a focus of

18    a job.

19         Q.    Now, let me ask you some questions

20    about Number 12.

21         A.    Okay, sir.     000180

22         Q.    You say that management consistently

1    assigned you to non-career-enhancing details

2    and jobs.  What were those jobs again?

3         A.     As an example, you are in a position

4    in what you want to do as you move up the

5    career chain.  You want jobs that are highly

6    visible, jobs that are career enhancing -- and

7    "career enhancing" means that it allows you to

8    do public policy.  You are in public policy and

9    you are moving away from more the technical

10    things.

11         Q.     Tell me the jobs that they assigned

12    you to.

13         A.     The jobs that they would assign me to

14    was the business and economic development

15    program job only.  That is a very narrow --

16         Q.     That's the one where you worked for

17    only two months?

18         A.     No.  That's the one where they were

19    rewriting the job.  The job I was in was a

20    management and program analyst job.  Then

21    Mr. Federline and Mr. Walker and Mr. Doyle, in

22    my view, conspired to rewrite the job that I

1   was in, took me out of the 343 and 345 series,

2   and narrowed the focus of the job through a

3   re-write.  They took duties that I had in my

4   job, which included the ability to be more

5   expansive in your job, meaning that you are

6   doing policy, you are working with the

7   department, you are working with other areas;

8   where they rewrote the job and where it

9   narrowed the focus.

10      Q.    That's one detail, right?

11      A.    No, that's not a detail.  That's a job

12   I was in that they redid.

13      Q.    I want you to talk to me about the

14   non-career-enhancing detail.

15      A.    The detail, specifically?

16      Q.    Detail 1, detail 2.

17      A.    Okay.  Detail 1 was the acting

18   Associate State director job in California,

19   which was open.

20      Q.    So you were detailed into that job?

21      A.    No, I applied to this --

22      Q.    No.  No.  You've got to look at Number

000182

1    12 now.  Number 12 is saying that you were

2    consistently assigned to non-career-enhancing

3    jobs without your approval and without

4    consulting you.  I need to know, what were

5    those non-career-enhancing job details?

6         A.    Now, I get you.  I'm sorry.  The one

7    job was to the Office of the Secretary.  There

8    was never --

9         Q.    That's the one for two months?

10        A.    Yes.  There was never any paperwork.

11        Q.    They didn't ask you about it?  They

12   just assigned you?

13        A.    Yes.  No, paperwork or nothing.

14        Q.    Then you got reassigned, in two

15   months, back out of that one, right?

16        A.    Back out of that one.

17        Q.    Now, give me another one.  Or was that

18   the only one?

19        A.    No, I have that.  Number 12 should

20   actually read, not so much as -- it's a

21   misnomer.  It is not "consistently assigned"

22   but consistently not assigned to

000153

1    career-enhancing details and jobs.

2        Q.    What does that mean?  Are you saying

3    they did not put you in career-enhancing jobs?

4        A.    That's right.  That means what you

5    have to do to move up the ladder is to get

6    details where you are working in visible public

7    policy.

8        Q.    I understand all that.

9        A.    Those are specifically -- for example,

10    the National Performance Review as an analyst

11    for NPR, the other is the office of the --

12        Q.    Mr. Hill, let's go back to Number 12

13    again.

14        A.    Okay.

15        Q.    Other than the Office of the Secretary

16    for that two months, what other assignment did

17    they send you to without your approval that was

18    non-career-enhancing?

19        A.    The other one was -- I don't have the

20    exact name of it.  I couldn't find it.

21        Q.    Okay.  You cannot find the other one.

22    So, essentially, all we are talking about, at

1    this moment, is one.

2        A.    One.

3        Q.    And they assigned it to you for two

4    months.  Now, when I talk to you on your

5    rebuttal I'm going to ask you to give me the

6    names of the other non-career-enhancing details

7    that they assigned you to without your

8    approval.  All right?

9        A.    Okay, sir.

10        Q.    I'm going to Number 13.  Would you

11    examine Number 13 to see whether or not that

12    particular issue, as stated, comports with what

13    you think ought to be said there?

14        A.    (Witness reading.)  Yes, that's

15    correct.

16        Q.    I will read it.  "In December 1999,

17    management officials deliberately attempted to

18    steer Mr. Hill away from career-enhancing

19    assignments and into less visible and

20    non-essential jobs."  What's the difference

21    between that, Mr. Hill, and Number 12?

22        A.    They are the same.  They should be

000185

1    combined.  Actually what that is, where I had

2    alluded to previously, where when I came back

3    from the ICAF, again, I was reassigned, without

4    any paperwork, without my knowledge or

5    approval, to the Office of the Secretary.  But,

6    simultaneously, Mr. Federline and Mr. Donelson

7    was then detailed as acting group managers in

8    the job and I was not.

9    Q.    All of you were 14's?

10   A.    Yes, sir.  I felt this was done

11   deliberately, and subsequently resulted in a

12   pre-selection of a job.

13   Q.    Who got pre-selected?

14   A.    Mr. Federline.

15   Q.    So he went from being a coworker to

16   being your boss?

17   A.    Exactly right.

18   Q.    Let's go to Number 14.  Would you read

19   that one, please, and tell me --

20   A.    "In January 1999, management officials

21   falsified Mr. Hill's work accomplishments."

22   Q.    Is that correct?

000186

1

# ORIGINAL

1       UNITED STATES DEPARTMENT OF THE INTERIOR

2              BUREAU OF LAND MANAGEMENT

3              WASHINGTON, D.C.  20240

4              COMPLAINT OF DISCRIMINATION

5       - - - - - - - - - - - - - - - - - - - - - - - - - -x

6       Filed by:    Milton Hill

7       Filed against:  Bureau of Land Management

8       Office:

9       Case No.:    LLM-00-042

10      - - - - - - - - - - - - - - - - - - - - - - - - - -x

11                    THOMAS A. FRY,

12      a witness in the above matter, was affirmed/sworn

13      and interviewed via telephone on Friday, May 25,

14      2001, at 9:06 a.m., at the location 1849 C Street,

15      Northwest, Room 6071, Washington, D.C.,

16      before me, Dawn A. Jaques, C.S.R. and Notary

17      Public in and for the District of Columbia.

18      APPEARANCES:

19      Investigator Lonnie King

20      9537 Kilimanjaro Road

21      Columbia, Maryland  21045

22      (301) 596-3301 000214

WORD-FOR-WORD REPORTERS & TRANSCRIBERS
(301) 431-3900  and   (202) 775-1842

53

6

1    Did you have any involvement in that at

2    all?

3        A.    No.  The selecting official would have

4    been the State Director for the Eastern States,

5    so I would not have been involved in the ultimate

6    process of the decision making, although I do

7    have a recollection of the fact that I talked to

8    the State Director at some point in time about

9    who she was selecting.

10    She indicated that she wanted to select

11    Mr. Mike Ned, an African-American male, to that

12    job.  Obviously, the call was hers, but she told

13    me that's who she wanted, and I told her that I

14    thought that was a good selection.

15        Q.    Who was the person that was the

16    director out there?

17        A.    Gail Gordon.

18        Q.    Did she discuss Mr. Hill with you at

19    all?

20        A.    Not to my recollection.

21        Q.    So Mr. Hill never came to discuss

22    anything with you about wanting that position?

000219

54

1       A.    I do not have any recollection of that.

2       Q.    I see.  All right, then.  Well, let me

3    thank you very much -- no, no.  I guess I better

4    ask a general open-ended question.

5            Did Mr. Hill ever come to talk to you

6    about any of his desires for career advancement

7    or what have you?

8       A.    He did.

9       Q.    Do you recall what he had to say or

10   what he was alleging or asking for?  And give me

11   the time frame so I can see whether or not it

12   fits into any one of these 16.

13      A.    It would have certainly been -- well,

14   this is '99.  I'm not going to be able to help

15   you very much with the time frame.

16            At some point in time, Mr. Hill came to

17   see me.  He had been on an assignment to the -- I

18   want to say he had been to the War College or

19   some army college, and he came and was looking

20   for another detail, and at the time that I talked

21   to him, I suggested that he needed to get back in

22   the Bureau and kind of go to work in the Bureau,

000220

1    do a job in the Bureau before he went on another

2    detail.

3        I don't think he thought that was the

4    right answer, so he went to my superior, I think

5    at the time Bob Armstrong, or maybe somebody back

6    in there, and ultimately to the Assistant

7    Secretary.  I think he ultimately talked to John

8    Berry, who was also another Assistant Secretary,

9    about that, and I quite frankly don't remember

10   whether he got another assignment out of that or

11   not, but that's what I recall about my discussion

12   with Mr. Hill.

13       Q.    Okay, then.  Well, thank you very much.

14   Don't hang up, we need to find out where should

15   we mail this to?

16       A.    1120 G Street, G as in George,

17   Suite 900, Washington, D.C., 20005.

18       Q.    Okay.  After you've had a chance to

19   review it, would you mail it back to me, Lonnie

20   King -- and you don't have to write this down, it

21   will be in the transcript -- 9537 Kilimanjaro

22   Road, Columbia, Maryland, 21045.  And if you want

000221