## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MILTON HILL,
      Plaintiff,

v.

                                Civil Action No. 06-1233 (JDB)

DIRK KEMPTHORNE,
      Defendant.

## REPLY

Defendant respectfully submits this reply to plaintiff's opposition to defendant's motion for summary judgment (Opposition).

**The Material Facts Submitted by Defendant Should Be Deemed Admitted.**

Local Rule 7(h) provides:

Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. **An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exist a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement** . . . In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

(Emphasis added). "If the party opposing the motion fails to comply with this local rule, then 'the district court is under no obligation to sift through the record' and should instead . . . deem as admitted the moving party's Rule [7(h)] statement." *Securities and Exch. Comm'n v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000) (internal citations omitted).

Plaintiff has failed to file a statement of genuine issues as required by the Local Rule and F.R. Civ. P. 56.[1] Defendant has filed a statement of material facts as to which there is no genuine issue, which is supported by citations to affidavits, depositions and documentary evidence.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party **may not rest upon the mere allegations or denials of the adverse party's pleading, but** the adverse party's response, by affidavits or as otherwise provided in this rule, **must set forth specific facts showing that there is a genuine issue for trial.**

Fed. R. Civ. P. 56(e)(emphasis added). Plaintiff has not submitted a statement of genuine issues which disputes any of the facts in defendant's Statement of Material Facts and does not offer citations to evidence in the record which contradicts or disputes the material facts in defendant's statement of material facts.   Plaintiff's Opposition is entirely insufficient to raise a genuine issue of material fact. *See Colbert v. Chao*, 2001 WL 710114, *8 (D.D.C.) *citing Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996)(Statement which is "replete with factual allegations not material to [plaintiff's] substantive claims, and blends factual assertions with legal [and general] argument. . . ." does not satisfy the purposes of a Rule 7(h) statement.).   *See Benn v. Unisys Corp.*, 176 F.R.D. 2 (D.D.C.1997)

> Once a moving party fulfills its obligations pursuant to 56(c), the onus is on the non-moving party to respond with "specific facts" to establish a genuine issue for trial. *Celotex*, 477 U.S. at 324. . . . Subsection (e) of Rule 56 sets forth the extent to and means by which the non-moving party shall make the necessary evidentiary showing in order to survive a properly supported motion for summary judgment. . . .

---

[1] Pages 1-4 of plaintiff's Opposition contain a section titled "Response to Statement of Facts." However, that section does not relate to defendant's statement of material facts. It appears to pertain to the Statement of Facts in defendant's memorandum of points and authorities in support of the summary judgment motion.

* * *

Finally, Benn has produced literally absolutely no evidence--only allegations--in support of his opposition to the summary judgment motion. *See Farrell v. Potomac Electric Power Co.*, 616 F.Supp. 995, 1000 (D.D.C.1985)("All the plaintiff has done is to make additional allegations, but as Rule 56(e) clearly provides, such allegations are not enough and do not raise a factual issue."). * * * Benn must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 . . .(quoting Fed.R.Civ. P. 56(e)).

*Benn v. Unisys Corp.*, 176 F.R.D.at 4 -5.  Plaintiff Hill's Opposition suffers from the same

defect.  It is replete with allegations, but plaintiff has not designated any specific facts showing

that there is a genuine issue for trial.  Therefore the material facts submitted by defendant should

be deemed to be admitted.

## Conceded Arguments

It is well settled in this Circuit that when a plaintiff files an opposition addressing only

certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff

failed to address as conceded."  *Hopkins v. Women's Div., General Bd. Of Global Ministries*, 238

F.Supp.2d 174, 178 (D.D.C. 2002) (*citing FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997);

*see also* Local Rule LCvR 7(b); *Bancouldt v. McNamara*, 227 F.Supp.2d 144, 149 (D.D.C.

2002); *Bramwell v. Blakey,* 2006 WL 1442655, *8 (D.D.C.2006);  *Hornbeck Offshore Transp.,*

*LLC v. U.S. Coast Guard,* 2006 WL 696053, *23  (D.D.C.2006);  *Hooker-Robinson v. Rice,*

2006 WL 508343, *3 (D.D.C. 2006);  *Matta v. Snow*, 2005 WL 3454334, *23 (D.D.C.2005).

Defendant Hill has failed to dispute or address most of the specific arguments made by

defendant in its motion for summary judgment and has failed to offer evidence which creates any

genuine issue of material fact.  The arguments which plaintiff has failed to dispute, and thus has

conceded, include, but are not limited to arguments discussed below.

**Count 1 -- FY '98 Performance Evaluation and Award**

Defendant's summary judgment memorandum (SJM) argued that plaintiff failed to exhaust his administrative remedies concerning his FY '98 performance evaluation because he failed to contact an EEO counselor within 45 days of 1) not receiving an evaluation and reward in 1998, 2) receiving the FY '98 evaluation in June 1999, which only rated him as "achieved," and did not contain complementary narrative, 3) learning of Mr. Doyle's refusal to approve or recommend an award, and 4) learning that the evaluation was done with input from his peers. SJM at p. 14-15. Plaintiff did not address or dispute these arguments; therefor he has conceded them.

Rather, in an attempt to overcome his failure timely to contact a counselor, plaintiff asserts – for the first time -- that his claim is not about any of the above described acts, but is that Mr. Doyle "failed to make the corrections requested in the memorandum of 9/22/99. . . ." Opposition at p. 3. [2] Neither plaintiff's complaint, nor his first interrogatory response, nor his supplemental interrogatory response refer to any request that plaintiff's evaluation be corrected; nor do any of those three documents allege that the plaintiff was retaliated against due to Mr. Doyle's failure to "correct" the performance evaluation. Additionally, plaintiff's supplemental interrogatory responses are prefaced by plaintiff's statement that

The responses to the following interrogatories are premised upon the notion that the scope of this case involves only matters which are stated in the complaint and

---

[2] Plaintiff cites to defendant's Exhibit 2. Defendant's SJM Attachment #2, at Docket # 15, is a January 30, 1999 letter to Peter Niebauer inquiring about the evaluation and award. This letter is clearly written much more that 45 days before plaintiff's initial EEO contact concerning his evaluation.

the original along with the supplemental interrogatory responses.  Although the EEO filing of September of 2000 involved far more, if an allegation is not mentioned in the complaint or these responses it is not part of this case.

Supp Rogs at p.  1.  Therefore, plaintiff,  in his interrogatories,  abandoned any claims not articulated in the complaint or in his interrogatory responses.

Plaintiff also did not submit such a claim to the EEO.  *See* EEO Appeals Decision, plaintiff's appendix at p. 17, which indicates that plaintiff's claim before the EEO was that "management officials allowed [his] co-worker's and peers to have input on his performance appraisal, which negatively impacted his appraisal . . . ."  *See also* Administrative Judge's Decision, Plaintiff's appendix at p.  8-9.  (Claim is about allowing co-workers and peers to have input on his performance appraisal); and SJM Ex. ROI p. 33 at p. 34-36 (Plaintiff's March 13, 2000 memorandum to EEO Counselor, titled "EEO Complaint," does not contain any failure to correct allegation.).  Thus, plaintiff also has submitted no evidence showing that he submitted a claim to the EEO alleging that he was discriminated/retaliated against because Mr.  Doyle did not correct plaintiff's evaluation.   Therefore, he has failed to establish that he exhausted such a claim.

 Additionally, plaintiff's  9/22/99 memorandum to Mr. Doyle  does not contain any "request"  that Mr. Doyle correct any "errors"  in the FY '98 evaluation.   ROI at p. 54-56.  The only requests  in the memorandum ask  1)  that  action be taken against Mr. Neibauer and Mr. Hildebeidel and that plaintiff be given a written explanation for their actions; and 2) that plaintiff be given answers to a series of questions about why input from peers was obtained. *Id.*  Thus, plaintiff has failed to submit evidence showing that in the September 22, 1999 memorandum he made a request that Mr. Doyle correct errors in the evaluation.

Plaintiff also failed to address or deny defendant's argument that he presented no evidence of retaliatory animus on the part of Mr. Doyle pertaining to the FY'98 evaluation which was signed in June, 1999, because the protected acts claimed by plaintiff occurred after the peer input was obtained and after the evaluation was prepared.  *See* SJM at p. 17-18.

Rather, plaintiff argues that he does not have to provide indirect evidence of retaliatory intent under the *McDonnell Douglas* rubric, because he has direct evidence of retaliatory intent based on statements made by Mr. Niebauer in June-July of 1998 during a security investigation interview.  *See* plaintiff's Appendix at p. 29-30 and Opp at p.6-7.   However,  the acts in question are not those of Mr. Niebauer, but of Mr. Doyle.   Plaintiff did not address or dispute defendant's argument that Mr. Niebauer's alleged retaliatory animus cannot be imputed to Mr. Doyle, because part of plaintiff's complaint was that Mr. Doyle did the evaluation **without** Mr. Niebauer's input.   SJM at p. 17; Reply Ex A, Hill 2002 Depo at p. 266-267.   Moreover, plaintiff's "direct evidence,"  plaintiff's appendix at pages 27-31 (*See* Opposition at p. 6),   does not show that Mr. Doyle was involved in the matters referred to in Mr.  Niebaurer's statement.  Indeed, Mr. Doyle did not become the Acting  Assistant Director for Management and Resources until August, 1998, which  was after Mr. Niebauer gave his security interview.   Thus, plaintiff has failed to establish a causal connection between Mr. Doyle's act in June 1999, and prior EEO activity discussed by Mr. Niebauer in June/July 1998.   Compare *Bieber v. Runyon*, 1996 WL 525372 at *11 (D.D.C. 1996) (plaintiff failed to establish causal connection between her non-selection and a previous EEO complaint where her earlier complaint was not based on actions taken or decisions made by the official who failed to select her for the position, and where plaintiff had not claimed that the official was involved in any way in the facts underlying her

previous complaint).

**Count 2 – Travel Request**

Plaintiff has failed to rebut defendant's argument that he has offered no evidence that, as alleged, Robert Doyle refused to provide travel funds to him. SJM at p. 18-19. Plaintiff states that dismissal is proper because "Peter Neibauer was involved in the approval of these funds." Opposition at p. 11. However, plaintiff has cited to no evidence showing that Mr. Niebauer was involved. Indeed, plaintiff has offered no evidence showing that anyone refused to provide him with travel funds. The only evidence that plaintiff has submitted is a memorandum addressed to Mr. Niebauer. The memorandum, dated September 13, 1998, stated that plaintiff needed travel authorization for upcoming conferences, the first of which was to begin on September 15. SupRog at attachment Ex 7. Plaintiff has not offered any evidence establishing whether Mr. Niebauer received the memorandum, nor, if it was received, when it was received; nor has plaintiff submitted any evidence that Mr. Doyle, Mr. Niebauer or anyone else denied his request. All the plaintiff has established is that he did not receive authorization to go on the first trip, but did receive authorization to go on the next trip to the Hispanic Chamber of Commerce meeting, after Mr. Faithful made a request to Mr. Doyle. Hill 2002 Depo at p. 167:24-168:21.

Next, plaintiff argues that his request purportedly was denied "several days after plaintiff's 9/22/99 memorandum to Mr. Doyle, complaining of discriminatory treatment," and therefore raises an inference of retaliatory intent on the part of Mr. Doyle. Plaintiff has submitted no reference to any evidence which supports this assertion. Indeed, the assertion is baffling since plaintiff testified that he did not get the travel authorization for the very first conference. Hill 2007 depo at p. 73-75. Plaintiff's memorandum dated September 13, 1999, establishes that the

first conference was on September 15, 1999.   If there had been a denial of approval, it logically would have occurred September 13 to September 15.   Thus, the alleged denial would have occurred before plaintiff's September 22 memorandum to Mr. Doyle.  Therefore, the alleged denial could not have been in retaliation for plaintiff's  September 22 memorandum to Mr. Doyle.

However, assuming, as plaintiff's Opposition alleges,  that  the request for authorization to travel to the September 15 conference, was not  denied until **after** September 22, then it clearly was not a materially adverse act.  By that time plaintiff already had missed the September 15 conference; an "approval" after September 15 could not have changed that fact.   Therefore a denial which was not made until after September 22 could not have harmed plaintiff in any manner.

Additionally, although plaintiff  submitted the conclusionary statement that a reasonable person would be dissuaded from bringing a retaliation claim "if refused necessary travel funds," Opposition at p. 5,  unlike the plaintiff in *Burlington Northern and Santa Fe Ry. C. V. White*, 126 S.Ct.  2405 (2006),   Mr. Hill has failed to submit any evidence showing that merely not getting travel funds for the first trip on September 15 was in any way  harmful to him, or had any materially adverse consequences.  *See Id.*, 126 S.Ct.  at 2414-2415 ("The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces a harm or injury . . . .").   Thus, he has failed to submit evidence of a materially adverse action, as is required by *Burlington*, *Id*.

## Count 3 – Detail

Plaintiff failed to address or dispute defendant's arguments that plaintiff has presented no

evidence of any materially adverse action in regard to the termination of his "detail**."** SJM at p.

20.  Defendant argued, in sum, 1)  that a detail implies that one will return to his regular duties at

the end of the detail;   2)  that plaintiff was on a self generated detail with Dr. Taylor at least as

early as November 2, 1999;  3)   that plaintiff remained on the detail until approximately April

2000; 4)  that plaintiff was allowed to remain on the detail until he finished the project he was

working on for Dr. Taylor.  *Id.*  Plaintiff did not address , deny or rebut defendant's argument.

Nor has plaintiff offered any genuine issue of material fact showing a materially adverse action.

Therefore, he has conceded that he has not established an essential element of his claim.

Plaintiff also failed to address or rebut defendant's legitimate non-discriminatory/

retaliatory reason for its actions  -– that Dr. Taylor did not have money to fund plaintiff's detail,

and BLM would not want to continue to use its funds for plaintiff to stay working outside of

BLM.    SJM at p. 20-21.   Thus, plaintiff also has conceded defendant's legitimate non-

discriminatory reason. [3]

## Count 4 – Position Description Rewritten

In plaintiff's Opposition he makes the unsupported conclusionary statement that "plaintiff

went from a management position to a clerical position.   The new clerical position was far below

his GS14 level."  No evidence or record citations are offered for these conclusionary assertions.

_____

[3]  Plaintiff's discussion concerning Count 3 appears on page 12 of his Opposition.  Defendant has
been unable in this section, and others, to reconcile plaintiff's record citations to what he calls
"Defendant's Exhibits" to exhibits which defendant filed with its Summary Judgment Motion.
On page 12 of the Opposition plaintiff cites to defendant's exhibit 34.   However, the docket
shows that defendant's summary judgment exhibits only number 33.   *See* Docket # 15.
Additionally, none of the summary judgment exhibits bears the designation "Ex 34."  The
"defendant's exhibits" to which plaintiff refers also are not in his Appendix.  Thus, it appears the
plaintiff is citing to exhibits which are not a part of the record.

They are insufficient to create a genuine issue of material fact.

Plaintiff has failed to address or rebut defendant's arguments concerning the rewriting of his position description. First defendant demonstrated that plaintiff had not submitted evidence establishing a causal relationship between the rewriting of the position description and alleged protected activity dating from June to October, 1999. Mr. Federline signed the new position description for Senior Business Management Specialist on July 20, 2000. See SJM at p. 21 & July 2000 PD. That was approximately 8 months after the alleged protected activity. *Id.* Defendant's unrebutted statement of material fact number 7 states " A notice of personnel action, effective 8/13/00, was issued reassigning plaintiff from the position Management Program Analyst, GS-0343-14, to Senior Business Management Specialist, GS-1101-14. SF-50 B effective date 8/13/00." Plaintiff neither addressed nor rebutted these facts. All plaintiff offered in his Opposition was the conclusory statement, unsupported by citation to any record evidence, that "After Fry wrote the letter to plaintiff on 11/23/99, it was only a matter of days before Plaintiff's position description was rewritten resulting in Count 4." Opposition at p. 13. This conclusory assertion is insufficient to raise a genuine material issue as to when the new position description was signed and effective, and therefore is insufficient to raise a genuine issue concerning plaintiff's failure to establish an inference of retaliatory intent due to temporal proximity. Therefore plaintiff has failed to establish an essential element of this claim.

Second, plaintiff failed to address or rebut defendant's argument that removing any GS-15 duties was not a materially adverse action. SJM at p. 21-24. In his deposition, plaintiff had contended that he had requested a desk audit to get his position classified from the GS-14 to the GS-15 level. He contended that GS-15 duties were removed from him. Defendant argued, inter

alia,  that  it was not required to give plaintiff a non-competitive promotion to the GS-15 level,

and in fact was prohibited from doing so due to agency regulations.   Removal of GS-15 duties,

so that plaintiff, who was only paid at the GS-14 level, was not given  GS-15 level work, was not

a materially adverse action.  Plaintiff did not address or rebut these arguments which were

offered to show no materially adverse action and a legitimate non-discriminatory/retaliatory

reason. SJM at p.  24.   Thus, plaintiff has conceded this argument and has failed to establish an

essential element of this claim.

Plaintiff also failed to address or rebut defendant's other adverse action argument and

non-retaliatory reason for its action.   Plaintiff's summary judgment motion argued that the

position description was changed to describe the job that plaintiff was then assigned to do in the

Property and Acquisition Group.  Further, the classification evaluation established that the duties

and responsibilities were at plaintiff's grade level, GS-14.  SJM at p. 24-27.   Thus, plaintiff has

conceded defendant's other legitimate non-retaliatory reason for its action.  He also has conceded

that the classification evaluation established that the duties and responsibilities of the new

position were at the GS-14 Grade level – therefore, there was no materially adverse action.

**Count 5 – Acting Supervisory Position**

Plaintiff's interrogatory responses stated that  his claim in Count 5 was that : "In

December 1999 while Plaintiff was serving the detail referred in Paragraph 9, Joseph Federline

and Robert Donelson were **promoted** to acting group manager and he was not."  SupRog p. 6,

Paragraph 11 - Count 5 (Allegation 13) (emphasis added).  Defendant's summary judgement

motion argued that plaintiff failed to present any evidence that Mr. Federline or Mr. Donelson

received temporary promotions to a higher level as acting group manager during the period in

question, and therefore, had failed to show any materially adverse action.    SJM at p. 27.

Federal payroll records reflect that Mr. Federline only received a temporary promotion from July

18, 1999 to August 31, 1999. *Id*. This temporary promotion was while plaintiff was away at

ICAF and not available to do BLM work[4], and before the time period complained about by

plaintiff.   Mr. Donelson did not receive a temporary promotion during the period in question. *Id.*

 Plaintiff did not address or rebut this argument. *See* Opposition at p. 13.   Thus, plaintiff has

conceded that he cannot establish an essential element of this claim.

       Plaintiff alleges that his claim in count 5 is a materially adverse action "because one loses

the promotion potential of functioning as an acting supervisor."   Opposition at p. 5-6.

Defendant assumes  that this response relates to unpaid acting designations, versus temporary

promotions, since plaintiff failed to establish a relevant temporary promotion of Federline or

Donelson.  It is easy to speculate that almost anything hypothetically could enhance or lessen

one's promotion potential.  However, plaintiff has offered no evidence – e.g. testimony or

affidavits from selecting officials– showing that he did not get a promotion due to not being

placed in unpaid acting designations. *Cf. Brown v. Snow*,  440 F.3d 1259, 1265 -1266 (11th Cir.

2006)(Plaintiff offered no evidence that his lowered evaluation score was the reason he did not

receive the promotions. "Although we must draw all reasonable inferences from the evidence in

favor of Brown, it is unreasonable to infer from Brown's speculative testimony alone that he was

denied promotion on the basis of his lowered evaluation score. Brown failed to establish that he

suffered a tangible employment action.").  Similarly, plaintiff Hill has offered no evidence

raising a genuine issue concerning whether he failed to receive a promotion due to not receiving

---

[4]   See Niebauer Dec at ¶ j.

an unpaid acting designation.   He has failed to establish that he suffered a  a materially adverse action and has failed to present any evidence which raises a genuine issue concerning this element of his claim.

**Count 7 –Non-selection**

Plaintiff also has failed to address or rebut defendant's arguments concerning the cancellation of vacancy announcement WO-99-15 and plaintiff's non-selection under re-advertised  announcement WO-99-27.   SJM at p. 28-35.

The vacancy was for an individual to serve as the Chief, Human Resources Management for the Executive Services/Initiative Group.  Defendant pointed out that the only change in the announcements was in the title of the position.  The first announcement described the position as "Human Resources Specialist, Supervisory, GS-0301-15."  The second announcement described it as "Supervisory Personnel Specialist, GS-0201-15."   The major duties and knowledges, skills and abilities (KSAs) required in both announcements were exactly the same.   SJM at p. 29; Johnson 2007 Depo at p. 24 ("There are boilerplate changes, but there are no changes as relates to his skills, knowledge, ability and duties.") and at p. 30-31 (There is no difference between a personnel management specialist and a human resources specialist:  "In the human resources field, they are one and the same.  The term is used interchangeably, because human resources/personnel is going through a transition at that time.   We refer to everybody in the personnel shop as human resources.")   Plaintiff has submitted no evidence which disputes the facts cited in the summary judgment motion.  Since there was no change in the major duties and KSA's, plaintiff could not be adversely affected by the simple change in the title of the position.

Plaintiff also failed to address or rebut defendant's argument that there was no evidence

13

of retaliatory animus on the part of Mr. Johnson, the official who changed the announcement and made the selection.   Plaintiff did not dispute that he offered no direct evidence of retaliatory animus on the part of Mr. Johnson.   Plaintiff also did not address defendant's argument that there was no temporal proximity between the protected activity which plaintiff had identified in his response to  Interrogatory 17 and the readvertising of the vacancy announcement and the selection of Ms. Stewart for the position. SJM at 29-30.

Plaintiff's response concerning this count refers to Mr. Neibauer's alleged retaliatory animus against him.  *See* Opposition at p. 14-15.  However, there is no evidence that Mr. Neibauer had any involvement with the vacancy announcements or the selection.  Nor has plaintiff offered any evidence showing that Mr. Neibauer's alleged animus can be imputed to Mr. Johnson.

Plaintiff's Opposition attempts to raise an inference of retaliatory intent based on  prior protected activity, which was not identified in plaintiff's response to Interrogatory 17.  *See* Opposition at p. 8.  Plaintiff states that the previous EEO activity is set forth in his Appendix at p. 32-38.  *Id.*   The only additional arguably protected activities reflected at the cited pages are :

> an EEO complaint  which was settled in July 1993,  Plaintiff's appendix at p. 36-37,
>
> an October, 1998 memorandum to a Tom Walker about "Displeasure with Disparate Treatment," *Id*. at p. 38, and
>
> an EEO complaint in 1996, *Id*. at p. 32.

Plaintiff does not explain or establish how these alleged prior protected activities raise an inference of retaliatory intent on the part of Mr. Johnson.  The vacancy announcement was readvertised in April 1999.  Johnson Dec, Ex 13 at ¶ c.  Ms. Stewart was selected for the position

on August 23, 1999.  *Id*. at ¶j. and Def. Response at p. 52.  Since  there is a 2-3 year gap between

the last of the  newly alleged prior protected activity and Mr. Johnson's alleged retaliatory acts,

no inference of retaliatory intent can be raised based on temporal proximity.    *Mayers v.*

*Laborers' Health & Safety Fund of North America,* 478 F.3d 364, 369 (D.C.Cir.2007)(eight to

nine month gap far too long).    Mr. Johnson first came to BLM in June 1998.   Johnson Depo at

p. 14.  Thus, Mr. Johnson was not involved in the conduct complained about in plaintiff's prior

complaints.  *See Bieber v. Runyou*, 1996 WL 525372 at *11 (D.D.C. 1996).  And, plaintiff has

cited to no evidence showing that Mr. Johnson even had any knowledge of such prior complaints.

 Indeed, Mr. Johnson's testimony indicates just the opposite.  *See e.g.* Reply Ex. B,  Johnson

Depo at p. 14-15 (In June 1998, Mr. Hill did not express any concerns to Mr. Johnson about

discrimination at the BLM).    Thus, plaintiff has presented no evidence which otherwise shows

retaliatory intent on the part of Mr.  Johnson.

        Defendant's summary judgment motion also argued that plaintiff cannot raise an

inference of retaliation because plaintiff  has not submitted evidence showing that his

qualifications were far superior to those of the successful candidate, Ms. Stewart.   SJM at p. 31-

35.  Defendant made extensive comparison of the applications of Ms.  Stewart and plaintiff,

showing Ms. Stewart's extensive and recent experience in personnel management.  *Id.*   In

response, plaintiff submitted the unsupported conclusionary assertion that "the selectee's

experience was primarily clerical."  Opposition at p. 14.   In support of this assertion, plaintiff

cites to p. 16 of his appendix which cites to his *assertions* at the administrative level.  However,

at this stage of these proceedings, plaintiff's assertions are insufficient to raise a genuine issue.

        When a motion for summary judgment is made and supported as provided in this

15

> rule, an adverse party **may not rest upon the mere allegations or denials of the
> adverse party's pleading, but** the adverse party's response, by affidavits or as
> otherwise provided in this rule, **must set forth specific facts showing that there
> is a genuine issue for trial.**

Fed. R. Civ. P. 56(e)(emphasis added).   Plaintiff has not set forth any facts supporting his

assertion.  Therefore, his unsupported assertion is insufficient to create a genuine material issue

as to the relative qualifications of the selectee and plaintiff.

Plaintiff also failed to rebut defendant's  legitimate non-retaliatory reason for Ms.

Stewart's selection.  *See* SJM at p. 34-35.

**Count 8  – Refusal to Submit Application re Eastern States Position**

Plaintiff has failed to rebut defendant's arguments concerning the Eastern States

application.  Defendant argued that there was no materially adverse action in any alleged failure

by Mr. Frye or Mr. Johnson to submit plaintiff's application in November, 1999.  First, there was

no vacancy in November 1999 and the position had not been advertised.  SJM at p. 37-38.

Second,  plaintiff sent his resume to the Eastern States Office himself in November 1999.  *Id.*

Therefore, plaintiff showed no harm to himself.

Defendant next argued that plaintiff had demonstrated no harm to him when Mr. Fry or

Mr. Johnson did not send in his resume in April 2000, because plaintiff offered no proof that

after December 1999 he had any reason to believe or rely on any alleged promise that they would

send in his resume.  SJM at p. 38-40.   Defendant showed that plaintiff admitted that, at the

November meeting, he did not believe that Mr. Johnson or Mr. Fry would send in his resume;

that Mr. Fry thereafter recused himself from matters concerning plaintiff's career, and that

plaintiff sent correspondence to Mr. Frye and Mr. Berry reflecting that plaintiff did not believe

Mr. Frye or Mr. Johnson would assist him.   *Id.*   Plaintiff's Opposition did not deny or rebut any

of the evidence offered.   Plaintiff has not submitted any evidence which demonstrates he had any

reason to believe or rely on any alleged promise after December 2000.   He merely made the

unsupported conclusionary statement that "Plaintiff was relying on management to get his

application to the proper place, which is reasonable."   Opposition at p. 16.   Plaintiff has not even

attempted to articulate what could possibly be reasonable about such reliance under the

circumstances.   Plaintiff knew the proper place to send his resume, since he sent it there in

November 1999, even before the vacancy announcement came out.   Therefore, plaintiff has

offered no evidence raising a genuine material issue.

Plaintiff also asserted  that "If Mr. Frye recused himself from any further dealing, Warren

Johnson did not."   Opposition at p. 16.   However, Mr. Johnson did not make the alleged promise

to send in plaintiff's resume.   Mr. Johnson allegedly was directed to send in the resume as a

functionary of Mr. Frye.   Similar to a  Judge recusing  himself from a matter, his functionaries –

e.g. law clerks – would not continue working on the matter.   Thus, plaintiff has not presented

evidence showing that it was reasonable for him to believe the Mr. Johnson would carry out the

alleged promise of Mr. Frye.   *See* Hill Nov. 3, 1999 letter to Tom Frye concerning Mr. Johnson;

Hill Nov.  9, 1999 ltr to Tom  Fyre;   Hill 12/9/99 memo to Barry;    Johnson letter dated

12/17/99, responding to plaintiff's letter to Frye about  the recusal.

Plaintiff's Opposition attempts to change his claim from one for failure to send in his

resume into a discriminatory non-selection claim.   Plaintiff contends that "because Plaintiff

made every reasonable effort to convey interest in the job to his employe[r]s, the failure to apply

is not a bar to a discriminatory non-selection claim."   Opposition  at p. 16.   Plaintiff cites to

*Clipper v. Billington*, 414 F. Supp 2d 16, 22(D.D.C. 2006)(which cites to *Cones v. Shalala* ,

*infra)*.  In this case, plaintiff Hill has not shown that he made every reasonable attempt to convey

his interest in the job.  The case cited by *Clipper, Cones v. Shalala* , 199 F.3d 512(D.C. Cir.

2000) dealt with a situation in which a vacancy announcement was not  issued.

> According to HHS, Cones cannot establish that he applied for the position
> because ASMB never opened the position to competition. Yet HHS concedes that
> Cones "applied" for the position in precisely the same way as did Margaret Dodd:
> he expressed his interest to Elizabeth James, the Deputy Assistant Secretary who
> assisted Apfel with management of ASC. If Margaret Dodd could get the position
> by expressing her interest to Elizabeth James, Cones can certainly establish a
> prima facie case by demonstrating that he did precisely the same thing.

*Id*., 199 F.3d at 518. Here, the selectee, Mr. Nedd, did not get the position simply by expressing

interest to Mr. Frye, or someone else at Headquarters.   Unlike plaintiff, Mr. Nedd  submitted an

application including his resume, KSA s and other information, as was required by the vacancy

announcement.  Nedd Application.   He was selected from the list of eligible candidates

submitted to Ms. Gordon.  Gordon Depo at p. 8-11.

Plaintiff alleged that Tom Frye, a political appointee in Washington, promised to submit

plaintiff's application so that he could compete.  ROI at p. 189-190.  Plaintiff alleged that it was

Mr. Frye's responsibility to submit his application "Because he's the one who said he would do

it.  He didn't have to say it, he could have said I'm not going to do it."  Reply Ex. C, Hill 2002

Depo at p. 330.  But, plaintiff has conceded that Mr. Fry did tell plaintiff he was "not going to do

it" since Mr. Frye recused himself, and placed plaintiff on notice of his recusal  in November

1999.  Frye 11/23/99 ltr to Hill.  Moreover, plaintiff said he never believed Mr. Frye was going to

submit his application.   Hill 2007 Depo at p. 101-103.   Plaintiff also  admitted that Mr. Frye

told him "that the selecting official was the Eastern States Director, Gail Gordon, and that she

was the one who made the selection and insinuating that he had no input in it.  If you are the

Bureau Director, you have input into everything that's going on in the Bureau.  That's a lie."

Reply Ex. C, Hill 2002 Depo at p. 331. [This testimony suggests that plaintiff actually was not

merely asking that his resume be placed in the mail, but that Mr. Frye give "input" i.e. that he

influence the selecting official.]

The most reasonable way in which plaintiff could have conveyed his interest in the job,

was to properly apply in the manner prescribed by the agency –  by responding to the vacancy

announcement which opened on April 10, 2000.   *See* Eastern States Vacancy Announcement.

Another reasonable way in which plaintiff could have conveyed his interest in the job was to

contact Ms. Gordon and send his resume directly to her.

Additionally, plaintiff has failed to allege any facts establishing, or raising a material

issue showing, a pattern of discriminatory employment practices, such that plaintiff should be

relieved from the requirement of showing he properly applied for the position in order to

establish a prima facie case of discrimination.  *See International Broth. of Teamsters v. U.S.*,

431 U.S. 324, 367-368 (1977):

> To conclude that a person's failure to submit an application for a job does not
> inevitably and forever foreclose his entitlement to seniority relief under Title VII
> is a far cry, however, from holding that nonapplicants are always entitled to such
> relief.  A nonapplicant must show that he was a potential victim of unlawful
> discrimination. Because he is necessarily claiming that he was deterred from
> applying for the job by the employer's discriminatory practices, his is the not
> always easy burden of proving that he would have applied for the job had it not
> been for those practices. *Cf. Mt. Healthy City Board of Education v. Doyle*, 429
> U.S. 274 . . . . When this burden is met, the nonapplicant is in a position
> analogous to that of an applicant and is entitled to the presumption discussed in
> Part III-A, supra. [i.e. a rebuttable presumption of discriminatory non-selection]

*See also* the discussion in *Lula v. Network Appliance, Inc.*, WL 2385086, *3 -4 (3rd Cir. 2007):

> Although the failure to formally apply for a job will not bar a plaintiff from establish[ing] a prima facie case for discriminatory hiring, the plaintiff must show that she made every reasonable effort to convey her interest in the job to her employer, *EEOC. v. Metal Serv. Co.*, 892 F.2d 341, 349 (3d Cir.1990), was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or had a genuine and real interest in the position but reasonably believed that a formal application would be futile. *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408 (3d Cir.1990). We conclude that Lula did not meet the requirements to overcome her failure to formally apply for the sales representative position.
>
> Lula contends, however, that there was a genuine issue of material fact regarding her efforts to convey her interest for the open position. She alleges that she asked district manager Sheperd to consider her for the position and that she applied for the position by asking two of NetApp's vice presidents to consider her for the position. Even if we were to resolve these facts in her favor and assume, arguendo, that she did ask Sheperd and the vice presidents to consider her for the position, we find that her efforts do not rise to the every reasonable effort standard set forth in *Metal Serv. Co.* . . . . Here, the record is clear that Lula did not make any effort to formally apply for the sales position even though NetApp instructed her to submit a resumé if she saw a position for which she felt qualified. Moreover, she did not follow up on her inquiries to the vice presidents after they said that they would get back to her, despite their failure to respond. Nothing in the record suggests that Lula was dissuaded from formally applying because of any discriminatory practice or that she believed her application to be futile. Therefore, we conclude that Lula has not established a prima facie case of discriminatory hiring.

*Lula*, WL 2385086, *3 -4. Plaintiff Hill has not submitted any evidence that a discriminatory practice dissuaded him from formally applying for the position when the vacancy announcement was opened in April 2000. Therefore, he has failed to establish a prima facie case of discriminatory non-selection.

## Conclusion

Therefore, defendant's motion for summary judgment should be granted.

Respectfully Submitted,

_____/s/_____
        JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970